UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
 ----------------------------------------------------------------X

DR. BRIMA SYLLA,
CONNOR SPENCE,
DAVID-DESYRÉE SHERWOOD,
KATHLEEN COLE,
SULTANA HOSSAIN,
TRISTIAN MARTINEZ,
JUSTINE MEDINA,
BRETT DANIELS,
RUEL MOHAN,
ROB MCDONALD,
PASQUALE CIOFFI,
SAM BOWMAN,
JOE LUCCHESE,
ROBERT PECORARO,
YACKISHA NEBOT-LOPEZ,
AIDE ESTUDILLO,
BRIANA ANDERSON,
NAQUASIA ROWLAND,
TAMIA CAMPBELL,
JENNIFER SCHOFIELD,
MICHAEL RIVERA,
CHRISTIAN MOHANSINGH,
JAMES BARDO,
ABDULA DIALLO,
IBRAHIM BALDE,
FELICIA REESE,
IGOR MABIKA,
MICHAEL LOPEZ,
NICHOLAS FERRUGIARO,
ABDULLAH SESAY,
KAREEM LINDSAY,
LILLIAN LOPEZ,
TREMAYNE YOUNGBLOOD,
ALI GIGNI,
MANNY THOMPSON,
RJEEN RODRIGUEZ,
SIMONE SUE,
LATIFAH X,
COMRAD BROWN,
JORDAN SILVEIRA, and
RICHIE COTTO,

Civil Case No. 23-5261

**VERIFIED COMPLAINT**

Plaintiffs,

-against-

AMAZON LABOR UNION, and CHRIS SMALLS,
as President of the Amazon Labor Union,

Defendants.

------------------------------------------------------------------X

Plaintiffs, by their undersigned attorneys, as and for their Complaint, allege as follows:

## **INTRODUCTION**

1.     This is an action seeking injunctive relief directed towards requiring a union to conduct an officer election, and to then conduct it democratically. Plaintiffs allege that in violation of its lawfully adopted Constitution, defendant AMAZON LABOR UNION (hereinafter "ALU"), at the direction of its President, defendant CHRIS SMALLS ("Smalls") has (a) by a vote of Small's appointed Executive Board unlawfully adopted an Amended Constitution without allowing the membership to vote on the amendments; (b) utilized that Amended Constitution to refuse to hold officer elections which should have been scheduled no later than March 2023, (c) terminated members of the Executive Board and added new members in a manner inconsistent with the ALU Constitution; (d) threatened disciplinary action against those who oppose what is being done; (e) refused to hold membership meetings; (f) refused all efforts at mediation by neutral parties: and (g) created such internal union disarray that no legitimate body is available to conduct fair and democratic elections in the union; all as part of a scheme to suppress democratic dissent, and democratic practices among members of this fledgling labor union.

## JURISDICTION

2.     This Court's jurisdiction is invoked pursuant to 29 U.S.C. Section 412. This Court's pendent jurisdiction is also invoked.

3.     Plaintiffs Dr. Brima Sylla, Connor Spence, David-Desyrée Sherwood, Kathleen Cole, Sultana Hossain, Tristian Martinez, Justine Medina, Brett Daniels, Ruel Mohan, Rob McDonald, Pasquale Cioffi, Sam Bowman, Joe Lucchese, Robert Pecoraro, Yackisha Nebot-Lopez, Aide Estudillo, Briana Anderson, Naquasia Rowland, Tamia Campbell, Jennifer Schofield, Michael Rivera, Christian Mohansingh, James Bardo, Abdula Diallo, Ibrahim Balde, Felicia Reese, Igor Mabika, Michael Lopez, Nicholas Ferrugiaro, Abdullah Sesay, Kareem Lindsay, Lillian Lopez, Tremayne Youngblood, Ali Gigni, Manny Thompson, Rjeen Rodriguez, Simone Sue, Latifah X, Comrad Brown, Jordan Silveira, and Richie Cotto (hereinafter "Plaintiffs"), are members of ALU, are employed at Amazon Fulfillment Center JFK8 in Staten Island, New York (hereinafter "JFK8") where ALU is the certified collective bargaining agent of around 8000 non-managerial Amazon employees. Plaintiffs Connor Spence, Kathleen Cole, Brett Daniels, and Cassio Mendoza were members of the initial Executive Board created at the time that the ALU was founded, or were appointed to fill a vacancy in an officer position, and served in that position at various times between the union's founding and December 2022. Plaintiff Sylla was asked to join the Board in early 2023 and was excluded from Board meetings beginning in April 2023 after he demanded elections and financial transparency.

4.     Defendant ALU is a national labor organization as that term is defined at 29 U.S.C. Section 402( i ), and 29 U.S.C. Section 152(5). ALU represents all of the non-managerial employees at JFK8. It includes in its membership employees of JFK8, and has been actively

organizing additional sites around the United States where Amazon employs warehouse employees. ALU has its office located at 900 South Ave. Suite 100, Staten Island, NY 10314.

5.    Defendant Christopher Smalls is the initial President of ALU, and has been since in or around October 2021, when ALU adopted its first Constitution.

## FACTS RELEVANT TO ALL CLAIMS

### Union Formation

6.    Beginning on April 20, 2021, Smalls, Plaintiff Connor Spence (hereinafter "Spence"), Derrick Palmer (hereinafter "Palmer"), Gerald Bryson (hereinafter "Bryson"), and Jordan Flowers (hereinafter "Flowers") met to set up tables at a bus stop across the street from JFK8 to begin the process of gathering signed authorization cards from Amazon workers interested in forming the ALU. All five were present or former Amazon employees at JFK8.

7.    Under the rules of the National Labor Relations Board (hereinafter "NLRB"), union organizers needed a minimum of 30% of the workforce to sign authorization cards for the NLRB to approve union certification elections.

8.    In April of 2021, approximately 5,000 workers were employed at JFK8. Amazon later enlarged the workforce to 8,325 employees.

9.    Also in April of 2021, a Go Fund Me account was set up to fund the costs of organizing Amazon workers. The account that eventually raised approximately $400,000 from pro-labor people across the country.

10.    On October 17, 2021, six core ALU members and approximately fourteen others gathered in a union convention held via Zoom to ratify the first ALU Constitution, Exhibit A, (hereinafter "Constitution 1"). The core members in attendance were Smalls, Spence, Flowers, Plaintiff Brett Daniels (a JFK8 employee, hereinafter "Daniels,"), Madeline Wesley (an

employee at LDJ5, a smaller Amazon sortation center across the street from JFK8, hereinafter "Wesley"), Cassio Mendoza (a JFK8 employee, hereinafter "Cassio"), and Jean Michel Mutore (an employee at nearby DYY6 Warehouse, hereinafter "Mutore").

11.     Article 3 of Constitution 1 established the leadership structure.

12.     Pursuant to the Leadership Provision Antecedent to the Initial Representation Election (hereinafter the "Provision"), which follows Article 13 of Constitution 1, the October 17 convention attendees elected a Provisional ALU Executive Board, made up only of the five officers of the union, a President, two Vice Presidents, a Secretary Treasurer, and an Executive Secretary. The Provision authorized the Interim ALU leaders to hold office until the conclusion of the union representation election.

13.     Constitution 1 required that, after the conclusion of the representation election, the Executive Board/Officers would be elected by a vote open to the general membership.

14.     Pursuant to Const. 1 § 2.1(a), all employees "covered by a collective negotiated agreement between ALU and their employer" were eligible for membership in the union and, thus, eligible to vote for the Executive Board after certification by the NLRB.

15.     At the October 17 convention, Smalls was elected Interim President; Palmer was elected Interim vice-President of organizing; Plaintiff Spence was elected Interim Vice-President of membership; Wesley was elected Interim Treasurer; and Mutore was elected Interim Secretary.

16.     Within a few weeks, Mutore stepped down and was replaced as Interim Secretary by Karen Ponce (a JFK8 employee, hereinafter "Ponce").

17.     On October 25, 2021, the ALU organizers submitted the signed authorization cards of approximately 2,000 JFK8 employees to the NLRB and requested approval of a workplace election.

18.     On November 12, 2021, the NLRB solicited withdrawal of ALU's application on the ground that the showing of interest was insufficient.

19.     Shortly thereafter, about a dozen union organizers resumed tabling to gather more signed authorization cards.

20.     On December 22, 2021, ALU submitted between 200 and 300 additional authorization cards to NLRB relating to JFK8.

21.     On January 26, 2022, the NLRB confirmed that ALU had established a sufficient showing of interest and approved the union's request for a workforce election at JFK8.

22.     On February 2, 2022, ALU submitted approximately 500 signed authorization cards to the NLRB relating to the Amazon Sorting Facility designated LDJ5.

23.     On February 4, 2022, the NLRB confirmed that ALU had established a sufficient showing of interest at LDJ5 and approved the request for a workforce election at that facility.

24.     On February 16, 2022, ALU attorney Eric Milner met with Amazon attorneys and NLRB officials to negotiate the terms of the election at JFK8. At issue were the days and times that the election would occur; who would be eligible to vote; and the categories of workers that the union would be representing.

25.     On February 17, 2022, ALU, Amazon, and the NLRB reached a Stipulated Election Agreement. The voting was scheduled to occur on March 25, 26, 28, 29, and 30 of 2022. Two sessions were scheduled each day from 8 am to 1 pm and 8 pm to 1 am.

26.     On March 14, 2022, ALU attorney Eric Milner met with Amazon attorneys and NLRB officials to negotiate the terms of the election at LDJ5.

27.     On March 18, 2022, ALU, Amazon, and the NLRB reached a stipulated election agreement for LDJ5. The voting was scheduled for April 25, 27, 28, and 29 of 2022. Three sessions were scheduled each day from 4:30 am to 8:30 am, 2 pm to 6 pm, and 8 pm to 11 pm.

28.     Between April 25 and 29, 2022, the JFK8 workforce voted.

29.     From March 31 to April 1, 2022, the JFK8 ballots were counted. Of the 8,325 eligible workers, 4,852 voted. 67 ballots were challenged and set aside to be opened only if they had the potential to affect the outcome. 17 ballots were determined to be void. 2,654 ballots were cast in favor of establishing the union, and 2,131 were cast in opposition.

30.     The success of April 1, 2022, marked the first time that an Amazon facility in US had won an election.

31.     In mid-April, 2022, ALU began representation discussions with the law firm of Julian Mirer and Singla. The firm was subsequently hired on a retainer of $30,000 per month.

32.     Between April 25 and 29, 2022, the LDJ5 workforce voted.

33.     On May 2, 2022, the LDJ5 votes were counted. Of the 1,633 eligible workers, 998 voted. 2 ballots were determined to be void. 380 ballots were cast in favor of establishing the union. 618 were cast in opposition.

**Post Election Changes**

34.     In June of 2022, the executive leadership of ALU met with its lawyers to revise Constitution 1. The revised Constitution, Exhibit B, (hereinafter "Constitution 2") was adopted first by vote of the Executive Board, and then, as per Constitution 1, by the membership, after notice, utilizing an on-line vote (via an app called Slack), It was then submitted to the

Department of Labor, with approval of union counsel, as an attachment to the ALU's initial Labor Organization Information Report (Form LM-1).

35.     This new Constitution, at Section 2.1 now defined eligibility for membership as "all workers in every job category, classification of Amazon.com, Inc., its subsidiaries, affiliates, or otherwise and any employee whose circumstances have ever be substantially connected to or affected by the business practices of Amazon, Inc. in Staten Island, NY."

37.     Pursuant to the Pre-Certification Provision that follows Article 14 of Constitution 2, the ALU's Officers/ Executive Board, had to be elected either in 2024 or 60 days after certification of the results of the representation election, whichever comes **first**. This altered the requirement of the Provision section of Constitution 1, which stated that the Interim Executive Board would hold office until the "conclusion of the representation election." (See last sentence of Exhibit A).

38.     In June, 2022, after Constitution 2 was approved, the following Executive-Board changes occurred: Palmer resigned as Vice-President of Organizing. The two Vice-President positions were combined into one. Angelika Maldonado (hereinafter "Maldonado") became Vice-President. Wesley resigned and Spence became Treasurer. Michelle Valentin Nieves (hereinafter "Nieves") became Secretary.

39.     As discussed in Paragraph 35, Constitution 2 also changed the eligibility for union membership. In Constitution 1, membership had been restricted to employees covered by a collective agreement negotiated between ALU and Amazon. See Ex. A, Const. 1, § 2.1(a). Since no negotiated agreement has yet been reached, under that definition, there are no members. Pursuant to Constitution 2 at § 2.1(a), all workers of Amazon on Staten Island are eligible for membership. The Constitution provided no means to become a member.

**Union Certification**

39.     In June 2022, Amazon challenged the neutrality of Region 29 of the NLRB, which includes Staten Island, to determine the objections that Amazon was raising to the certification of the election. According to Amazon, Region 29 favored the union and had not handled the election properly. Rather than fight these allegations, ALU and its attorneys agreed to argue the case in Region 28, which is in Arizona. The hearing, however, was conducted via Zoom.

40.     For 24 business days in late June and in July of 2022, Amazon, represented by Hunton Andrews Kurth, raised 25 objections to the certification of the representation election. ALU was represented by Julian Mirer and Singla.

41.     On June 24, 2022, while the Amazon objections were being litigated, Heather Goodall hereinafter "Goodall") reached out to Spence. Goodall was the lead organizer of the Amazon sortation facility ALB1 in Schodack, near Albany, NY. Inspired by the ALU win on Staten Island, the Amazon ALB1employees wanted to organize their building to do the same thing.

42.     In early July, Goodall came to New York City and met with Connor and the ALU lawyers, who provided her with authorization cards for signing up workers.

43.     On August 1, 2022, Amazon and ALU filed briefs arguing their views of the witness testimony and setting forth the conclusions that the NLRB should reach.

44.     In mid-August, 2022, Maldonado stepped down as Vice-President, and Palmer again assumed the position of Vice-President.

45.     On August 16, 2022, ALU filed with the NLRB for an election at ALB1. At this point, Goodall was the organizing committee chairperson of her building. As part of the

discretionary powers of the ALU Executive Board under the Pre-Certification Provision of Constitution 2 (Ex. A at page 28), Goodall had also become a member of ALU and a member of the ALU Executive Board.

46.    On September 1, 2022, the Region 28 NLRB Hearing Officer's report was filed with the NLRB in Washington DC. The Hearing Officer recommended that all objections be denied, and that the ALU be certified.

**Internal Union Disagreements**

47.    On October 3, 2022, a fire in JFK8 during the day shift left the building in an unsafe condition due to smoke and flooding. The workers engaged in a spontaneous work stoppage. As a result, over 100 workers were suspended with pay while Amazon investigated whether or not the work stoppage would lead to termination. As a result, the workers could not enter the building and capitalize on the success of their action.

48.    On October 5, 2022, a meeting of the suspended workers was called at ALU meeting hall. ALU President Smalls had planned to speak at an event the day of the meeting of suspended workers and follow that up with three additional days of vacation. But Smalls left before the meeting. Smalls refused to cancel his trip. The suspended workers were disturbed to see that their President was not there when the jobs of over 100 workers were on the line.

49.    All of the suspended workers were ultimately reinstated without any disciplinary action.

50.    On October 11, 2022, Smalls unilaterally arranged for an organizer at Amazon facility ONT8 in San Marino, California, to get authorization cards signed and file for an election without properly creating and executing an organizing plan, which includes building a workplace organizing committee, creating structure in the workplace, educating workers, and engaging in

group actions to put pressure on the employers. When people blindly sign cards without understanding the benefits of unionizing, they quickly become anti-union when the company launches their anti-union campaign. Smalls' action in San Marino replicated the lack of strategy that had led to the loss at LDJ5 and was expected to result in a loss at ALB1.

51.     From October 12 to October 17, 2022, the ALB1 election occurred.

52.     On October 18, 2022, the ALB1 votes were counted. Of the 949 eligible voters, 612 ballots were cast. 31 ballots were challenged. 4 ballots were void. 206 ballots were cast in favor of the union. 406 ballots were cast in opposition.

53.     On October 19, 2022, an Executive Board meeting was called. In attendance were President Smalls, Vice-President Palmer, Treasurer Spence, Secretary Nieves, Daniels (director of organizing), Mendoza (communications director), and Kathleen Cole (LDJ5 chair, hereinafter "Cole"). There was no JFK8 chair. Goodall was not in attendance. Rank and file members in attendance were Tristian Martinez (JFK8 employee, hereinafter "Martinez"), Wesley, Julian Mitchell-Israel (LDJ5 employee, hereinafter "Israel"), David-Desyree Sherwood (JFK8 employee, hereinafter "Sherwood"), Gerald Bryson (formerly JFK8, hereinafter "Bryson." fired by Amazon with Smalls after a walkout in March 2020), Justine Medina, and Flowers.

54.     The Board meeting was organized around a common grievance held by rank-and-file members that the union was undemocratic. Specifically, they sought procedures that would enable them to elect their leaders. They also wanted an expanded Executive Board. Rather than having four people representing potentially 10,000 members, they wanted 20 to 30 people on the Executive representing the membership.

55.     Also at issue were the poor organizing strategies unilaterally implemented by President Smalls which led to the election losses at LDJ5 and ALB1; the botched response to

work stoppage on October 3, 2022; President Small's refusal to allow the workers to picket over that issue; and the fact that Smalls prioritized a vacation over meeting with 100 workers who had been put on leave pending an investigation.

56.     The rank-and-file members demanded more democracy.

57.     Plaintiff Spence expressed sympathy to the issues raised by the rank and file and acted in a mediating capacity at the Executive Board meeting.

58.     On November 4, 2022, the core members met to discuss the worker demands raised at the October 19 meeting. They expressed concern that the constitutional procedures were not being followed.

59.     At a November 6, 2022, Board meeting, Spence announced his resignation from the Executive Board effective at the end of November. Within the month of November, Cassio Mendoza, Kathleen Cole, and Brett Daniels also resigned from the Executive Board.

**Constitution 3**

60.     From late November through early December, the President, Vice-President, and Secretary met with attorney Retu Singa two times to revise the Constitution. Spence was excluded from these meetings.

61.     On December 9, 2022, Constitution 3 (Ex. C) was presented to the membership at an open meeting of the Executive Board . Only about 13 people from a total potential membership of 10,000 were in attendance. Smalls informed the membership that Constitution 3 had been adopted, and that the union would follow it from that point on. One member asked if there would be a vote on the adoption of the new Constitution. The President said that there would not be. This violated Section 12 of Constitution 2 which describes the process as follows:

1. Any proposed amendment must be in writing and signed by any twenty (20) members in good standing and be submitted to the Secretary no later than sixty (60) days prior to the general or special meeting at which the proposed amendment will be acted upon.

2. The Secretary shall forthwith refer the proposed amendments to the members of the Executive Board of the Union.

3. The Executive Board shall discuss the proposed amendments at its next special or regular Board meeting.

4. The Executive Board shall take a vote on the proposed amendment and determine whether or not a majority are in favor thereof.

5. The Executive Board shall notify the Executive Secretary of its vote either in favor of or against the proposed amendment and may accompany the result of their vote with a memorandum in support of the vote of acceptance or rejection.

6. The Executive Secretary shall provide notices to be posted on all bulletin boards and places for union notices on the premises where union members are employed, notifying members of the proposed amendments, the vote of acceptance or rejection by the Executive Board and copies of the Executive Board's memorandum in support of its vote, together with notice of time and place of the general or special meeting at which the proposed amendments will be acted upon by the members in general or sectional meetings.

7. If the Executive Board votes in favor of adoption of the proposed amendments as provided for in (4) above, it shall require only a majority of the total vote cast by the members for the adoption of said proposed amendment. If the Executive Board votes against adoption of the proposed amendment, it shall require two-thirds (2/3) of the total votes cast by the members for adoption of the proposed amendment.

62. Nearly the entire group of members in attendance left the meeting in protest. The only two members who stayed, Cassio Mendoza and Plaintiff Brima Sylla, did so to voice objections.

Constitution 3 was subsequently filed with the Department of Labor as the ALU's new constitution.

63. Constitution 3 made the following notable changes to Constitution 2:

a. It called for elections 3 months after ***ratification of the bargaining agreement.*** (a date which could be years into the future.) <u>See</u> Leadership Provision Antecedent to Initial Representation Election, which follows Article 14. This changed the prior requirement that elections shall occur either in 2024 or 60 days after certification, whichever came first. <u>See</u> Const. 2 Pre-Certification Provision.

b. Constitution 3 limited membership to workers at JFK8. <u>See</u> Const. 3, §2.1. This eliminated the membership of workers at LDJ5, one of whom, as the chair of the organizing committee, had been a member of the ALU Executive committee.

c. Constitution 3 created more requirements for consideration to election to the Executive Board. Specifically, it required attendance at a minimum of 25 worker committee meetings in the year prior to the nomination meeting. <u>See</u> Const. 3 at § 2.3. This is a requirement that even Smalls would be unable to satisfy. Moreover, because the worker committee meetings are sparsely attended due to a lack of worker engagement and workplace presence by the Executive Committee, it would be extremely unlikely that any worker would meet this requirement for running for office. It also required attendance at Membership Meetings, but none were held for over a year.

d. Pursuant to § 4.2 of Constitution 3, stewards are appointed by the Executive Board. Under Constitution 2, stewards were elected by the membership. <u>See</u> Const. 2 at § 4.1.

e.    Pursuant to § 8.1(b), after a bargaining agreement has been reached, membership dues will be determined by a committee appointed by the Board. Under Constitution 2 at § 8.1, dues were to be democratically determined by a vote of the membership.

f.    Pursuant to § 12.1(a) of Constitution 3, the signatures of 100 members are required to propose an amendment to the Constitution. Under Constitution 2, only 20 signatures were needed. <u>See</u> Const. 2 at § 12.1(1).

64.    Since that date Smalls and his loyal Executive Board members have expanded the size of the Board (all appointees) and pay the Board members $500 per week.

**<u>Start of the Reform Effort</u>**

65.    After the December 9, 2022 meeting, Plaintiff Spence, Plaintiff Martinez, Plaintiff Daniels, Cole, Plaintiff Sherwood, Michael Aguilar, Wesley, Israel, Plaintiff Ruel Mohan, Plaintiff Josiah Morgan, Plaintiff Brima Sylla (hereinafter "Sylla"), Mendoza, and Pasquale Cioffi (hereinafter "Cioffi") formed a reform caucus (the Caucus) and began regularly conducting worker organizing training at meeting halls borrowed from other local unions,

66.    On January 12, 2023, the NLRB certified the results of the JFK8 election. Amazon was now under a legal obligation to negotiate with the union. No such agreement has been negotiated between Amazon and ALU. There are no ongoing negotiations.

67.    Inasmuch as Constitution 3, in the Leadership Provision Antecedent to Initial Representation Election, sets the election of the Executive Board at 3 months after ratification of a bargaining agreement by the membership and no negotiations for a bargaining agreement have occurred or are occurring, the election of the ALU Executive Board is being held in abeyance indefinitely.

68.     On April 5, 2023 – Sylla and Cioffi went to a regularly scheduled workers meeting. Either Smalls or Palmer told Cioffi that he was not allowed to attend due to his association with Spence and the reformists. The Board subsequently hired security as gatekeepers to the workers meetings. Cioffi was also told that his union membership was revoked and that the ALU lawyers would no longer work with him on his termination case, which was then pending against Amazon at the NLRB.

69.     On May 8, 2023, Smalls sent an email to the full membership announcing changes to the Executive Board. He asserted that the changes were approved unanimously by the Executive Board, which was an effort to highlight the allegedly democratic nature of the Board and the legality of the Board changes under Constitution 3. Sylla, a Board member who attends every Board meeting, only heard about the Board changes through Smalls' email. No such vote was ever taken at an Executive Board meeting.

70.     On May 8, 2023, Smalls threatened Sylla and all other reform caucus organizers in a written WhatsApp group chat text message with legal action for false representation of a government-certified union. Sylla and others had been circulating a petition to amend the Constitution. See What's App threats appended as Exhibit E.

71.     After this meeting Plaintiffs, hoping to resolve the internal governance issues at ALU without resort to litigation, circulated a petition among the ALU members calling for a membership meeting to vote on restoring the last properly adopted set of bylaws, an action which would then bring about an officer election. The Petition is annexed as Exhibit D. 100 signatures are required by Constitution 3 at § 12.1(a). Nearly 1000 signatures have been collected .

72.     While circulating the petition Plaintiffs engaged in an effort to resolve their dispute through mediation by an agreed upon mediator. That mediation was scheduled for June 22, 2023.

**The ALU Executive Board Refuses to Mediate, Hold a Membership Meeting, or Hold An Election**

73.     On June 21 , 2023 Plaintiffs were notified that the ALU Executive Board had declined mediation. In addition, upon information and belief, President Smalls has ceased functioning in his day-to-day leadership of the union. Board members who have discussed the situation with various intermediaries have stated, "why should we have an election? The Caucus will win."

74.     What Defendant Smalls and his paid, hand-picked "Executive Board" is engaged in is no less than the hijacking of a rather unique institution, the ALU, which has been able to raise almost a million dollars in the past year because of the notoriety created by its win at an Amazon Warehouse. They refuse to hold membership meetings, they have unilaterally "amended" the Constitution to keep themselves in power indefinitely, they have threatened their opponents, most of whom made up the core group which won the Amazon election in the first place, and, most importantly, they refuse all efforts to have a fair, democratic, election.

75.     Unless this Court intervenes, an election will not be held, and no one within the squabbling Executive Board is capable of conducting a fair and democratic election. The Constitution itself only calls for the appointment of an Election Judge appointed by the very same self-appointed people who have taken over the union in an undemocratic manner. See Section 5.1 of Exhibit B. The Court needs not only to order an election, it needs to set dates, make rulings about who can vote and who will be eligible to run, select a monitor to resolve disputes which arise during the election, and act as the ultimate authority to certify the election.

76.     On top of that, threats to bring charges against Plaintiffs and their allies, and deprive them of membership rights have not been withdrawn.

## AS AND FOR A FIRST CAUSE OF ACTION

77.     Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1-76 hereinabove.

78.     By acting as aforedescribed defendant has violated the equal right of Plaintiffs and all members, except for the President and Executive Board Members to vote, in violation of Section 101(a)(1) of the LMRDA, 29 U.S.C. Sec. 101(a)(1).

## AS AND FOR A SECOND CAUSE OF ACTION

79.     Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1-76 hereinabove.

80.     By acting as aforedescribed defendants have violated the rights of Plaintiff and all of the he members of ALU to express views, arguments, and opinions about the affairs of ALU, and have engaged in a scheme to suppress dissent, in violation of Section 101(a)(2) of the LMRDA, 29 U.S.C. Sec. 101(a)(2).

## AS AND FOR A THIRD CAUSE OF ACTION

81.     Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1-76 hereinabove.

82.     By acting as aforedescribed and threatening to expel members who complain about the manner in which ALU is being run, defendants have violated Section 609 of the LMRDA, 29 U.S.C. Sec. 529.

## AS AND FOR A FOURTH CAUSE OF ACTION

83.     Plaintiffs incorporate by reference each and every allegation set forth in paragraphs 1-76 hereinabove.

84.     By acting as aforedescribed defendants have violated the Constitution of Constitution of ALU.

## IRREPARABLE INJURY

85.     Should this Court fail to grant the injunctive relief requested by Plaintiffs, Plaintiffs, and the members of ALU will suffer immediate and irreparable injury in that they will be denied their right to a fair election.

86.     Plaintiffs have made no other request for the relief requested herein of this or any other court.

87.     Any further attempt to exhaust internal union remedies would be futile.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray that the Court:

1.      Enter a Temporary Restraining Order directing that pending a hearing on this application, defendant, its agents, and attorneys be temporarily restrained and enjoined from acting to discipline or retaliate against any Plaintiff in this matter.

2.      Enter an order, pursuant to Rule 65 of the Federal Rules of Court Procedure, directing defendant Amazon Labor Union, its agents, and employees, pending trial of this matter,

        a.      to cease governing ALU pursuant to the\ Amended Constitution adopted in or about December 2022, and to conduct the affairs of the defendant ALU in accordance with the Amended Constitution adopted in June 2022;

b. to hold an Election on or before August 30, 2023 for the positions of President, Vice President, Secretary Treasurer, Executive Secretary and Steward Committee Chairperson at Warehouses JFK8 and LBJ5;

c. hold that election under the direction of a neutral Election Monitor, with expertise at running union elections, appointed by the Court, which appointee will create rules for the election, retain a third-party vendor to physically conduct the election, who will rule on objections raised by candidates running in the election prior to its conclusion, and who will certify the election subject to review by this Court;

d. to send Notice of that election and of a nominations meeting on or before July 25, 2023;

e. to hold that nominations meeting no later than August 10, 2023 at a location near Amazon Fulfillment Center 8, in Staten Island, New York;

f. to allow anyone qualified to be a member to be nominated for a position subject to that election as long as they signed a membership card within the year prior to the nominations meeting;

g. to allow an eligible member to be nominated by another member, by self-nomination, or by a sworn self-nominating form designed by the

h. to hold that election via in-person voting, between 6am and 9pm, at a location near Amazon Fulfillment Center 8, in Staten Island, New York, open to all employees of Amazon, Inc. employed at Amazon Fulfillment Center 8 and Amazon Sorting Center 5, Staten Island, New York, who sign a membership card on or before the date and time they vote;

i. to have those elected take office upon a report from the Election Monitor certifying the election; and

> j.  granting such other relief as is just and equitable.

3.  Enter judgment declaring that the Constitution adopted in 2022 is the governing document of ALU, certifying the election of the officers elected in the election directed by the court, and awarding costs and attorney's fees.

Dated: New York, New York
        July 10, 2023

ADVOCATES FOR JUSTICE,
CHARTERED ATTORNEYS
*Attorneys for Plaintiffs*

By:  /s/ *Arthur Z. Schwartz*
        Arthur Z. Schwartz
225 Broadway, Suite 1902
New York, New York 10007
(212) 285-1400
aschwartz@afjlaw.com

## <u>VERIFICATION</u>

Brima Sylla declares, under penalty of perjury, that he is a plaintiff in the within action, that he has read the foregoing Complaint, and that it is true to his knowledge, information, and belief.

Dated: New York, New York
July 10, 2023

DocuSigned by:

D5C35985C8FF48E...