UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
DR. BRIMA SYLLA, CONNOR SPENCE, DAVID-DESYRÉE SHERWOOD, KATHLEEN COLE, SULTANA HOSSAIN, TRISTIAN MARTINEZ, JUSTINE MEDINA, BRETT DANIELS, RUEL MOHAN, ROB MCDONALD, PASQUALE CIOFFI, SAM BOWMAN, JOE LUCCHESE, ROBERT PECORARO, YACKISHA NEBOT-LOPEZ, AIDE ESTUDILLO, BRIANA ANDERSON, NAQUASIA ROWLAND, TAMIA CAMPBELL, JENNIFER SCHOFIELD, MICHAEL RIVERA, CHRISTIAN MOHANSINGH, JAMES BARDO, ABDULA DIALLO, IBRAHIM BALDE, FELICIA REESE, IGOR MABIKA, MICHAEL LOPEZ, NICHOLAS FERRUGIARO, ABDULLAH SESAY, KAREEM LINDSAY, LILLIAN LOPEZ, TREMAYNE YOUNGBLOOD, ALI GIGNI, MANNY THOMPSON, RJEEN RODRIGUEZ, SIMONE SUE, LATIFAH X, COMRAD BROWN, JORDAN SILVEIRA, RICHARD COTTO, DEYANIRIS MOTE, JESSICA EDMONDS, KIMBERLY MERISE, BIANCA BUTLER, MICHAEL ANTONIO, MARK JOHNSON, CRAIG AYALA, JOHN PHILIP, LASALLE DELLA ROCA, CHRIS KOKO, CHRISTINA JIMMY, CHARLES JOHNSON, CHRIS PHILIP, AHMED BOBACAR, CATY RIDREGO, DURVIS SAINT LUIS, KEVIN BERTMAN, AALIYA DIAMOND, MOHAMED AWES, ALI DAWUD, FRED FIBIO, ISMAEL MENDOZA, BRIANA PACHECO, JAYSHAWN BAZEMORE, AMANI CLAUDIA, CHRISTOPHER WHRIGHT, EZEKIEO BENSON, ETHAN COPER, JOSEPH DEJESUS, ISOLA OKUNU, ARIANA JOHNSON, MOSTEP STEP, ABAYOMI "BAYOU" ABIMBOLA, GABRIEL WEBBS, ALIYYAN AZIZ, EMMANUEL JEAN, ANTOINETTE GRAY, DON ELIJAH, ERIC HARRIS, RONDU JOHN, NICOLE FLORES, MERLDON GUSTAVE, MOHAMED GACK, JOE JOHNSON, and ADRIAN JOHN,

       Plaintiffs,

     -against-

Civil Case No. 23-5261

**DECLARATION OF COUNSEL IN SUPPORT OF ORDER TO SHOW CAUSE AND STAY**

AMAZON LABOR UNION, and CHRIS SMALLS,
as President of the Amazon Labor Union,

                                            Defendants.
-----------------------------------------------------------------X

      ARTHUR Z. SCHWARTZ, attorney for Plaintiffs, declares as follows under the penalties of perjury.

      1.      This is an action seeking injunctive relief directed towards requiring a union to conduct an officer election, and to then conduct it democratically. Plaintiffs allege that in violation of its lawfully adopted Constitution, defendant AMAZON LABOR UNION (hereinafter "ALU"), at the direction of its President, defendant CHRIS SMALLS ("Smalls") has (a) by a vote of Small's appointed Executive Board unlawfully adopted an Amended Constitution without allowing the membership to vote on the amendments; (b) utilized that Amended Constitution to refuse to hold officer elections which should have been scheduled no later than March 2023, (c) terminated members of the Executive Board and added new members in a manner inconsistent with the ALU Constitution; (d) threatened disciplinary action against those who oppose what is being done; (e) refused to hold membership meetings; (f) refused all efforts at mediation by neutral parties: and (g) created such internal union disarray that no legitimate body is available to conduct fair and democratic elections in the union; all as part of a scheme to suppress democratic dissent, and democratic practices among members of this fledgling labor union.

      2.      Plaintiffs are members of ALU, are employed at Amazon Fulfillment Center JFK8 in Staten Island, New York (hereinafter "JFK8") where ALU is the certified collective bargaining agent of around 8000 non-managerial Amazon employees. Plaintiffs Connor Spence, Kathleen Cole, Brett Daniels, Cassio Mendoza, and Dr. Brima Sylla were members of the initial

Executive Board created at the time that the ALU was founded, or were appointed to fill a vacancy in an officer position, and served in that position at various times between the union's founding and December 2022.

3. Defendant ALU is a national labor organization as that term is defined at 29 U.S.C. Section 402( i ), and 29 U.S.C. Section 152(5). ALU represents all of the non-managerial employees at JFK8. It includes in its membership employees of JFK8, and has been actively organizing additional sites around the United States where Amazon employs warehouse employees. Defendant Christopher Smalls is the initial President of ALU, and has been since in or around October 2021, when ALU adopted its first Constitution.

4. As set forth is detail in the Verified Complaint the Amazon Labor Union (ALU) was created in April 2021, in October 2021 adopted a Constitution (Ex. A), which provided for an election of officers after the union concluded its first representation election at Amazon, and selected interim officers. (The only Interim officer who remains is Defendant Smalls.) On or about April 2022 the NLRB announced that the employees at JFK8 had voted to be represented by ALU. Rather than hold an election the members gathered in a meeting, and voted as per the procedure in their initial Constitution, to amend the Constitution and provide for an election within two months of NLRB Certification of ALU's status as the collective bargaining representative. This was stated in the June 2022 Constitution, Exhibit B.

5. Rather than plan for that election, some group of leaders (most of the original officers had resigned due to the lack of democratic process) declared at an "Open Executive Board Meeting" in December 2022, that they (the Executive Board) had amended the Constitution (Exhibit C) and postponed elections until two months after an initial collective bargaining agreement was negotiated and ratified, an event which could be years away. So, when the NLRB certified ALU at JFK8 as the collective bargaining representative of 8000 employees,

no election was held. All efforts to bring an election about have been rebuffed by the "leadership." Meanwhile Defendant Smalls, who has traveled the world and been extolled as the future of the labor movement, seems to have absented himself, and the union is being run by an Executive Director, Evangeline Byars, who also works full-time as a Train Operator for the NYC Transit Authority, and the lawyers who Smalls retained. Underlying all of this is a successful fundraising effort which brought in nearly a million dollars during 2022, and substantial money being paid out to Byars, the attorneys, and the current "officers"

6. The underlying premise of this lawsuit is quite simple. The "Executive Board" had amended the ALU Constitution, something the members had the right to vote on, a violation not only of the Constitution (which members can enforce under 29 USC Section 185) but also of 29 USC Section 101(a)(1), Sectional 411(a)(1) of the Labor Management Reporting and Disclosure Act. On top of that members who are protesting (including the Plaintiffs) face threats of being kicked out of the union or sued for defamation. This lawsuit is to bring about an election, and to bring it about expeditiously, since it should have happened by the end of March 2023.

7. One basic problem an order simply directing an election has, is that the ALU has no real structure for an election, and no one who can legitimately run an election. Part of what Plaintiffs seek here is both a set of guidelines for the election – deadlines for nominations, election notices, the election itself, rules about who can vote and the manner in which a vote should be held – and the appointment of a Neutral Election Monitor to conduct the election and rule on disputes which may arise – much as like the US District Court did in the most recent United Auto Workers Union Election, see Exhibit F.

8. In addition, we seek a TRO to prevent efforts to retaliate against any of the plaintiffs, as has been threatened, see Exhibits E and H. The election need to be run with a clear

4

understanding that there will be no retaliation and no threats to kick anyone out of the union or to bring litigation against them.

9. On Friday July 7, 2023 I did write to counsel for ALU (Exhibit J) and attached a copy of the proposed Order to Show Cause and Verified Complaint. I told counsel that they had till Monday July 10, 2023 at noon to agree to an election along the lines proposed here, or something similar thereto. I have not received a response.

10. Also on July 7, 2023, the Plaintiffs sent their own communication to the ALU Executive Board, reiterating the same demands I made to counsel. See Exhibit G. They got an informal response from one Board member, full of threats to sue, and questioning their right to lodge protests within the union (see Exhibit H), and then on July 9, 2023, they received a response from the ALU Recording Secretary proposing a meeting on July 17, 2023 (Exhibit I).

11. As we state in the complaint, an effort to mediate in late June, with an agreed upon, well respected labor mediator named Bill Fletcher, was cancelled by the ALU Board the day before the mediation. There appears to be no more reason for delay, given both the clarity of Plaintiffs' right to an election, and the grievous injury being suffered by the employees at Amazon JFK8, who voted democratically for a union, and now are being deprived of an opportunity, 18 months later, to elect leadership for that union.

12. At around 1am this morning (July 10, 2023) I did receive a response from the ALU's counsel, Jeanne Mirer, attached as Exhibit K. Its central assertion is that there "never was an approved "second constitution." This is addressed by Conner Spence's Declaration of this date, which asserts not only that there was an online membership vote, but that union counsel approved the filing of the June 2022 Constitution with the Office of Labor Management Services at the US Labor Department as the operative ALU Constitution. And even if Mirer is right she does not contest the assertion that the third constitution was never offered to the members to vote

5

on,which would leave the original Constitution, which calls for an election "upon the completion of the representation election." The representation was completed on around April 1, 2022, which was why an Amended Constitution (Ex. B) was needed in June 2022.

13. Mirer's letter is principally remarkable for its tone. It is framed as a "safe harbor letter," which asserts that if we proceed she will seek Rule 11 sanctions. It also contains a threat against the Plaintiffs asserting that they are "circulating false reports, " exposing them to discipline under Article 2.2(e) of all of the Constitutions. One of the fundamental free speech provisions of the LMRDA Section 101(a)(2) is a right, free of union discipline, to level charges against union officers, in flyers, in meetings, and in the press. In *Salzhandler v. Caputo*, 316 F.2d 445, 451 (2d Cir. 1963), 60 years ago, the Second Circuit made this clear: "So far as union discipline is concerned Salzhandler had a right to speak his mind and spread his opinions regarding the union's officers, regardless of whether his statements were true or false. It was wholly immaterial to Salzhandler's cause of action under the LMRDA whether he spoke truthfully or not." Mirer's approach, to me and to the members, in this dispute is simply reflective of the undemocratic culture which has taken over at the top of ALU.

14. One grounds that Mirer asserts in her letter is that Plaintiffs have not sufficiently exhausted internal union appeals. First of all, the ALU Constitution has no appeal procedure. It has provisions for bringing charges, but no avenue of appealing a decision made by the ALU Executive Board, like adopting an Amended Constitution in December 2022 without a membership vote, and thereafter cancelling elections. In its most recent pronouncement on this exhaustion question, in *Schermerhorn v. Local 100, Transport Workers Union of America, AFL-CIO*, 91 F.3d 316, 325 (2nd Cir.1996), the Second Circuit stated:

> "Section 101(a)(4) of the LMRDA, 29 U.S.C. § 411(a)(4), provides that a union member may be required "to exhaust reasonable hearing procedures" within the union before "instituting legal or administrative proceedings

against such organizations or any officer thereof," provided that a four month lapse of time has not been exceeded in exhausting the procedures. It is clear, however, that requiring exhaustion of intra-union remedies before commencing an action in the federal court is a matter of the court's discretion, regardless of the four month period delineated in the statute. *See Johnson v. General Motors,* 641 F.2d 1075, 1079 (2d Cir.1981) (" '[T]he public tribunals whose aid is invoked *may in their discretion* stay their hands for four months, while the aggrieved person seeks relief within the union.' ") (quoting *National Labor Relations Board v. Industrial Union of Marine & Shipbuilding Workers,* 391 U.S. 418, 426 (1968) (adding emphasis)). District courts have discretion as to whether or not to require exhaustion of internal union procedures based upon "(i) 'whether union officials are so hostile to the employee' as to eliminate the chance of a fair hearing; (ii) the adequacy of the internal procedures; or (iii) whether exhaustion would unreasonably delay the opportunity to obtain a judicial hearing on the merits of the employee's claim." *Cruz v. Local Union No. 3 of the Int'l Bhd. of Elec. Workers,* 34 F.3d 1148, 1154 (2d Cir.1994) (quoting *Clayton v. International Union, United Auto., Aerospace and Agr. Implement Workers of America,* 451 U.S. 679, 689 (1981))

15. And then there is the irreparable injury exception. In a 1961 decision which stands as good law today, the Second Circuit, in *Detroy v. American Guild of Variety Artists*, 286 F.2d 75, 81 (2nd Cir 1961), held,

> "Taking due account of the declared policy favoring self-regulation by unions, we nonetheless hold that where the internal union remedy is uncertain and has not been specifically brought to the attention of the disciplined party, the violation of federal law clear and undisputed, and the injury to the union member immediate and difficult to compensate by means of a subsequent money award, exhaustion of union remedies ought not to be required."

16. Given the efforts Plaintiffs have gone to mediate this dispute, the clear language in the 2nd Constitution which was ignored when it was "adopted," the clear language in the 2nd Constitution requiring an election within two months of certification, the lack of any genuine "internal union remedy," and the ongoing irreparable injury encompassed by denying members the right to vote (deprivations of voting rights long have been regarded as irreparable because they obviously cannot be remedied by an award of damages. *Mason Tenders Local Union No.*

7

*59,* 924 F.Supp. at 542–43; *see, e.g., Elrod v. Burns,* 427 U.S. 347, 373), proceeding with an expeditious hearing brought on by Order to Show Cause, is wholly appropriate.

17. Judge Kaplan, in another case where a Federal Court was asked to and did order an election (in the Screen Actors Guild), *Craig v Boudrot*, 40 F.Supp. 2d 494,5 00 (SDNY 1999), summed this situation up with precision: "This Court is mindful of the deference due unions' interpretations of their own organic documents and of the need for caution in determining whether to become involved in union elections. But deference and caution are not synonymous with blindness and paralysis." Immediate and sweeping assistance is needed in this case.

Dated: New York, New York
July 10, 2023

/s/ *Arthur Z. Schwartz*
Arthur Z. Schwartz
ADVOCATES FOR JUSTICE,
CHARTERED ATTORNEYS
*Attorneys for Plaintiffs*
225 Broadway, Suite 1902
New York, New York 10007
(212) 285-1400
aschwartz@afjlaw.com