# EXHIBIT A



**Arthur Z. Schwartz**
Principal Attorney

aschwartz@afjlaw.com

225 Broadway, Suite 1902
New York, New York 10007

t. (212) 285-1400
f. (212) 285-1410

www.afjlaw.com

July 11, 2023

*By Email*
Retu Singla, Esq.
Jeanne Mirer, Esq.
Julien, Mirer and Singla
One Whitehall Street
New York, New York 10004

Re:   **Sylla et al v Amazon Labor Union**
**1:23-cv-05261 (Donnelly, J)**

Dear Attorneys Singla and Mirer:

Although we served you with papers on July 7, 2023, and emailed you copies of all the filed pleadings yesterday, and you have sent me back a Notice of Motion under FRCP 11 (Ex. A) , you have not appeared on the docket.

Judge Donnelly has asked that I contact you to request that one of you appear so that she can issue an order seen by counsel.

This letter will be on the docket in order to memorialize our compliance with the Judge's request.

Very truly yours,

*Arthur Z. Schwartz*

Arthur Z. Schwartz

cc. US District Court Judge Anne Donnelly

# JULIEN, MIRER, SINGLA & GOLDSTEIN, PLLC

ATTORNEYS AT LAW

1 WHITEHALL STREET 16TH FLOOR

NEW YORK, NEW YORK 10038

JEANNE MIRER                    TELEPHONE: (212) 231-2235                    RIA JULIEN

SETH GOLDSTEIN                  FACSIMILE: (646) 219-0946                    RETU SINGLA

July 10, 2023

Mr. Arthur Z. Schwartz
225 Broadway, Suite 1902
New York, New York 10007

Dear Mr. Schwartz:

Please note that pursuant to Rule 11 we are giving you 21 days to withdraw your lawsuit and if you do not, we will file the attached motion to sanctions.  Indeed, if you go forward with your order to show cause requiring the ALU to expend resources on fighting this case we will seek sanctions for this work as well.

Sincerely,

Jeanne Mirer

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------------x
DR. BRIMA SYLLA et, al.

                                                                No.: 23-CV-05261

                            Plaintiffs,

        -against

AMAZON LABOR UNION  et. al.

                            Defendants.
--------------------------------------------------------------------x


## NOTICE OF MOTION FOR SANCTIONS FRCP RULE 11

        Defendants, by and through counsel, and pursuant to Rule 11 of the Federal Rules of

Civil Procedure, will move for sanctions if the Plaintiffs and their attorney do not withdraw their

complaint and request for relief within 21 days.   In support of their motion, Defendants refer this

Court to their Memorandum in Support, filed simultaneously herewith.

        WHEREFORE, for the reasons stated in the accompanying memorandum of law in

support of this motion, defendants respectfully request that this Court (1) grant their motion,

(2) impose sanctions against plaintiffs' attorneys' in the amount of reasonable expenses,

including attorney's fees, incurred in bringing this motion, and (3) award any other relief that this

Court deems just and proper.


Dated: New York, New York
        July 10, 2023                           Respectfully submitted,

                                        JULIEN, MIRER, SINGLA & GOLDSTEIN PLLC

By:    Jeanne E. Mirer
1 Whitehall Street, 16th Floor
New York, NY 10004
(212) 231-2235
*Attorney for Defendants*
jmirer@workingpeopleslaw.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
DR. BRIMA SYLLA et, al.

                                                    No.: 23-CV-05261

                        Plaintiffs,

        -against

AMAZON LABOR UNION  et. al.

                        Defendants.
-------------------------------------------------------------------x

### MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION FOR SANCTIONS UNDER RULE 11

Defendants respectfully submit this Memorandum of Law in support of their Motion to Sanction Plaintiffs' Attorneys for Violations of FRCP 11(b).

### STATEMENT OF FACTS

On July 7, 2023 Plaintiffs' attorney Arthur Schwartz sent a letter to undersigned counsel in which he provided an ultimatum that Defendants consent to all Plaintiffs demands. The letter demanded full capitulation to the demands by Monday July 10, 2023 at noon or face public embarrassment of a public lawsuit.    Attached to the letter was a draft complaint with the allegations against Defendants.    On July 9, 2023 Defendants counsel responded with a letter advising Plaintiffs counsel that the law suit was frivolous, based on falsehoods which counsel had failed to vet and if filed would be a fraud on the Court.    Defendants also provided Mr. Schwartz with a pre-filing safe harbor letter stating that if he filed, Defendants would serve him with a formal 21-day safe harbor letter, notice of motion and brief. This letter was provided as an incentive to Mr. Schwartz to reconsider his decision to file this litigation in the first instance,

1

which he obviously did not heed.  (Exhibit A)

This case stems from the historic win by the Amazon Labor Union in the NLRB election at the warehouse known as JFK 8 in Staten Island.  The election results were issued on April 1, 2022.   In this election, the Union brought together a multi-racial, multi-generational group of workers.  They were able through worker-to-worker contacts and smart organizing overcome Amazon's multi-million-dollar anti-union campaign.

Amazon since that time has resisted recognizing the union.   Amazon first filed 25 objections.  Hearings on the objections were held throughout June and July 2022.  On September 1, 2022 the Hearing Officer issued a report to the NLRB regional director recommending the region director overrule all of Amazon's objections.   In January 2023 the Regional Director agreed and certified the Union.   Amazon then filed a petition for review to the whole NLRB.  This petition has not yet been ruled on.   While ALU believes the Regional Director's certification has legal weight, and requires Amazon to bargain with the Union, Amazon has resisted consistent demands to bargain and the NLRB is now considering a pre-certification case and bargaining order.

In the meantime, as is normal in any movement, differences of opinion have arisen on strategies such as whether to try to consolidate the union in JFK 8 or whether to try to organize other facilities before winning a contract at JFK8.   In the process, a group now referring to itself as the reform caucus has decided the only way to address these differences is through a membership wide election for new officers, as that would be the best strategy to win a contract fight.   The officers they have in mind to replace the current officers are themselves.   Rather than readying themselves for a contract fight the reform caucus has set its sights not on Amazon's intransigence but on the current leadership.    They evidently seek believe that publicly

embarrassing the union, the union will be stronger in that fight.  Defendants disagree and have hoped to resolve these differences.

The Amazon Labor Union did not exist prior to April 2021 when the leadership started organizing.  As a new organization it had to build its institutions from the ground up.  In the fall of 2021 when it appeared they would be able to secure enough authorization cards to have an NLRB election the union held its founding meeting, elected officers and delegated the officers to write and to adopt a constitution which would be operative until a first representational election could be held for permanent officers could be held.   In the meantime, the operation of the union was to be by the executive officers who could be replaced by appointment if there was a vacancy.

The first Constitution which was written without assistance of counsel had flaws one of which was to define persons as eligible for membership as only those covered by a collective bargaining agreement which meant there could be no members until there was a collective bargaining agreement.   Beginning in May 2022 the members of the leadership met with counsel and began the process of drafting a new constitution.   This process was not completed until late 2022 when it appeared that certification of the union was close at hand and the leadership believed it was best to concentrate on the contract fight before getting involved in organizing an election.

The heart of Plaintiffs' lawsuit is Plaintiffs' claim in Cause of Action Four that the Union has violated the union's Constitution by not holding elections after certification.  Plaintiffs claim Defendants are operating under an improper constitution called constitution 3, which calls for the first union wide representational elections to be held after ratification of the first collective bargaining agreement when the union will be able to collect dues.  Plaintiffs allege a constitution written in June of 2022, called constitution 2, which called for elections in 2024 or sixty days

after certification whichever came first is the operative constitution.

The complaint alleges at paragraph 35 that constitution 2 was written and adopted by the executive officers and approved by the membership in June 2022.   In June and July of 2022, the union leadership was involved in the day- to- day hearings on the objections to the election. There is no record in the minutes of the recording secretary Michelle Nieves that any such meeting occurred.   (See Exhibit B)

On November 6, 2022 the notice to the executive officers of a meeting on November 18, 2022 to meet with the legal team to address the constitution was circulated to all the officers including Connor Spence.   (Exhibit C).   Mr. Spence at that time had submitted a resignation letter effective November 30, 2022.  (Exhibit D) When he did not show up at the meeting, Ms. Nieves texted him the zoom invitation again.   He responded that he had an appointment and did not see the posting and was sorry.  He said he would have rescheduled if he had seen it.  (Exhibit E).   Ms. Nieves said Ms. Retu Singla would send the constitution to him.   He was never excluded from the meeting on the constitution and never said asked what the purpose of talking about the constitution which one would think he would if he believed the June 2022 constitution was already adopted and operative.   Indeed, in a tape recorded conversation prior to the meeting on the constitution,   ALU president Christian Smalls and Vice President Derrick Palmer discussed the upcoming meeting on the constitution with them Mr. Spence at which time he admitted that the constitution which he filed with the DOL with the Union's LM-1 had not been voted on, but because he claimed to have incorporated the suggestions made by counsel that it was okay and there was not a lot left to do.   Clearly, Mr. Spence knew that no final constitution had been voted on when he said that the final one should be voted on.

Mr.   Spence never voiced opposition to Constitution 3 until after it was approved and

adopted.

The premise the law suit is a violation as to the holding of union elections based on the provision in Constitution 2 which was never adopted and which Mr. Spence knows was not adopted.  Making a claim based on the alleged constitution 2 is not a question of fact, it is a fraud on the Court.   The crux of the claim for Constitution 3 being invalid is Mr. Spence's exclusion from the meeting to discuss it.   The notice of the meeting and the text messages show this too is false.   Bringing forward a lawsuit to embarrass the Defendants when the main plaintiff knows the factual premised of the lawsuit are false is bringing a case for an improper purpose.

The complaint also alleges three counts of violations of LMRDA, however there are no factual allegations which support any of these alleged violations.   Stated simply, this lawsuit is a sham, and was filed for the sole and improper purpose of embarrassing the current union leadership.  It is asking this Court to impose a constitution which was never adopted which this court does not have jurisdiction to do.

## ARGUMENT

### A. RULE 11(B) IMPOSES A DUTY ON ATTORNEYS TO MAKE "REASONABLE INQUIRY" PRIOR TO PRESENTING A COMPLAINT TO THE COURT

FRCP Rule 11(b) provides in relevant part that, by presenting a complaint to the court, the attorney signing or filing the complaint is certifying that "to the best of the person's knowledge, information, and belief, *formed after an inquiry reasonable under the circumstances*[emphasis added],--

"(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;

"(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a non-frivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

"(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery […]" Fed. R. Civ. P. 11.

That is, "a pleading, motion or other paper violates Fed. Civ. P. 11 'either when it has been interposed for any improper purpose, or where, after reasonable inquiry, a competent attorney could not form a reasonable belief that the pleading is well-grounded in fact and warranted by existing law or a good faith argument for the extension, modification or reversal of existing law.'" *Abdelhamid v. Altria Group, Inc.*, 515 F. Supp. 2d 384, 389 (S.D.N.Y. 2007). See also *Knipe v. Skinner,* 19 F.3d 72, 74 (2d Cir. N.Y. 1994).

In short, Rule 11(b) "explicitly and unambiguously imposes an affirmative duty on each attorney to conduct a reasonable inquiry into the viability of a pleading before it is signed." *Eastway Const. Corp. v. City of New York*, 762 F.2d 243, 253 (2d Cir. 1985). See also *Kingvision Pay-Per-View Ltd. v. Ramierez*, 2005 U.S. Dist. LEXIS 15015, 1 (S.D.N.Y. July 28, 2005). ("In accordance with well-established Second Circuit precedent, attorneys have an affirmative obligation to conduct a reasonable inquiry into the viability of a pleading before it is filed with the court. A 'reasonable inquiry' requires an attorney to ensure that the pleading [satisfies Fed. R. Civ. P. 11(b)(1)-(3)].").

All three requirements of FRCP Rule 11(b)(1), (2), and (3) must be met for a pleading to comport with the "reasonable inquiry" standard. Stated differently, where any one is not met, whether through a showing of improper use, the lack of a basis in law, the presence of factual allegation "utterly lacking in evidentiary support," a violation of Rule 11 may be found. Moreover,

[d]etermining whether an attorney has violated Fed. R. Civ. P. 11 involves a consideration of three types of issues. A court must consider factual questions regarding the nature of an attorney's prefiling inquiry and the factual basis of a pleading or other paper. Legal issues are raised in considering whether a pleading is warranted by existing law or a good

faith argument for changing a law and whether an attorney's conduct violated Rule 11. Finally, a district court must exercise its discretion to tailor an appropriate sanction. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 388 (U.S. 1990)

Notably absent from this inquiry is the party's good faith. "Good faith" or an allegation thereof is not dispositive of the question of whether Rule 11 is violated. In the words of the Court of Appeals, "No longer is it enough for an attorney to claim that he acted in good faith, or that he personally was unaware of the groundless nature of an argument or claim … Simply put, subjective good faith…. provides [no] safe harbor."*Eastway Const. Corp. supra,* 762 F.2d at 253.

As described above, rejecting a subjective test, the court has embraced an objective test for "reasonable inquiry." Under that test, "the question is one of whether the investigation into the claims made by counsel were objectively reasonable." *Knipe v. Skinner,* supra, 19 F.3d at 75.See also *Derechin v. State Univ. of N.Y.*, 963 F.2d 513, 516 (2d Cir. 1992) ("In determining whether a signer has violated Rule 11, a district court applies an objective standard of reasonableness."); see also *Kingvision Pay-Per-View Ltd. supra at 1* ("A court uses an objective standard of reasonableness and does not consider the subjective beliefs of the person making the violative statement.')

In applying this objective standard, courts impose a different test to facts than they do statements of law. Whereas, "merely incorrect legal statements are not sanctionable under Fed.R. Civ. P. 11" (*Kingvision Pay-Per-View Ltd, supra* at 1) in contrast "Fed. R. Civ. P. 11 requires that factual allegations presented to the court have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery." *Id.* Such objective standard for the reasonable finding of some, albeit bare evidentiary support for the allegations alleged, comports with the purpose of Rule 11, which "is

to avoid filings that are baseless. See *Cooter & Gellv. Hartmarx Corp.,* 496 U.S. at 393 (1990)

("the central purpose of Rule 11 is to deter baseless filings.").

As noted in the recent case of *Tae Won Kim v. Kini LLC Corp.*, No. 20-CV-6009 (LDH)

(RER), 2022 U.S. Dist. LEXIS 105433, at *8 (E.D.N.Y. June 13, 2022)

> "In implementing this rule, [Rule 11] 'courts have long held that an attorney could be sanctioned for conduct that was objectively unreasonable,' which can include 'misrepresenting [*10] facts or making frivolous legal arguments.'" *Bank v. CreditGuard of Am., Inc.,* No. 18-CV-1311 (PKC) (RLM), 2020 U.S. Dist. LEXIS 55065, 2020 WL 1516107, at *2 (E.D.N.Y. Mar. 30, 2020) (quoting *Muhammad v. Walmart Stores E., L.P.,* 732 F.3d 104, 108 (2d Cir. 2013)). In cases "[w]here . . . a motion for sanctions is based on the submission of unsupported factual allegations, 'sanctions may not be imposed unless a particular allegation is utterly lacking in support.'" *Desilva v. N. Shore-Long Island Jewish Health Sys., Inc.,* 27 F. Supp. 3d 313, 332 (E.D.N.Y. 2014) (quoting *Storey v. Cello Holdings,* 347 F.3d 370, 388 (2d Cir. 2003)). In cases challenging a party's legal arguments, "[t]he operative question is whether the argument is frivolous, *i.e.,* the legal position has 'no chance of success,' and there is 'no reasonable argument to extend, modify or reverse the law as it stands.'" *Fishoff v. Coty Inc.,* 634 F.3d 647, 654-55 (2d Cir. 2011) (quoting *Morley v. Ciba-Geigy Corp.,* 66 F.3d 21, 25 (2d Cir. 1995) (internal quotation marks omitted)).

In determining whether to issue sanction, the purpose of the Rule must be central to the

court's analysis in light of the facts. As recently stated by the Bankruptcy Court, the essence of

Rule 11 is as follows:

> The rule imposes an obligation on counsel and client analogous to the railroad crossing sign, "Stop, Look and Listen." It may be rephrased, "Stop, Think, Investigate and Research" before filing papers whether to initiate a suit or to conduct the litigation. These obligations conform to those practices which responsible lawyers have always employed in vigorously representing their clients while recognizing the court's duty to serve the public efficiently. *In re Jazz Photo Corp.,* 312 B.R. 524, 531 (Bankr. D.N.J. 2004) (citing *Lieb v. Topstone Indus., Inc.,* 788 F.2d 151 (3d Cir. 1986)).

This purpose is especially germane in circumstances where the opposing party moves for

Rule 11 sanctions on account of counsel's "aware[nes] of evidence that directly contradicted

many of the allegations." *Abdelhamid v. Altria Group, Inc.,* 515 F. Supp. 2d 384, 398-399

(S.D.N.Y. 2007). In *Abdelhamid v. Altria Group, Inc.*, Altria Group moved for sanctions in the amount of attorney fees incurred in prosecuting the motion to dismiss Abdelhamid's amended complaint where that pleading asserted factual allegations that "were directly contradicted by the deposition testimony of Altria and PMI corporate officers and appear to be without any grounding in fact." *Abdelhamid, supra,* 515 F. Supp. 2d at 398-399 (finding allegations in a complaint rendered baseless by fact development to the contrary including deposition testimony by defendant subsidiary, defendant subsidiary's production of documentary evidence, i.e. a licensing agreement that contradicted plaintiffs' allegations, allegations regarding liability of employees and agency theories thereof of a company that was deemed to be a shell company without employees of any sort.).

Similarly, here, the main plaintiff Mr. Spence, who was an officer in the union at the time of drafting of the constitution 3 knew he was not excluded from the meeting and cannot provide any evidence that the executive officers voted to adopt what is called Constitution 2, or that they put this constitution to a vote. Thus, there can be no evidence to support the claim made by Plaintiffs to this effect in the complaint.

## B. PLAINTIFFS' ALLEGATIONS REGARDING LMRDA VIOLATION HAVE NO BASIS IN FACT AND NONE ARE CITED IN THE COMPLAINT

Plaintiffs invoke jurisdiction under 29 U.S.C 412 which is the provision of LMRDA which states: Any person whose rights secured by the provisions of this subchapter have been infringed by any violation of this subchapter may bring a civil action in a district court of the United States for such relief (including injunctions) as may be appropriate.

The First Cause of Action alleges a violation of LMRDA 101(a)(1) 29 U.S.C. 411 (a)(1) Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws.

The Second Cause of Action alleges a violation of LMRDA 101(a)(2) 29 USC 411(a)(2): Every member of any labor organization shall have the right to meet and assemble freely with other members; and to express any views, arguments, or opinions; and to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings: *Provided,* That nothing herein shall be construed to impair the right of a labor organization to adopt and enforce reasonable rules as to the responsibility of every member toward the organization as an institution and to his refraining from conduct that would interfere with its performance of its legal or contractual obligations.

The Third Cause of Action alleges a violation 29 U.S.C. 529 which states:  It shall be unlawful for any labor organization, or any officer, agent, shop steward, or other representative of a labor organization, or any employee thereof to fine, suspend, expel, or otherwise discipline any of its members for exercising any right to which he is entitled under the provisions of this chapter. The provisions of section 412 of this title shall be applicable in the enforcement of this section.

As to the first cause of action, Plaintiffs do not state who was denied the right to vote. Plaintiffs entire claim is that the Defendants have not scheduled a vote under a constitution that was not formally adopted.   This is not a violation of the LMRDA.

As to the Second Cause of action, the complaint alleges no interference with the right of anyone to assemble and express views at union meetings.   The caucus has not tried to meet at the union hall to discuss its plans to oppose the current leadership.   There are no allegations in the complaint that anyone was not allowed to assemble freely with other members or to express any views, arguments, or opinions or to express at meetings of the labor organization his views, upon candidates in an election of the labor organization or upon any business properly before the meeting, subject to the organization's established and reasonable rules pertaining to the conduct of meetings.   The actions of Mr. Smalls were well within the proviso of this section of the LMRDA

The only allegation made in the complaint is suggesting interference with others is in the allegation where Mr. Smalls in a text message expressed hostility to misrepresentations by a member of what is now called a caucus but in May was calling itself "reformALU.   In the text Mr. Smalls claimed he would sue the them for representing themselves as the ALU when there is only one union recognized in the building.   This statement is not a violation of the LMRDA.   In context it is clear Mr. Smalls believed those associated with   reformALU were claiming reformALU   was the union.   Nonetheless, after this text, there is no evidence the Mr. Smalls made any similar statements and the caucus continued to organize freely to the point of bringing this lawsuit.

As to the third cause of action the complaint does not allege nor could it claim that any member has ever been fined, disciplined suspended or expelled from the union.  There is no violation of this section of the LMRDA.

## **CONCLUSION AND RELIEF SOUGHT**

For the aforementioned reasons, defendants respectfully request that this motion be granted and this Court impose sanctions against plaintiffs' attorneys in the amount of reasonable expenses, including attorney's fees, incurred in bringing this motion.

Dated: New York, New York
       July 10, 2023

Respectfully submitted,

JULIEN, MIRER, SINGLA & GOLDSTEIN PLLC

By:      Jeanne E. Mirer
1 Whitehall Street, 16th Floor
New York, NY 10004
(212) 231-2235
*Attorney for Defendants*
jmirer@workingpeopleslaw.com