# JULIEN MIRER SINGLA & GOLDSTEIN, PLLC

ATTORNEYS AT LAW
1 WHITEHALL ST.,16TH FLOOR
NEW YORK, NEW YORK 10038

_____

JEANNE MIRER　　　　　　　　　TELEPHONE: (212) 231-2235　　　　　　　　　RIA JULIEN
RETU SINGLA　　　　　　　　　　FACSIMILE: (212) 409-8338　　　　　　　　　SETH GOLDSTEIN

April 3, 2024

**By ECF**
Hon. Taryn A. Merkl
United States Magistrate Judge
United States District Court for the Eastern District of NY
225 Cadman Plaza East
Brooklyn, New York 11201

> Re: Sylla et al., v. Amazon Labor Union et al.
> Civil Case No. 23- 05261 (AMD)
> Response to Intervention Letters

Dear Honorable Magistrate Judge Merkl:

## Preliminary Statement

　　This Court has received requests to intervene in this case by Chermo Toure, Nicole Druda and Ronald Boone. (Dckt. 53, 54, 55)   Defendants opposed Valentin Nieves' request to intervene as she did not articulate a basis under the Federal Rules of Civil Procedure.  Defendants also stated that Valentin Nieves engaged in many actions which have hindered the union in its ability to implement the Consent Order. (Dckt. 50)    In response to the instant motions to intervene this Court asked the parties to discuss the proposed next steps by the ALU or the Court to respond to the concerns noted in the motions.  While many of the "concerns" listed in the letter motions are personal attacks and smears against Defendant's President Smalls, the motions raise issues of law that this Court and Defendant ALU is concerned with There is no dispute that the three proposed intervenors are not in support of the current officers of the union nor of Plaintiff's "Reform Caucus".  Simply stated these intervenors are members of Defendant Union and clearly disagree with the Consent Order as it has substantially changed the Union's Constitution and Bylaws and the membership did not have an opportunity to weigh on this decision.

As much as Defendants would like to oppose these motions to intervene, there are statements and arguments made therein that lead Defendants to believe that moving forward with enforcing the Consent Order, which Defendants negotiated and executed in good faith, could place Defendant Union in the position of being sued by members like the proposed intervenors, for violating the Union's Constitution, and also violating the Labor Management Reporting and Disclosure Act, (LMRDA) by effectively disenfranchising thousands of potential voters. Due to these risks, Defendants believe that the current consent order must be withdrawn or re-negotiated.

## The Proposed Intervenors May Have a Cause of Action Against Defendants under the LMRDA If the Current Consent Order is enforced.

Ironically, when Plaintiffs first brought this action in July of 2023, they claimed violations of Section 101(a)(1), (2) and Section 609 of the LMRDA. More specifically they claimed Defendants had breached their equal rights and freedom of speech and assembly, and the imposition of improper union discipline. Defendants were confident that the allegations in Plaintiffs' complaint were either not true, i.e never happened as alleged, or if something did happen it did not amount to a violation of the LMRDA. The last claim in Plaintiffs' complaint was based on a breach of the Union's Constitution and Bylaws in particular a provision which Defendants claimed was unlawfully and without authority added by Plaintiff Spence changing the timing of the first internal union officer election from after a collective bargaining agreement was signed to after certification of the Union's representation petition by the NLRB[1]. The relief Plaintiffs sought in the July lawsuit was a mandatory injunction and a temporary restraining order requiring the Union to hold an election for union officers forthwith. The Complaint was accompanied by an order to show cause in which the Plaintiffs requested a Temporary Restraining order requiring an internal union officer election to be held almost immediately in violation of Defendant's Constitution and Bylaws.

Under Section §301 of the National Labor Relations Act, 29 U.S.C. § 185, Union members have standing to enforce the terms of their Union constitutions and bylaws as contracts between labor organizations and their membership. One of the primary goals of Congress in enacting §301(a) was to address concerns with "unions be[ing] made legally accountable for agreements into which they entered among themselves, an objective that itself would further stability among labor organizations. Therefore, § 301(a) provided *federal* jurisdiction for enforcement of contracts made by labor organizations… Surely Congress could conclude that the enforcement of the terms

---

[1] This Court should take judicial notice that as of today, Amazon.com Services LLC, has filed a motion in Cases: 29-CA-296817, 29-CA-297398, 29-CA-298749, 29-CA-300805, 29-CA-307366, 29-CA-307667, 29-CA-308068, 29-CA-308071, 29-CA-308509, 29-CA-311756, 29-CA-312516, 29-CA-317210, 29-CA-331028 arguing that: "The Board [NLRB] has not yet ruled on Amazon's Request for Review and the underlying Representation Case is still open with the Board." Further arguing that there has not been any final determination of the Objections and thus no certification of representation.

2

of union constitutions — documents that prescribe the legal relationship and the rights and obligations between the parent and affiliated locals — would contribute to the achievement of labor stability." *Plumbers Pipefitters v. Plumbers Pipefitters*, 452 U.S. 615, 624 (1981). The Plaintiffs herein sought to erroneously enforce claims from a June 2022 Constitution unilaterally filed by Plaintiff Spence with the Department of Labor ("DOL"), however, the June 2022 Constitution was never agreed to by the officers of the Defendant Union and upon learning that Plaintiff Spence's Filing was without authorization immediately moved to amend the filing with the DOL

This Court should be aware Michelle Valentin Nieves filed a declaration under oath that Plaintiff Spence's June 2022 Constitution had never been adopted. Thus, at the time the Plaintiffs filed their case they were seeking to enforce a fraudulent "Constitution". However, now, the proposed intervenors claim their rights are being violated because Defendants agreed to an election for officers at a time which is in direct contravention with the November 2022 properly adopted Constitution.

## History of Prior Proceedings.

The Plaintiff's motion for an injunction was heard on July 13, 2023. At the July 13, 2023 hearing, the Honorable Judge Donnelly denied Plaintiffs' motion for a temporary restraining order because of the Complaint's vague and conclusory allegations which did not establish an actual and imminent injury. This Court further directed Plaintiffs to revise their papers and if they wanted to still move for injunctive relief, to do so by August 14, 2023. In the meantime, Defendants filed a pre-motion conference request in order to file a motion to dismiss. Mr. Schwartz was told to respond to Defendants' letter by August 8, 2023. On August 8, Mr. Schwartz told the Court Plaintiffs would respond to Defendants' request for a pre-motion conference on the motion to dismiss in a proposed amended complaint Plaintiffs anticipated filing on August 14, 2023. On August 10, 2023 Amazon filed a motion to reopen the record on the union's certification based on allegations made in Mr. Schwartz's complaint on behalf of Plaintiffs.

On August 14, 2023 the parties requested Judge Donnelly for a conference on whether further pleadings in this case could be filed under seal, to try to avoid further efforts by Amazon to seek to reopen the record, as it was understood that Mr. Schwartz intended to file an amended complaint smearing the union with baseless allegations. On October 12, 2023, Judge Donnelly ruled on the request to file further papers under seal. The order required Plaintiffs' papers to be filed under seal with the caveat that Defendants had three days to justify the sealing. The order required Plaintiffs to file a Second Amended Complaint and move for a preliminary injunction by October 31, 2023.

It was clear to Defendants that the litigation against them by the Plaintiffs had no merit, but was only assisting Amazon in its efforts to stall and refuse to come to the bargaining table. In order to unite the parties in a campaign to target Amazon and not each other, Defendants reached out to Plaintiffs to see if there was a mutual path forward by requesting a settlement conference with the Magistrate Judge. The parties proceeded, and entered into settlement negotiations. Plaintiffs' time to file a second amended complaint and move for preliminary injunction was moved to December 29, 2023, by order. An agreement was reached on December 8, 2023 and was converted to a consent order that Judge Donnelly signed on January 11, 2024. Pursuant to the consent order entered into by the parties it was agreed that: "continuing the litigation prevents all parties from uniting to work towards a good contract for the workers at Amazon's JFK 8 facility. 2. To this end the parties have committed to work together to achieve their common end of improving working conditions at Amazon by, inter alia, concluding a collective bargaining agreement at JFK8 and at the same time giving the members of the union a say in whether to hold various elections. … 18. The questions to be voted on after the mass meeting will be 1) whether the ALU should conduct an officer election, and 2) whether there should be an election of a constitution committee, no sooner than the end of May 2024 or no later than the end of July 2024."

It is within this context that intervenors Michelle Valentin Nieves, Trumo ("Chermo") Toure, Nicole Druda and Ronald Boone, Jr. submitted their respective applications to intervene. Despite the fact that the intervenors' allegations do not come close to articulating a valid basis for intervention under Rule 24(a), which allows intervention as of right to permit anyone who "claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest unless existing parties adequately represent that interest." Fed. R. Civ. P. 24(a)(2). It is the Defendants' position that certain interests of its members are not being protected by the consent order and its operation, in fact the consent order has placed Defendants squarely in danger of violating Title I of the LMRDA and Defendant Union's existing Constitution. If the election of officers proceeds based on a breach of the Constitution in a circumstance where the Union has no access to non-work areas and without a proper list of eligible members (all items that will be easily remedied and secured once a collective bargaining agreement is reached) the implementing the current consent order would subject Defendants to litigation under the LMRDA and/or the Union's constitution.

## Argument

Title I of the Labor-Management Reporting and Disclosure Act of 1959 ("LMRDA") provides a "Bill of Rights" for labor union members, including various protections for members involved in union elections. "Title I of the LMRDA was specifically designed to protect the union member's right to seek higher office in the union," *Hall v. Cole,* 412 U.S. 1, 14 (1973), and includes provisions guaranteeing union members equal voting rights, due process, and free speech in union

affairs. 29 U.S.C. §§ 411(a)(1), (2), (5). Further, under Section 301 of the Labor-Management Relations Act, 29 U.S.C. § 185, Defendant Union's members have standing to enforce the terms of their Union Constitutions and Bylaws as contracts between Defendant labor organization and their membership.

### Breach of Contract

The current conduct complained of by intervenors including the consent order being "a violation of the current AMAZON LABOR UNION constitution which states there will be no elections until after a contract." (Dckt. 55) The failure to apply the clear language of the ALU Constitution and Bylaws to unreasonably interpret the language to allow for an early officer election in direct conflict with the Union's Constitution and Bylaws exposes the Defendants to further liability and litigation under the LMRDA by its members.

While Michelle Valentin Nieves is no longer an officer of Defendant Union, she is a member of Defendant Union and makes a reasonable complaint in her request to intervene that any amendment to Defendant Union's current Constitution can only occur after a collective bargaining agreement is signed. It is clear from the Constitution that it may not be amended prior to the first officer representation election: "Moreover, the constitution and bylaws of the ALU explicitly prohibit the amendment of these documents without adherence to a strict procedure that includes a written proposal from at least one hundred members in good standing, to be submitted well in advance of any meeting at which such amendments would be considered. The recent actions of the ALU and its Reform Caucus not only disregard these stipulations but also set a dangerous precedent that, if unchecked, could severely compromise the integrity of our union's democratic governance." (Dckt. 49) Only through the procedures for amendment of the Constitution or through a Constitutional convention compliant with the ALU Constitution can an internal officer election occur before a collective bargaining agreement is negotiated with the employer. This is consistent with another intervenor's claims: "it is evident that there has been a failure on the part of the union to fulfill its obligations to its members, including the failure to negotiate a contract and address critical issues affecting workers' rights and well-being." (Dckt. 54) Violating Defendant's current Constitution places Defendants in a position to be liable to the intervenors and other like-minded members for making an agreement for an election which is not consistent with the Constitution. Indeed, it is only after a collective bargaining agreement is negotiated or through the intervention of the National Labor Relations Board[2] that the parties will even have access to the non-work areas of the warehouse to be able to campaign on an equal basis and to have access to the list of employees in the certified unit to be able to provide equal notification of any elections or votes and for members to campaign with equal access to the members.

---

[2] Currently the NLRB is aggressively litigating Defendant Union's ability to gain access with Amazon.com LLC., which is equally aggressively opposing such access (13-CA-301810). This matter once decided will be appealed multiple times until it makes its way to the DC Circuit and possibly beyond.

While during the negotiations for the consent order the parties acknowledged that the DOL regulation regarding timing of officer elections for nascent unions could be considered three years from the date the union began to function, there is no guidance issued by the DOL as to whether Defendant Union is considered functioning when it's first representational petition is still being litigated, Amazon.com Services is refusing to recognize Defendant's certification and Defendant Union has not begun receiving dues from a majority of its members. The reality is that such an officer election could only have been ordered by the DOL after the DOL evaluated all the factors which would or would not allow a nascent union to hold an election for permanent officers in contravention to its Constitution and Bylaws.

The flawed agreement to have a referendum vote about whether to have an internal union officer an election was made in the context of negotiating to settle Plaintiffs lawsuit with the goal that the parties could concentrate on organizing for a collective bargaining agreement together in solidarity. The concerns of the proposed intervenors challenging the right of the Defendant Union and this Court to make such an agreement which is contrary to the current constitution was not properly evaluated by the parties.

## Title I: Equal Rights
## Equal Access: Notification Of Election And Access To Campaigning In Warehouse

It is well settled that the purpose of the LMRDA is to guarantee the "full and active participation by the rank and file in the affairs of the union." *American Federation of Musicians v. Wittstein,* 379 U.S. 171, 182-82, 85 S.Ct. 300, 306, 13 L.Ed.2d 214 (1964). These provisions are intended to ensure a full and fair democratic process inside unions so that members are able to exercise their electoral will. As the Second Circuit has explained, "Congress, by passing a 'Bill of Rights' for union members, determined that the efficiency of a monolithic union under autocratic rule was gained at too great a price if it necessitated any sacrifice in the members' rights to determine the course of their organization. The balance was struck in favor of union democracy." *Navarro v. Gannon,* 385 F.2d 512, 518 (2d Cir. 1967) cert. den. 390 U.S. 989, 88 S.Ct. 1184, 19 L.Ed.2d 1294 (1968). Thus upholding the rights of union members to fully participate in an internal democratic electoral process is imperative to the purpose of the LMRDA. The consent agreement does not do this as evidenced by the allegation of the intervenors.

29 U.S.C. § 411(a)(1) provides, among other things, for the equal rights of union members to cast votes of their choosing in elections or referendums: "Every member of a labor organization shall have equal rights and privileges within such organization to nominate candidates, to vote in elections or referendums of the labor organization, to attend membership meetings, and to participate in the deliberations and voting upon the business of such meetings, subject to reasonable rules and regulations in such organization's constitution and bylaws."

Moreover, current intervenors also complain about equal access specifically that there was no "transparency or democratic [process] especially when Amazon JFK 8 have almost 8300 people to educate and make aware of current events like possible votes to see if they want elections on February 24th unless the date changed nobody knows the place or possible time to vote…" (Dckt. 55) Plaintiff's counsel has revealed the paltry number of votes by the members in the referendum but Defendant Union member Boone alleges he was deprived of the right to vote as there was not adequate notice of where and when the voting was taking place sufficient to determine the desires of the workers of JFK8 to hold officer elections at this time. (Dckt. 55)

Even more ironically, it is undisputed between the parties that attempts by the parties to notice the Union membership of the referendum were impaired by Valentin Nieves who refused to turn over the passwords for the Union's email contact list, that while not in any way complete, at least accounted for members interested in getting involved with the Union. Plaintiff Spence only gained control of the Union's contact list from Google on February 16, 2024 after convincing Google that he was the administrator of the list claiming that Defendant Union's contact list was stolen from him. The lack of notice and publicizing for the mass meeting and the referendum vote was not the fault of the parties however, Defendants believe Plaintiff Spence failed to as agreed send out reminder emails to Defendant's contact list during the voting period.

Nonetheless, potential intervenor Boone alleges that the parties' actions deprived him and other members of their right to vote or that the parties have indeed already deprived Defendant Union's members of their right to vote in the recent vote on whether to have an internal union officer election in direct contravention to the Constitution. The potential irreparable injuries to the membership's voting rights and to their right to be governed by the candidates whom they vote for, support and nominate with the intention to be able to choose bargaining representatives and management of the union are long-term and substantial. In *Quinn v. Chiofalo,* the Eastern District Court of New York has held that: "The LMRDA was enacted to encourage democratic self-governance in unions and to curb widespread abuses and corruption among union leadership." 2003 WL 22952859 at 8 (E.D.N.Y. Aug. 26, 2003). *See also Maddalone v. Local 17. United Bhd. of Carpenters Joiners of Am.*, 152 F.3d 178, 183 (2d Cir. 1998) (citing *Franza v. Int'l Bhd of Teamsters. Local 671*.869 F.2d 41, 44 (2d Cir. 1989)). Unfortunately, this matter is one in which Plaintiffs have no real interest in union democracy but rather are only interested in moving a slate of Union members under the name "the Democratic Reform Caucus" towards an internal officer election and victory without regard to Defendant Union's Constitution nor the Bill of Rights enshrined in Title I of the LMRDA[3]. The interests of the 8,000 plus members at JFK8 are held by the certification of representation by the Defendant Union not by the Plaintiffs and thus if the

---

[3] In fact Title I of the LMRDA is completely absent from Attorney Schwartz's opposition to Michelle Valentine Nieves intervention: "A vote of the members has occurred where members voted by a meaningful margin, to move towards an election in June or July. All that is left to litigate here will be an All-Writs Act motion to compel Amazon to make a mailing list available to the union through a 3rd Party mail house, and to compel Amazon to allow candidates into non-work areas of its property." (Dckt. 52) Clearly concerns for Union democracy is not the motivating factor behind Plaintiffs lawsuit.

proposed intervenors sue under Title I or breach the constitution, it is Defendants that will be held liable for violating its Constitution and/or the LMRDA.

Thus, while Defendants, in good faith, attempted to enter into a consent agreement with Plaintiffs, it is clear from the intervenors that there are a number of member protected rights that Defendant Union is not able to address and protect due to the particular circumstances this nascent union finds itself in. The Union will violate the equal protection rights as well as breaching its contract with intervenors by not waiting to bargain a collective bargaining agreement and gain access to the workplace before moving forward with an internal officer election.

It is well settled that Defendant Union cannot take steps to undermine the right of each union member to cast a meaningful vote in union matters. *See, e.g., Brown v. Electrical Workers, Local 58,* 936 F.2d 251 (6th Cir. 1991); *Postal Workers Local 6885 v. American Postal Workers Union,* 665 F.2d 1096, 1101-02 (D.C. Cir. 1981) (collecting cases at 1101 n.12); *Christopher v. Safeway Stores, Inc.,* 644 F.2d 467, 470 (5th Cir. 1981) (declining "the Union's invitation to read this statute to mean that a right created or protected by the statute may be abridged with abandon provided there is an even-handed denial to all."); *Trail v. International Brotherhood of Teamsters,* 542 F.2d 961, 966 (6th Cir. 1976) (holding that "the word 'referendum' guarantees to all union members a right to vote on a union contract which any of them enjoy"). Congress enacted the LMRDA "to shield the union membership from arbitrary, autocratic, and despotic control by union officers and leaders." *Sheet Metal Workers International Association v. Lynn,* 488 U.S. 347 (1989). Unfortunately, without first having conducted a Constitutional convention or amendment to the Constitution, the internal officer election demonstrates despotic control by the parties that takes away the memberships right to vote for candidates of their choosing.

The Southern District Court of New York has held in *Cf. Mason Tenders District Council v. Laborers' International Union,* 884 F. Supp. 823, 833 (S.D.N.Y. 1995) that "A fundamental right which LMRDA was enacted to protect is a local union's right of self-determination."; *Smith v. Distillery, Rectifying, Wine & Allied Workers International Union of America,* 1970 WL 638, at *5 (E.D. Ky. 1970) ("The local membership has been disenfranchised and deprived of the local autonomy to which it would ordinarily be entitled. The right of self- determination in matters which are purely local in nature is a substantial right which should not     be taken away lightly and the deprivation of which cannot be meaningfully recompensed.")

There can be no doubt that violation of equal voting rights under section 101(a)(1) is an irreparable injury. *Kupau v. Yamamoto,* 622 F.2d 449, 457 (9th Cir. 1980); *Beckman v. Local No. 46 International Association of Bridge, Structural and Ornamental Iron Workers,* 314 F.2d 848 (7th Cir. 1963) (refusal to implement a vote denied voting rights "as effectively as if they had stuffed the ballot box itself"); *Pignotti v. Local No. 3 Sheet Metal Workers International Association,* 343 F. Supp. 236, 243 (D. Neb., 1972), *aff'd,* 477 F.2d 825 (8th Cir.), *cert. denied,* 414 U.S. 1067 (1973); *Stettner v. International Printing Pressmen,* 278 F. Supp. 675, 681 (E.D. Tenn.1967).

An injury to voting rights under the LMRDA has been likened to constitutional injuries. "The loss of First Amendment freedoms, **for even minimal periods of time,** unquestionably constitutes irreparable injury." *Elrod v. Burns,* 427 U.S. 347, 373 (1976) (emphasis added); *Dayton Area Visually Impaired Persons, Inc. v. Fisher,* 70 F.3d 1474, 1480 (6th Cir. 1995). The principle articulated in *Elrod v. Burns* applies with equal force to union members' equal voting rights under LMRDA. Cf. *McCormick v. Zero*, *supra.*

Obviously, the above discussion puts Defendants in a difficult position. We propose as a next step that the Court call the parties together to see if a resolution can be reached that can protect Defendant Union from being exposed to legal attacks from Plaintiff members who have sought early internal officer elections and those similarly situated to the proposed intervenors who allege that the Consent Order violates Defendant's Constitution. :

## **Conclusion**

What Title I adds to the LMRDA's election provisions is a vehicle for fixing election violations **before** they cause irreversible damage, so that members' leadership choices may actually be honored.

Respectfully submitted,
/s/
Jeanne Mirer