**UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 13**

| | |
|---|---|
| AMAZON.COM SERVICES LLC | |
| and | Cases 13-CA-301810 |
| | 13-CA-304768 |
| DREW DUZINSKAS, an Individual | 13-CA-319685 |
| | 03-CA-299328 |
| and | 03-CA-299957 |
| | 03-CA-301917 |
| AMAZON LABOR UNION | 03-CA-302091 |
| | 03-CA-302172 |
| and | 14-CA-305671 |
| | 29-CA-298749 |
| CONNOR SPENCE, an Individual | 29-CA-300805 |
| | 29-CA-307076 |
| and | 29-CA-307667 |
| | 29-CA-308068 |
| LUCAS KLEIN, an Individual | 29-CA-308071 |
| | 29-CA-308983 |
| | 29-CA-316634 |
| | 29-CA-331028 |

## FOURTH AMENDED ORDER TRANSFERRING AND CONSOLIDATING CASES, CONSOLIDATED COMPLAINT, AND NOTICE OF HEARING

The above-captioned cases OTHER THAN Case 29-CA-331028 having been filed with the Regional Directors for Regions 3, 13, 14, and 29 and consolidated for trial in a series of orders and complaints, the most recent of which issued on December 22, 2023,

**IT IS HEREBY ORDERED THAT**, pursuant to Section 102.33 of the Rules and Regulations of the National Labor Relations Board (the Board) and to avoid unnecessary costs or delay, that the charge in Case 29-CA-331028, filed by Connor Spence, is transferred to Region 13 for further processing.

**IT IS FURTHER ORDERED** pursuant to Section 102.33 of the Board's Rules and Regulations that Case 29-CA-331028 is consolidated with Cases 13-CA-301810, 13-CA-304768, and 13-CA-310685, which are based on charges filed by Drew Duzinskas (Duzinskas), an Individual, against Amazon.com Services LLC (Respondent), Cases 03-CA-299328, 03-CA-299957, 03-CA-301917, 03-CA-302091, 03-CA-302172, 29-CA-298749, 29-CA-300805, 29-CA-307076, 29-CA-307667, 29-CA-308068, 29-CA-308071, 29-CA-983, and 29-CA-316634, which are based on charges filed by Amazon Labor Union (ALU) against Respondent, and 14-CA-305671, which are based on charges filed by Lucas Klein (Klein), an Individual, against Respondent.

This Order Transferring and Consolidating Cases, Consolidated Complaint, and Notice of Hearing, which is based on the above-listed charges, is issued pursuant to Section 10(b) of the National Labor Relations Act (the Act), 29 U.S.C. § 151 et seq., and Section 102.15 of the Rules and Regulations of the National Labor Relations Board (the Board) and alleges that Respondent has violated the Act as described below.

1. The charges below were filed and served on Respondent on:

|      | Case          | Amendment | Date Filed         | Date Served        |
|------|---------------|-----------|--------------------|--------------------|
| (a)  | 03-CA-299328  |           | July 14, 2022      | July 14, 2022      |
| (b)  | 03-CA-299957  |           | July 25, 2022      | July 25, 2022      |
| (c)  | 03-CA-299957  | First     | August 5, 2022     | August 5, 2022     |
| (d)  | 03-CA-299957  | Second    | June 28, 2023      | June 29, 2023      |
| (e)  | 03-CA-301917  |           | August 24, 2022    | August 24, 2022    |
| (f)  | 03-CA-302091  |           | August 26, 2022    | August 26, 2022    |
| (g)  | 03-CA-302091  | First     | February 10, 2023  | February 10, 2023  |
| (h)  | 03-CA-302172  |           | August 29, 2022    | August 29, 2022    |
| (i)  | 13-CA-301810  |           | August 19, 2022    | August 22, 2022    |
| (j)  | 13-CA-301810  | First     | September 27, 2022 | September 27, 2022 |
| (k)  | 13-CA-301810  | Second    | February 17, 2023  | February 17, 2023  |
| (l)  | 13-CA-304768  |           | October 6, 2022    | October 6, 2022    |
| (m)  | 13-CA-304768  | First     | February 17, 2023  | February 17, 2023  |
| (n)  | 13-CA-319685  |           | June 9, 2023       | June 12, 2023      |
| (o)  | 13-CA-319685  | First     | September 13, 2023 | September 13, 2023 |
| (p)  | 14-CA-305671  |           | October 21, 2022   | October 24, 2022   |
| (q)  | 14-CA-305671  | First     | June 26, 2023      | June 27, 2023      |
| (r)  | 29-CA-298749  |           | July 5, 2022       | July 6, 2022       |
| (s)  | 29-CA-300805  |           | August 4, 2022     | August 5, 2022     |
| (t)  | 29-CA-307076  |           | November 15, 2022  | November 18, 2022  |
| (u)  | 29-CA-307667  |           | November 22, 2022  | November 23, 2022  |
| (v)  | 29-CA-307667  | First     | December 7, 2022   | December 8, 2022   |
| (w)  | 29-CA-308068  |           | November 28, 2022  | December 1, 2022   |
| (x)  | 29-CA-308071  |           | December 1, 2022   | December 1, 2022   |
| (y)  | 29-CA-308983  |           | December 16, 2022  | December 16, 2022  |
| (z)  | 29-CA-316634  |           | April 17, 2023     | April 24, 2023     |
| (aa) | 29-CA-331028  |           | November 30, 2023  | December 1, 2023   |

2. (a) At all material times, Respondent has been a Delaware limited liability company, with headquarters in Seattle, Washington, and offices and places of business throughout the United States, including in Joliet, Illinois (Respondent's MDW2 Joliet and MDW4 Joliet

facilities), Channahon, Illinois (Respondent's ORD2 Channahon facility), Monee, Illinois (Respondent's MDW7 Monee facility), Romeoville, Illinois (Respondent's MDW6 Romeoville facility), 4000 Premier Parkway, St. Peters, Missouri (Respondent's St. Peters facility), Castleton, New York (Respondent's Castleton facility), and a Fulfillment Center at 546 Gulf Avenues, Staten Island, New York (Respondent's JFK8 facility), and has been engaged in the business of providing online retail sales as well as warehousing and distribution of consumer products throughout the United States.

(b) In conducting its operations described above in Paragraph 2(a), during the past 12 months, which is representative of all material times, Respondent, from each of its Illinois facilities listed in 2, derived gross revenues in excess of $500,000, and sold and shipped products, goods, and materials valued in excess of $5,000 directly to points outside the State of Illinois.

(c) At all material times, Respondent has been an employer engaged in commerce within the meaning of Section 2(2), (6), and (7) of the Act.

3. At all material times, the following individuals held the positions set forth opposite their respective names and have been supervisors of Respondent within the meaning of Section 2(11) of the Act and agents of Respondent within the meaning of Section 2(13) of the Act:

|     | Name | Title |
| --- | --- | --- |
| (a) | Jordan Howard | Human Resources Business Partner |
| (b) | Deon Grady | Senior Operations Manager |
| (c) | Daniel Batt | Assistant General Manager |
| (d) | Matt (last name currently unknown to the General Counsel) | Manager |
| (e) | Jeremy Howe | General Manager |
| (f) | Madelyn Banks | Area Manager |
| (g) | Kim Donoghue | Loss Prevention Manager |
| (h) | Tim Hines | Loss Prevention Manager |

| (i) | Ashley Nicholas | Loss Prevention Manager |
| --- | --- | --- |
| (j) | Richard Rivera | Loss Prevention Manager |
| (k) | Allyson Romero | Human Resources Business Partner |
| (l) | Daniel Sandoval | Regional Senior Human Resources Manager |
| (m) | Brian MacFarlane | MDW4 Human Resources Manager |
| (n) | Jennifer Vogig | MDW4 Human Resources Representative |
| (o) | Jacob Blue | MDW4 Manager |
| (p) | Jack Rozak | JFK8 Supervisor |
| (q) | Adebodun Aina | JFK8 Senior Operations Manager |
| (r) | Ariana Ovadia | JFK8 Operations Manager |
| (s) | Unknown male | JFK8 Operations Supervisor |
| (t) | (fnu) Arvinth | JFK8 Human Resources Manager |

4.     At all material times, Respondent has retained a Security Guard named Chris McGhee and labor consultants and/or labor relations team members whose names are currently unknown to the General Counsel, all of whom have been agents of Respondent within the meaning of Section 2(13) of the Act.

5.     At all material times, ALU has been a labor organization within the meaning of Section 2(5) of the Act.

6.     (a)     Since on or about a date within the six months of the filing of the instant charges and at all material times, Respondent has maintained at all of its facilities nationwide in the United States, including the facilities listed in paragraph 2(a) above, its "Amazon Solicitation Policy" (last revised on February 22, 2022) which, among other things, prohibits "the solicitation of any kind by employees on company property during working time" and prohibits the "distribution of literature or materials of any type or description by employees in working areas at any time."

        (b)     Respondent's February 22, 2022, nationwide Solicitation Policy referenced in subparagraph (a) required employees to obtain prior approval of Respondent's Human Resources representatives for any exceptions to the Solicitation policy.

(c) By its February 22, 2022, overly broad Solicitation Policy, referenced in subparagraph (a) and (b), Respondent has been interfering with employees engaging in protected union or other protected concerted activities, including by prohibiting the distribution of literature or the solicitation of memberships or signatures on petitions.

(d) Respondent has enforced its Solicitation Policy described above in sub-paragraphs (a) and (b) selectively and disparately by applying it only against employees who engaged in union activity and/or other protected concerted activity.

7. (a) On or about June 30, 2022, Respondent electronically promulgated the following Off Duty Access rule for its facilities throughout the U.S.[1]:

> Policy: Off Duty Access – CAN and US
> **Purpose**
>
> Employee safety and security is important to Amazon, and this policy describes the safe and secure access to Amazon buildings and working areas outside of buildings. This policy allows Amazon to more easily ascertain who is present and enables Amazon to plan our support staffing, services, maintenance and related functions accordingly.
>
> Applicability
>
> This policy applies to WW Consumer Operations in the Canada and the United States. It applies in these businesses, excluding Physical Stores:
>
> - Amazon Transportation Services (ATS).
> - Global Customer Fulfillment (GCF).
> - Global Delivery Services (GDS).
> - Global Specialty Fulfillment (GSF).
> - Customer Service (CS)
>
> It applies to all Amazon employees working in operation sites. This includes fulltime, reduced-time, part-time, regular, flex, and seasonal employees.

---

[1] The facial unlawfulness of this Off Duty Access rule is being separately litigated, after issuance of a Complaint and Motion for Summary Judgment, in Case 09-CA-298870. The Board issued a Notice to Show Cause in connection with that Motion for Summary Judgment and extended Respondent's time to respond to the Notice to Show Cause until October 6, 2023. A separate motion for default judgment in connection with Respondent's alleged breach of settlement in Cases 13-CA-275270, 13-CA-276695, 13-CA-279376, 29-CA-278982, 29-CA-282693, and 29-CA-284417 was also filed.

Overview

During their off-duty periods (that is, on their days off and before and after their shifts), employees are not permitted inside the building or in working areas outside the building.

Additional support

If you have questions or concerns, reach out to your manager or PXT representative.

This policy may change time to time, with or without advance notice and Amazon reserves the right to depart from the policy when deemed appropriate.

(b)     On or about July 8, 2022, through an electronic message to its employees, Respondent notified employees it had amended the Rule set forth in paragraph 7(a) above.

(c)     On or about July 8, 2022, Amazon asserts that it removed the following language from the Rule set forth in paragraph 7(a) above: "This policy may change time to time, with or without advance notice and Amazon reserves the right to depart from the policy when deemed appropriate."

(d)     Since on or about July 8, 2022, Respondent did not notify its employees that it removed the specific language set forth in subparagraph (c) from its June 8, 2022, Off Duty Access Policy.

(e)     In its July 8, 2022, electronic message to employees referred to in paragraph 7(b), Respondent did not inform employees that the rule promulgated on June 30, 2022, had unlawfully restricted employees' Section 7 rights and in fact told employees that the substance of the rule had not changed, stating, "We recently shared our new Off Duty Access Policy. The mobile A to Z webpage where the policy was posted inadvertently included additional language which has since been removed. The substance of the policy has not changed, and you can review it here. Please note this policy will not be discriminatorily enforced against employees engaging

in protected activity."

(f) Respondent has promulgated, maintained, and enforced the Off Duty Access rule described above in paragraph 7 to discourage its employees from engaging in protected union activities or protected, concerted activities.

8. On or about the dates and locations set forth below, Respondent's employees engaged in concerted activities for the purposes of mutual aid and protection:

(a) July 24, 2022, at an outside break area at Respondent's Castleton facility, by speaking to other of Respondents' employees regarding unionizing;

(b) July 26, 2022, in the cafeteria at Respondent's JFK8 facility, by distributing union literature;

(c) July 31, 2022, in the parking lot at Respondent's St. Peters facility, by distributing union literature;

(d) August 3, 2022, outside of Respondent's MDW2 Joliet facility, by talking to and collecting signatures from employees in support of a petition seeking higher pay;

(e) August 15, 2022, outside of Respondent's Castleton facility, by speaking to employees and distributing union literature;

(f) August 23, 2022, at a bus shelter outside of Respondent's Castleton facility, by attempting to speak to employees about unionizing;

(g) August 25, 2022, in the Employee Resource Center at Respondent's Castleton facility, by speaking to employees about unionizing;

(h) August 25, 2022, outside of Respondent's MDW7 Monee facility, by talking to and collecting signatures from employees in support of a petition seeking higher pay;

(i) August 31, 2022, at a bus shelter outside of Respondent's Castleton facility, by

attempting to speak to employees about unionizing;

(j)     August or September 2022, outside of Respondent's ORD2 Channahon facility, by talking to and collecting signatures from employees in support of a petition seeking higher pay;

(k)     September 23, 2022, outside of Respondent's MDW6 Romeoville facility, by talking to and collecting signatures from employees in support of a petition seeking higher pay;

(l)     September 28, 2022, at Respondent's JFK8 facility, by distributing union information;

(m)     October 3, 2022, in the cafeteria at Respondent's JFK8 facility, by protesting Respondent's failure to address health and safety concerns related to a fire at the JFK8 Facility and advocating to be sent home with pay;

(n)     October 10, 2022, in the first- and third-floor break rooms of Respondent's St. Peters facility, by speaking to employees about union organizing;

(o)     December 7, 2022, at Respondent's JFK8 facility, by distributing union information;

(p)     On or about April 14, 2023, on the green walkway, in the "stand-up" area, and in the break room at Respondent's JFK8 facility, by speaking to employees regarding Respondent's disciplinary policy;

(q)     On or about April 18, 2023, by visiting the break room at Respondent's JFK8 facility in order to speak to employees about terms and conditions of employment; and

(r)     On or about April 26, 2023, during off-duty time, in a non-work area inside Respondent's MDW4 Joliet facility, by speaking to employees about unionizing and other efforts aimed at mutual aid and protection.

(s) On multiple occasions in late September and October, 2023, including on October 18, 2023, during off-duty time, in a non-work area inside Respondent's JFK8 facility, by speaking to employees about plans to engage in protected concerted activity to demand higher pay.

9. On or about July 24, 2022, at Respondent's Castleton facility, by Richard Rivera, called the police on off-duty employees of Respondent and non-employee union organizers engaged in the protected activity described above in paragraph 8(a).

10. On about July 31, 2022, Respondent, through Security Guard McGhee at Respondent's St. Peters facility, prohibited an employee from engaging in the protected activity described above in paragraph 8(c).

11. On or about August 3, 2022, Respondent, through agents whose names are currently unknown to the General Counsel, outside of Respondent's MDW2 Joliet facility:

(a) Instructed employees that they cannot engage in the protected concerted activities referenced in paragraph 8(d) and directed them to leave the property and go across the street.

(b) Engaged in surveillance of employees to monitor and/or discover their concerted activities and told employees that their activities were under surveillance by Respondent.

(c) Threatened its employees with calling the police if they did not leave the property because of their protected concerted activities referenced in paragraph 8(d).

(d) Contacted the police, who came to Respondent's MDW2 Joliet facility because of their protected concerted activities referenced in paragraph 8(d).

(e) Instructed employees that they do not have a right to be on Respondent's property outside of the MDW2 Joliet facility, directed employees to leave Respondent's property, and orally instructed the police to remove the employees from Respondent's property because of

their protected concerted activities referenced in paragraph 8(d).

12.     On or about August 15, 2022, at Respondent's Castleton facility, by Richard Rivera, called the police on off-duty employees of Respondent and non-employee union organizers engaged in the protected activity described above in paragraph 8(e).

13.     On or about August 23, 2022, at Respondent's Castleton facility,

(a)     By Richard Rivera, Tim Hines, and Ashley Nicholas, denied off-duty employees of Respondent access to Respondent's premises, thereby prohibiting them from engaging in the protected activity described above in paragraph 8(f);

(b)     By Richard Rivera, threatened to call police on off-duty employees of Respondent and non-employee union organizers in order to prevent them from engaging in the protected activity described above in paragraph 8(f); and

(c)     By Richard Rivera, called the police on off-duty employees of Respondent and non-employee union organizers in order to prevent them from engaging in the protected activity described above in paragraph 8(f).

14.     On or about August 25, 2022, at Respondent's Castleton facility, by Madelyn Banks, Richard Rivera, Allyson Romero, and Daniel Sandoval, denied Respondent's off-duty employees access to its premises, thereby prohibiting them from engaging in the protected activity described above in paragraph 8(g).

15.     On or about August 25, 2022, Respondent, through agents whose names are currently unknown to the General Counsel, outside of Respondent's MDW7 Monee facility:

(a)     Instructed employees that they cannot engage in protected concerted activities referred to in paragraph 8(h);

(b)     Instructed that employees engaged in protected concerted activities referenced in

paragraph 9(h) follow its overly-broad "Amazon Solicitation Policy" described in paragraph 6, or in the alternative, if the "Amazon Solicitation Policy" described in paragraph 6 is not overly-broad, that it directed said employees engaged in protected concerted activities referenced in paragraph 8(h) to follow its "Amazon Solicitation Policy," thus discriminatorily applying its policy towards those engaged in protected concerted activities;

 (c) Instructed employees engaged in protected concerted activities referenced in paragraph 8(h) to leave Respondent's property and

 (d) Engaged in surveillance of employees to monitor and/or discover their concerted activities.

16. On or about August 31, 2022, at Respondent's Castleton facility, by Kim Donahue and Tim Hines,

 (a) Denied Respondent's off-duty employees access to its premises, thereby prohibiting them from engaging in the protected activity described above in paragraph 8(i); and

 (b) Called the police on off-duty employees of Respondent and non-employee union organizers in order to prevent them from engaging in the protected activity described above in paragraph 8(i).

17. On or about August or September 2022, Respondent, through an agent whose name is currently unknown to the General Counsel, outside of Respondent's ORD2 Channahon facility, instructed employees that they should not be at the property engaging in the protected, concerted activities referred to in paragraph 8(j).

18. On or about September 23, 2022, Respondent, through agents whose names are currently unknown to the General Counsel, outside of Respondent's MDW6 Romeoville facility:

 (a) Instructed employees engaged in protected concerted activities referred to in

paragraph 8(k) to leave the property;

    (b)    Threatened its employees with calling the police if they did not leave the property and because of their protected concerted activities referred to in paragraph 8(k);

    (c)    Contacted the police, who came to Respondent's MDW6 Romeoville facility, because of the employees' protected concerted activities referenced in paragraph 8(k);

    (d)    Engaged in surveillance of employees to monitor and/or discover their concerted activities; and

    (e)    Interrogated its employees about their protected concerted activities.

19.    On about October 10, 2022, Respondent, in breakrooms at Respondent's St. Peters facility:

    (a)    Through Jordan Howard, Deon Grady, Daniel Batt, and Matt (last name unknown), enforced the rule described above in paragraph 7 selectively and disparately by applying it only against employees who engaged in protected concerted and/or union activity as described above in paragraph 8(n); and

    (b)    Through Jordan Howard and Deon Grady, threatened employees with discipline in retaliation for engaging in protected concerted and/or union activity as described above in paragraph 8(n).

20.    On or about April 14, 2023, Respondent, in the break room at Respondent's JFK8 facility, by Jack Rozak and Adebodun Aina:

    (a)    Disparately enforced it Off Duty Access rule described above in paragraph 7 against employees engaged in protected concerted activities as described above in paragraph 8(p);

    (b)    Threatened employees with discipline for engaging in union and protected

concerted activities as described above in paragraph 8(p); and

    (c)    Implied that employees could not engage in union and protected concerted activities as described above in paragraph 8(p) because of Respondent's no solicitation policy described above in paragraph 6.

21.    On or about April 18, 2023, Respondent, in the break room at Respondent's JFK8 facility, by Ariana Ovianda and a supervisor whose name is not known to the General Counsel:

    (a)    Disparately enforced it Off Duty Access rule described above in paragraph 7 against employees engaged in protected concerted activities as described above in paragraph 8(q); and

    (b)    Engaged in surveillance of employees to monitor and/or discover their concerted and union activities.

22.    On or about April 26, 2023, at Respondent MDW4 Joliet facility, by Brian MacFarlane, instructed employees engaged in protected concerted activity as described above in paragraph 8(r) that they must leave Respondent's facility within "a reasonable amount of time" after the end of their work shift and that they were not allowed to engage in union or protected, concerted activities in Respondent's facilities.

23.    On multiple occasions in late September and in October, 2023, including on October 18, 2023, at Respondent's JFK8 facility, by Human Resources Manager Arvinth, enforced the rule described above in paragraph 7 selectively and disparately by applying it only against employees who engaged in protected concerted and/or union activity as described in paragraph 8(s).

24.    By Respondent's conduct described above in paragraphs 9–23, Respondent enforced its Off Duty Access policy described above in paragraph 7 selectively and disparately by applying it only against employees who engaged in union activity and/or other protected, concerted activity .

25. Respondent enforced the rule described above in paragraph 7 by disciplining its employees named below in the manner described following those employees' names on or about the dates opposite those employees' names:

|       | Name                     | Discipline            | Date              |
|-------|--------------------------|-----------------------|-------------------|
| (i)   | Brett Daniels            | verbal coaching       | July 28, 2022     |
| (ii)  | Derrick Palmer           | documented coaching   | November 9, 2022  |
| (iii) | Derrick Palmer           | first written warning | November 9, 2022  |
| (iv)  | Connor Spence            | documented coaching   | November 19, 2022 |
| (v)   | Connor Spence            | first written warning | November 19, 2022 |
| (vi)  | Michelle Valentin Nieves | verbal coaching       | November 26, 2022 |
| (vii) | Tristan Martinez         | documented coaching   | December 1, 2022  |
| (viii)| Tristan Martinez         | first written warning | December 1, 2022  |
| (ix)  | Connor Spence            | final written warning | December 10, 2022 |
| (x)   | Drew Duzinskas           | documented coaching   | May 8, 2023       |
| (xi)  | Connor Spence            | final written warning | June 12, 2023     |
| (xii) | Connor Spence            | suspension            | October 23, 2023  |
| (xiii)| Connor Spence            | discharge             | November 29, 2023 |

26. By the conduct described above in paragraphs 6–7 and 9–24, Respondent has been interfering with, restraining, and coercing employees in the exercise of the rights guaranteed in Section 7 of the Act, thereby violating Section 8(a)(1) of the Act.

27. By the conduct described above in paragraph 25, Respondent has been discriminating in regard to the hire or tenure or terms or conditions of employment of its employees, thereby discouraging membership in a labor organization in violation of Section 8(a)(1) and (3) of the Act.

28. The unfair labor practices of Respondent described above affect commerce within the meaning of Section 2(6) and (7) of the Act.

**WHEREFORE**, as part of the remedy for the unfair labor practices alleged above, the General Counsel seeks an Order requiring that Respondent:

(1) Physically post the Notice to Employees ("Notice") in all locations where Respondent typically posts notices to employees, including but not limited to employee breakrooms (Table Top displays) and in all "inStallments" (employee bathrooms and bathroom stalls), and that Respondent electronically distribute the Notice by all methods that Respondent communicates with its employees, including but not limited to email, text message, social media, Voice of Associates (VOA) and applications, including the Amazon A to Z app and its "inSites." The physical and electronic Notice shall be in English and in Spanish and any other languages deemed necessary to apprise employees of their Section 7 rights;

(2) Physically post the Notice of Employee Rights in all locations where Respondent typically posts notices to employees, including but not limited to employee breakrooms (Table Top displays) in all "inStallments" (employee bathrooms and bathroom stalls), and that Respondent electronically distribute the Notice of Employee Rights by all methods that Respondent communicates with its employees, including but not limited to email, text message, social media, Voice of Associates (VOA) and applications, including the Amazon A to Z app and its "inSites." The physical and electronic Notice of Employee Rights shall be in English and Spanish and any other languages deemed necessary to apprise employees of their Section 7 rights;

(3) By a representative of Respondent, read the Notice to Employees, in English and Spanish and any other languages deemed necessary, in the presence of a Board Agent and the Charging Parties, at a meeting(s) convened by Respondent for each of its facilities nationwide, such meeting(s) to be scheduled during work hours and to ensure the widest possible employee attendance;

(4) Schedule with Region 13 of the National Labor Relations Board a mandatory training session(s) for all Respondent supervisors, managers, and agents (including security personnel and all outside labor or management consultants) covering the rights guaranteed to employees under Section 7 of the Act and submit an attendance list to the Regional Director within 7 days of the training session(s);

(5) Hand-deliver and email the signed Notice to all supervisors, managers, and agents, along with written instructions signed by Respondent's representative, directing them to comply with the provisions of the Notice, and provide the Regional Director of Region 13 written proof of compliance;

(6) Rescind the unlawful "Off Duty Access" rule described above in paragraphs 7 and 8 at all Respondent facilities where that policy is in effect for a period of three years and provide appropriate written and electronic notification to all employees at each of those facilities that Respondent has rescinded the Off Duty Access policy. Should Respondent wish to reinstate a lawful access policy after the three-year period, Respondent must include a disclaimer that Respondent will not apply or enforce the policy discriminatorily to Section 7 activities;

(7) Rescind the unlawful "Solicitation Policy" described above in paragraph 6 at all Respondent facilities where that policy is in effect and provide appropriate written and electronic notification to all employees at each of those facilities that Respondent has rescinded the Solicitation Policy. Should Respondent wish to reinstate a lawful solicitation policy after the conclusion of the Notice Posting period, Respondent must include a disclaimer that Respondent will not apply or enforce the policy discriminatorily to Section 7 activities;

(8) Rescind the discipline and/or other adverse actions issued to all employees nationwide that were disciplined pursuant to the Solicitation policy described above in paragraph 6 or the Off Duty Access policy described above in paragraph 7, including, but not limited to Brett Daniels, Connor Spence, Derrick Palmer, Michelle Valentin Nieves, Tristan Martinez, and Drew Duzinskas and notify each employee that this has been done and that the discipline or adverse action will not be used against the employee in any way;

(9) Offer Connor Spence full reinstatement to his former job or, if that job no longer exists, to a substantially equivalent position, without prejudice to his seniority or any other rights or privileges previously enjoyed;

(10) Make Connor Spence whole for any loss of earnings and other benefits, and for any other direct or foreseeable pecuniary harms suffered as a result of the unlawful termination;

(11) Compensate Connor Spence for the adverse tax consequences, if any, of receiving a lump sum backpay award, and file with the Regional Director for Region 29, within 21 days of the date the amount of backpay is fixed, either by agreement or Board order, a report allocating the backpay award to the appropriate calendar year(s);

(12) Allow union representatives reasonable access to Respondent's bulletin boards and other places where notices to employees are customarily posted; and

(13) Allow union representatives reasonable access to Respondent's facilities in non-work areas during non-work time.

The General Counsel further seeks all other relief found to be just and proper to remedy the unfair labor practices alleged and effectuate the policies of the Act.

## ANSWER REQUIREMENT

Respondent is notified that, pursuant to Sections 102.20 and 102.21 of the Board's Rules and Regulations, it must file an answer to the complaint. The answer must be **received by this office on or before January 31, 2024, or postmarked on or before January 30, 2024.** Respondent also must serve a copy of the answer on each of the other parties. The answer must be filed electronically through the Agency's website. To file electronically, go to www.nlrb.gov,

click on **E-File Documents**, enter the NLRB Case Number, and follow the detailed instructions. Responsibility for the receipt and usability of the answer rests exclusively upon the sender. Unless notification on the Agency's website informs users that the Agency's E- Filing system is officially determined to be in technical failure because it is unable to receive documents for a continuous period of more than 2 hours after 12:00 noon (Eastern Time) on the due date for filing, a failure to timely file the answer will not be excused on the basis that the transmission could not be accomplished because the Agency's website was off-line or unavailable for some other reason. The Board's Rules and Regulations require that an answer be signed by counsel or non-attorney representative for represented parties or by the party if not represented. See Section 102.21. If the answer being filed electronically is a pdf document containing the required signature, no paper copies of the answer need to be transmitted to the Regional Office. However, if the electronic version of an answer to a complaint is not a pdf file containing the required signature, then the E-filing rules require that such answer containing the required signature continue to be submitted to the Regional Office by traditional means within three (3) business days after the date of electronic filing. Service of the answer on each of the other parties must still be accomplished by means allowed under the Board's Rules and Regulations. The answer may not be filed by facsimile transmission. If no answer is filed, or if an answer is filed untimely, the Board may find, pursuant to a Motion for Default Judgment, that the allegations in the complaint are true.

Dated at Chicago, Illinois this 17th day of January 2024.

                                                  */s/ Angie Cowan Hamada*
                                      Angie Cowan Hamada, Regional Director
                                      National Labor Relations Board
                                      Region 13
                                      219 South Dearborn Street, Suite 808
                                      Chicago, IL 60604
                                      (312) 353-7570