UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
DR. BRIMA SYLLA, CONNOR SPENCE, et al

                              Plaintiffs,

-against-

AMAZON LABOR UNION, and CHRIS SMALLS,          Civil Case No. 23-5261
as President of the Amazon Labor Union,

                              Defendants.
------------------------------------------------------------X

**MEMORANDUM OF LAW IN SUPPORT OF ALL-WRITS ACT
APPLICATION ADDRESSED TO AMAZON.COM SERVICES, LLC
TO FURTHER THE RUNNING OF AN ELECTION IN
THE AMAZON LABOR UNION**

## INTRODUCTION

This is an application, pursuant to the All-Writs Act, seeking to have the Court direct a third party, Amazon.com Services, LLC (hereinafter "Amazon"), which is the employer of all members of the Amazon Labor Union, which is having its first ever officer election pursuant to this Court's January 10, 2024, Consent Order

a) to provide a third party mailing house with the name and address of all "hourly full-time and regular part-time fulfillment center associates employed at the Amazon JFK8 building located at 546 Gulf Avenue, Staten Island, New York, (hereinafter "JFK8) on or before May 12, 2024," unless notified by the Neutral Monitor adjudicating disputes under this Court's Consent Order of January 10, 2024 that said list is not needed because there will not be a contested election in the Amazon Labor Union;

b) to allow employees who are running for office in the election which will be occurring in the Amazon Labor Union, who are qualified to run for that office due to their current

employment at Amazon, or because they are terminated employees currently challenging their termination through a legal process, including, but not limited to, the National Labor Relations Board,

    1. access to all areas outside the front entrance of JFK8, so long as access to the doors of JFK8 are not blocked;

    2. Access to all employee break rooms within JFK8;

The election process in the union at Amazon's JFK8 Warehouse is underway. Plaintiffs seek the assistance of this Court to assure that the terms of the Consent Order are fully carried out, and that this important but fledgling union has the ability to hold its first-ever election. We seek no disruption of Amazon's facilities or no access to any secret records. We need the Court's assistance in order to accomplish this.

## STATEMENT OF FACTS

The Amazon Labor Union ("ALU") was certified, by the Regional Director of Region 29 of the National Labor Relations Board ("NLRB"), on January 11, 2023, pursuant to Section 9(a) of the National Labor Relations Act ("NLRA"), as the exclusive collective bargaining representative of "all hourly full-time and regular part-time fulfillment center associates employed at the Amazon JFK8 building located at 546 Gulf Avenue, Staten Island, New York," (hereinafter "JFK8"). See Ex. A to the Schwartz Declaration.

Amazon has appealed that certification to the NLRB but has not succeeded in overturning the certification.

On July 12, 2023, the NLRB General Counsel issued a complaint against Amazon for refusing to bargain with the ALU, in violation of the NLRA. See Exhibit B to the Schwartz Declaration. That complaint is being contested by Amazon and has not yet gone to trial.

On numerous dates, both at JFK8 and at other warehouses across the country where ALU and other unions have launched organizing drives, Amazon has enforced a "Solicitation" policy, which prohibits "the solicitation of any kind by employees on company property during working time" and prohibits the "distribution of literature or materials of any type or description by employees in working areas at any time." Amazon has used that policy to terminate a number of union activists, one of which is Plaintiff Connor Spence, who was discharged on November 29, 2023, for violating that policy. The NLRB has issued at least 18 complaints against Amazon for enforcing this policy, including a complaint alleging that Connor Spence's termination was unlawful. Those complaints have been consolidated, see Exhibit C to the Schwartz Declaration., and a trial is currently underway.

In around July 2023 the instant lawsuit was filed seeking to have an election of officers in the ALU.

On January 10, 2024, after the parties resolved their dispute about whether to have an election, a Consent Order, Exhibit D to the Schwartz Declaration. was signed by Judge Donnelly.

Under the terms of that Order, a referendum was held from February 27, 2024, through March 2, 2024, about whether to have an officer election. ALU set up a table about 25 feet to the right of the door where all employees enter, during 10–12-hour periods, to facilitate voting. The area facing the JFK8 warehouse is a huge parking lot which is not gated, and which has no security stopping vehicles. During the first day of voting security personnel told the tablers that they had to leave the space adjacent to the building. The Neutral Monitor chosen by the parties pursuant to the Consent Order, called counsel for Amazon, who told him that the voting table could stay as long as no terminated employees, most especially Chris Smalls, the ALU President, and Connor Spence, were not anywhere with 100 feet of the building. The table remained under these conditions.

The members of ALU who voted, voted in favor of having an officer election, and election of a Constitutional Revision Committee, and to hold that election in June or July 2024. In order to have a valid election in a private sector union, under the Labor Management Reporting and Disclosure Act, notice of the election must be mailed to the potentially eligible members at least 15 days before the election. See 29 U.S. Code § 481(e). The parties have agreed any employee in the NLRB-recognized bargaining unit who signs a membership card will be eligible to vote in the election. The union, at the direction of the NLRB, gave the union a list back in 2022 (called an *Excelsior* list), but that list is extremely out of date because Amazon has a high turnover at JFK8. The only source of a complete list is Amazon.

Amazon's counsel has been asked by the Neutral Monitor, and by counsel for the ALU, whether they will provide a copy of the current employee list to a neutral third-party mail house, which could send out the mailing without turning over the list to ALU. This would be much the same way as an employer allows a mailing in a class action discrimination case to be sent out. They have refused. I have made them aware that this application is being made, and, in fact, they have been furnished with a copy of this Proposed Order to Show Cause.

Some of the Plaintiffs have announced an intention to run for office. Mr. Spence has been nominated by a group created by the plaintiffs to run for President of the ALU. Mr. Sylla is running for Vice President, Ms. Cole is running for Recording Secretary, and Ms. Hossain is running for Secretary-Treasurer. They have an interest in the election being conducted, both as members and as candidates.

As a first step towards an election, after discussion, the Neutral selected May 11, 2024, as the date for nominations. Notice of the nominations meeting (which does not have to be by mail) has been distributed to employees coming into and out of JFK 8 since April 10, 2024. A copy of the Notice is annexed as Exhibit E to the Schwartz Declaration.

Under the ALU Constitution, the election can be held 30 days after the nominations meeting, dependent, of course, on the proper LMRDA notice by mail. Ideally, the election would be scheduled beginning June 11, 2024, and (if Plaintiffs' proposal is adopted) proceeding for five days until June 15, 2024, in front of the JFK8 building. But the election cannot be scheduled until there is a means to obtain the list, and a clear ability to send out the Election Notice no later than May 24, 2024.(Of course, it would be fairer to give the members more than 15 days notice, but that would be the cut off date due to the Memorial Day weekend.)

Additionally, it is clear, based on what occurred in February 2024, that Connor Spence, even though a candidate for President, could be barred from campaigning outside the front doors of JFK8, which the other possible candidates for President, who are not terminated employees, would be allowed to do. Connor Spence would also be barred from entering the facility to campaign in non-work areas, something the other candidates would be allowed to do, even under Amazon's unlawful no-solicitation [literature distribution] policy which brought about Connor Spence's unlawful firing. This would also create an unlawful advantage to a not-fired candidate.

**ARGUMENT**

**THE ORDER SOUGHT BY THE PLAINTIFFS
IS AUTHORIZED BY THE ALL-WRITS ACT
AND IS SUFFICIENTLY NARROWLY TAILORED
TO BE ISSUED BY THE COURT**

The issues raised by this application have been dealt with squarely by the Second Circuit, in litigation which occurred in the wake of the Consent Decree which had the Teamster Union run by a Government-appointed administrator during the 1990s. That administrator was tasked, by the Consent Order, with running both local elections and several national elections. In the Course of these elections there was a need for employer assistance with those elections. At times employers balked. The seminal case discussing the law in this Circuit was the Second Circuit's

decision in *U.S. v. International Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL-CIO*, 948 F.2d 98 (2nd Cir. 1991).

The core of the law is laid out is the Courts discussion about giving a candidate, not employed by the employer involved, Yellow Freight, access top the employer's property in order to campaign:

> Yellow Freight, many of whose employees are IBT members, has the following company policy:
>
>> There shall be no distribution of literature or solicitation by non-employees in working or non-working areas during working or non-working times. In other words, non-employees are not allowed on company property for the purpose of distributing literature or soliciting.
>
> The Administrator found such a right of access for union campaign activity under applicable federal labor law. He further affirmed the rulings of the Election Officer that adequate alternative means of communication were available to Hewer at the Detroit facility, but not to Clement and McGinnis at the Chicago terminal. In affirming the latter ruling, the Administrator considered almost exclusively alternative campaigning feasibilities at the Chicago Ridge terminal, except for the following conclusory statement: "the complainants did not have a reasonable alternative means of communication off company property with IBT members at this facility."…
>
> The district court premised its assertion of authority over Yellow Freight upon the All Writs Act, which provides in pertinent part:
>
>> The Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law.28 U.S.C. § 1651(a) (1988).
>
> As the Supreme Court has stated:
>> "The power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice."
>
> *United States v. New York Tel. Co.,* 434 U.S. 159, 174 (1977) (citations omitted); *see also Yonkers Racing Corp. v. City of Yonkers,* 858 F.2d 855, 863

(2d Cir.1988), *cert. denied,* 489 U.S. 1077, 109 S.Ct. 1527, 103 L.Ed.2d 833 (1989); *Benjamin v. Malcolm,* 803 F.2d 46, 53 (2d Cir.1986), *cert. denied,* 480 U.S. 910, 107 S.Ct. 1358, 94 L.Ed.2d 528 (1987); *In re Baldwin–United Corp.,* 770 F.2d 328, 338 (2d Cir.1985)….

Despite this authority, Yellow Freight contends that the Consent Decree cannot be enforced against it because Yellow Freight is not a party to the Consent Decree. Yellow Freight cites, in support of this view, our recent statement that:"It is true that, for purposes of interpretation, a consent decree is treated as a contract among the settling parties, *Firefighters v. City of Cleveland,* 478 U.S. 501 (1986), and that the terms of a consent decree cannot be enforced against those who are not parties to the settlement. *Martin v. Wilks,* 490 U.S. 755 (1989). *IBT,* 931 F.2d at 185. We proceeded immediately to acknowledge, however, that "there are several exceptions to this general rule," *id.,* and invoked one of those exceptions to impose upon IBT affiliates, not parties to the Consent Decree, the election rules promulgated pursuant to the Consent Decree. *See id.* at 187. We have previously subjected other nonparties to the Consent Decree, *see United States v. IBT,* 907 F.2d 277, 279–80 (2d Cir.1990); *IBT,* 905 F.2d at 613 (2d Cir.1990), in the former case invoking the All Writs Act to affirm an order restraining all members and affiliates of the IBT from "filing or taking any legal action that challenges, impedes, seeks review of or relief from, or seeks to prevent or delay any act of [the court-appointed officers] in any court or forum in any jurisdiction except [the Southern District of New York]." 907 F.2d at 279. This case, in any event, does not require us to determine whether the Consent Decree, of its own force, applies to Yellow Freight. Rather, the issue here is whether the All-Writs Act authorized the district court and the officials acting pursuant to its authority to issue the order requiring Yellow Freight to permit campaigning on its property….

[A]s a general rule:[I]f jurisdiction over the subject matter of and the parties to litigation is properly acquired, the All Writs Act authorizes a federal court to protect that jurisdiction even though nonparties may be subject to the terms of the injunction. *IBT,* 907 F.2d at 281.

The district court has subject matter jurisdiction of the underlying controversy pursuant to RICO. Yellow Freight does not contest personal jurisdiction, and in any event, "the All Writs Act requires no more than that the persons enjoined have the 'minimum contacts' that are constitutionally required under due process." *IBT,* 907 F.2d at 281 (quoting *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 158, 90 L.Ed. 95 (1945)).

Since the jurisdictional requirements are satisfied, the remaining issues, in the language of the All Writs Act, are whether the district court's order was "necessary or appropriate" to the implementation of the Consent Decree, and whether it was imposed agreeably "to the usages and principles of law." 28 U.S.C. § 1651 (1988).

*U.S. v. International Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America,* AFL-CIO, 948 F.2d 98, 103 (2nd Cir 1991).

The rest of the 2nd Circuit's decision addresses is about how to shape the relief, whether it is necessary and whether it is reasonable.

Plaintiffs are seeking a narrowly tailored order. They have no other way of meeting the mailing requirements of 29 SCS Sec 481(e). They do not seek to have a copy of the Amazon employee mailing list but seek to have it given to a third-party mailer so that it can be used to send out an Election Notice. Amazon can provide this list with little effort since it has every employee's address at least for payroll purposes.

With respect to access. There is the question of access in general, and whether there are any other means to approach and address employees, which is discussed in the *Teamsters* case cited above, and the issue of unequal access. Unequal access of candidates violates the LMRDA . *Dole v. Local Union 226, Hotel & Restaurant Employees*, 718 F.Supp. 1479, 1483–84 (D.Nev.,1989) ("Although no case has held that use of union status to obtain incumbent access to non-public areas of an employer's property without providing the same access to all candidates violates section 401(g), such a holding is consistent with the purpose behind the LMRDA. ...Thus, the court finds that business agents who use their official status to obtain candidate access to non-public areas of an employer's business, while not providing the same access to all candidates, have given value. As such, the business agent's actions violate section 401(g).")

Plaintiffs do not seek to have fired workers who are eligible candidates, such as Connor Spence, to be able to roam freely in the JFK8 building; they seek to have him allowed to campaign near the doors of JFK8 (perhaps shaking hands of members, or engaging in

8

conversation), and they seek access to the employee break room adjacent to the parking lot, which has a door that opens to the parking lot, so that fired but eligible employees can engage fellow members there. If barred from being in front of the JFK8 Warehouse, Connor Spence, or any other fired worker running, will really have no significant means to reach out to other members. Since the presence of the voting table over 52 hours over 5 days in February caused no problems for Amazon, the presence of one more person, especially one whose firing has been challenged by the NLRB as being unlawful, similarly causes no operational problem for Amazon. Nor would Spence's or any other fired employee's access to a break room which opens onto the parking lot cause any problem for Amazon.

## **CONCLUSION**

Given the facts, the law, and the reasonableness of the ask, this Court should sign the Order to Show Cause, and make it returnable in short order, so that relief can be effectuated on or before May 8, 2024.

Dated: New York, New York
April 15, 2024

/s/ *Arthur Z. Schwartz*
Arthur Z. Schwartz
ADVOCATES FOR JUSTICE,
CHARTERED ATTORNEYS
*Attorneys for Plaintiffs*
225 Broadway, Suite 1902
New York, New York 10007
(212) 285-1400
aschwartz@afjlaw.com

9