Exhibit C

UNITED STATES OF AMERICA
BEFORE THE NATIONAL LABOR RELATIONS BOARD
REGION 28

AMAZON.COM SERVICES LLC

Employer

    **and**                                   **Case 29-RC-288020**

AMAZON LABOR UNION

Petitioner

## DECISION AND CERTIFICATION OF REPRESENTATIVE

Pursuant to a stipulated election agreement, Region 29 of the National Labor Relations Board conducted an election on March 25, 26, 28, 29, and 30, 2022,[1] to determine whether fulfillment center employees employed by Amazon.com Services LLC (Employer or Amazon) at its JFK8 Building (JFK8) in Staten Island, New York wished to be represented for purposes of collective bargaining by Amazon Labor Union (Petitioner or ALU).  The tally of ballots showed that of the approximately 8325 eligible voters, 2654 cast ballots for the Petitioner, and 2131 cast ballots against representation, with 67 non-determinative challenged ballots.  Therefore, the Petitioner received a majority of the votes, by a margin of 523 votes.

Thereafter, on April 8, the Employer timely filed 25 objections to conduct affecting the results of the election.  The Employer also filed a Motion to Transfer Proceedings for a hearing on its objections.  On April 14, the General Counsel transferred this case to Region 28 of the National Labor Relations Board.  On April 29, I issued an Order Directing Hearing and Notice of Hearing on Objections (Order Directing Hearing or April 29 Order), ordering that a hearing be conducted to resolve the issues raised with respect to the objections.

After conducting a post-election hearing, Hearing Officer Lisa J. Dunn, on August 2, issued a Report on Objections (Report), in which she recommended overruling the objections in their entirety.  The Employer filed exceptions to the Hearing Officer's Report and recommendations.  The Petitioner filed an answering brief.

Having carefully considered the exceptions and briefs, the Hearing Officer's rulings made at the hearing are free from prejudicial error and are hereby affirmed, except as otherwise noted in this Decision.[2]  I have reviewed and considered the evidence and arguments presented

---

[1]  All dates refer to 2022 unless otherwise indicated.

[2] At page 6 of the Report, the Hearing Officer mistakenly referred to "Section 102.68(c)(ii) and (iii) of the Board's Rules," instead of Section 102.69.

Amazon.com Services LLC
Case 29-RC-288020

by the parties, and as discussed below, I agree with the Hearing Officer that the Employer's objections should be overruled.[3]  Accordingly, I am issuing a Certification of Representative.

## PRELIMINARY MATTERS

The Employer has excepted to the Hearing Officer's use of offers of proof at the hearing. I find these exceptions without merit.  In my Order dated June 16, I explained that "[t]he Hearing Officer is empowered to allow the Employer to provide an offer of proof as to why it should be permitted to introduce evidence in support of its Objections, even if those Objections would not normally be litigable."  Section 102.66(c) and 102.69(c)(1)(ii) of the Board's Rules and Regulations permit a hearing officer to require offers of proof and to rule on those proffers at hearing.  The Employer has not shown that any evidence the Hearing Officer excluded, following receipt of a proffer, would result in sustaining any of the objections.

In addition, the Employer has also excepted to "the Hearing Officer's decision to conduct the hearing, frame her relevance rulings, and issue recommendations using the summary of objections contained in [the April 29 Order Directing Hearing] and not the full text of Amazon's April 8, 2022 Objections."  In this connection, in its exceptions to each individual objection, the Employer excepts to the Hearing Officer's use of the statement of the objection as it appears in the Order Directing Hearing, instead of using the statement that is set forth in the Employer's Objections filed on April 8.

I find the Hearing Officer properly relied on the statements of the objections set forth the Order Directing Hearing.  The Hearing Officer's authority was to consider the issues that are encompassed within the scope of the specific objections set for hearing by the Regional Director. *See Precision Products Group, Inc.*, 319 NLRB 640, 641 fn. 3 (1995); *Iowa Lamb Corp.*, 275 NLRB 185 (1985).  Insofar as my description of the objections is in some instances narrower than the Employer's April 8 Objections, it is the former that controls, not the latter.

Even if the Hearing Officer did err by relying on the April 29 Order, no prejudice or harm resulted because the Employer was allowed to make offers of proof and place any exhibits deemed inadmissible in the rejected exhibit file.  Having reviewed the record, including the

---

I note that while the Employer has excepted to the Report's lack of citation to exhibits or transcript pages, the exceptions do not point to any factual findings that are not substantially supported by credited evidence.

[3] I approve the Employer's request to withdraw Objection 19 in its post-hearing brief.

The Employer has excepted to some of the Hearing Officer's credibility findings.  The Board's established policy is not to overrule a hearing officer's credibility resolutions unless the clear preponderance of all the relevant evidence convinces the reviewer that they are incorrect. *Stretch-Tex Co.*, 118 NLRB 1359, 1361 (1957).  I have carefully examined the record and find no basis for reversal.

Amazon.com Services LLC
Case 29-RC-288020

rejected exhibits in light of the exceptions, I find no evidence was excluded that would result in sustaining any objection or changing the outcome of this proceeding.  As further explained below, to the extent that in limited instances the Hearing Officer's Report did not fully analyze the objections as they were stated in the Employer's April 8 Objections, the Hearing Officer's analysis and the further analysis set forth below establish that the Employer has not alleged or proven grounds sufficient to set aside the election.

The Employer has further excepted "to the determination that Region 29 is a party to case 29-RC-288020 in the Objections Hearing."  This issue has been decided by the Board.  By Order dated July 11, the Board found that Section 102.1(h) of the Board's Rules and Regulations "is sufficiently broad to encompass the admission of a non-presiding regional director's representative as a party."  *Amazon.com Servs., LLC*, 29-RC-288020, 2022 NLRB LEXIS 286, 2022 WL 2702541, at *1 (unpub. order).  The Board determined it was not an abuse of discretion to admit Region 29, through two Regional Director representatives, as a party in this case.  *Id.*

Relying on the determination that Region 29 was given a limited party status in connection with having a representative present at the hearing, which the Board found was consistent with the "well-established practice" set forth in Section 11424 of the Board's Casehandling Manual (Part Two) Representation Proceedings, the Employer further excepts to the Hearing Officer's failure to draw adverse inferences against Region 29 for not calling witnesses to testify, primarily as to Objections 1 through 12.

I decline to draw those inferences or fault the Hearing Officer's decision not to do so.  I further observe that the General Counsel's decision not to let Board agents testify in this case is in accord with the Board's longstanding policy aimed at avoiding the appearance of partiality. *Laidlaw Transit, Inc.*, 327 NLRB 315, 316 (1998).  "[U]nusual circumstances must be present to justify overriding the prohibition.  Unusual circumstances are not present where other witnesses are available and the issues can be resolved through credibility resolutions." *Id.*

Here, other witnesses were available, and indeed, those witnesses testified, and it is possible to resolve the issues raised by the objections through credibility rulings and introduction of evidence from sources other than Board agents.  The Employer has not shown an exceptional circumstance or that a particular issue could only be resolved through Board agent testimony. *Cf. Drukker Commc'ns, Inc. v. NLRB*, 700 F.2d 727, 730-34 (D.C. Cir. 1983) (Board agent testimony was "of unique value" where it was necessary to develop a record about an agreement the Board agent had brokered where the agent was the only witness available to resolve a factual dispute as to that agreement).  Under these circumstances, I would not find that the absence of Board agents' testimony gives rise to an inference that their testimony, if adduced, would be unfavorable to Region 29.  *See, e.g., Independent Stations Co.*, 284 NLRB 394, 394 (1987) (improper for judge to draw an adverse inference based on the General Counsel's failure to call a Board agent to testify or to explain why the agent did not testify).

As a final preliminary matter, I adopt the Hearing Officer's findings that the Regional Director's Representatives did not engage in misconduct or conduct that prejudiced a party and that they adhered to the role contemplated by the Casehandling Manual.

- 3 -

Amazon.com Services LLC
Case 29-RC-288020

## **THE OBJECTIONS**

### **Objection 1**

In Objection 1, as set for hearing in the Order Directing Hearing, the Employer contends as follows:

> The Region failed to protect the integrity and neutrality of its procedures and created the impression of Board assistance or support for the Petitioner when it sought a 10(j) injunction in *Drew-King v. Amazon.com Services LLC*, E.D.N.Y., No. 22-01479, on March 17, 2022.

The Employer's Objection 1 filed on April 8 contains a number of additional, more detailed assertions which, in the Employer's view, demonstrate that the initiation of injunction proceedings was objectionable conduct.[4]

I find the Hearing Officer considered all issues raised in either iteration of Objection 1. I affirm the Hearing Officer's rationale for recommending Objection 1 be overruled.

In doing so, I initially address the Employer's exception to the Hearing Officer's alleged refusal to receive evidence to resolve the issues raised with respect to Objection 1, including the Hearing Officer not taking "judicial" notice of filings in the district court injunction proceeding made after March 30. I consider filings made after the election not relevant to Objection 1 and affirm the Hearing Officer's rulings regarding introduction of evidence as to this objection.

In addition, I find it unnecessary to rely on the Hearing Officer's statement concerning employee witnesses not testifying about knowledge of the Section 10(j) petition. An argument can certainly be made that a total lack of evidence of employee knowledge is relevant to whether there was an impact on the election outcome. However, I do not find employee awareness or lack thereof particularly dispositive of whether the fairness and validity of the election has been called into question by the initiation of Section 10(j) proceedings. Instead, at the core of this objection is the fact that Regional Directors have concurrent responsibilities for representation cases and unfair labor practice cases, which regularly and routinely overlap with respect to the same parties, but nevertheless play out in separate arenas, absent case consolidation. In representation cases, the Regional Director's role is as a neutral in processing and conducting elections. In meritorious unfair labor practice cases, the Regional Director can have a

---

[4] Specifically, the Employer's April 8 statement of Objection 1 asserts as follows: the Region sought the injunction 23 months after the at-issue discriminatee was discharged and 14 months after the underlying Complaint was issued; "delaying" the initiation of injunction proceedings "until the eve of the election improperly influenced employees' perception of Amazon"; the Regional Director "admitted as much" in a statement to the press; certain events underlying the injunction proceeding are recorded in a video depicting the at-issue discriminatee making statements over a bullhorn, including insults directed at an employee; "on the eve of the election, the Region pursued this injunction suggesting that only ALU supporters' Section 7 rights matter, and that Amazon's actions were worthy of an extraordinary remedy."

Amazon.com Services LLC
Case 29-RC-288020

prosecutorial role in seeking to legally restrain unlawful conduct and obtain remedies.  That overlap in the Regional Director's responsibility occurred here and is entirely consistent with the National Labor Relations Act's statutory structure.

The Employer cites no case finding a Regional Director's exercise of those concurrent responsibilities to be objectionable by creating the impression of Board assistance or support for one party or another.[5]  Nor has the Employer shown any reason why the conduct by the Regional Director in this case would tend to destroy confidence in the election process.  I find that the opposite is true, namely the initiation of injunction proceedings is part and parcel of ensuring proper laboratory conditions exist and of demonstrating that the Board will act to redress violations of the Act.  The Regional Director's conduct cannot reasonably be seen as encouraging or coercing votes for or against either party or signaling that "only ALU supporters' Section 7 rights matter," as the Employer claims.  Instead, her actions are merely consistent with her obligation to enforce the Act.[6]

Consistent with the Hearing Officer's finding as to the plain meaning of the Regional Director's press comments, I find that the Regional Director's comments express her intention to ensure employees are free to vote under fair conditions, not to influence employees for or against either party.  It is not reasonable to view the Regional Director's comments as encouraging votes for the Petitioner or the Employer, but rather as supporting the exercise of free choice.  The election proceedings are a separate arena from the unfair labor practice arena, and a reasonable employee would not believe that the Regional Director was attempting to interfere with voters' choice or was calling into question the Board's neutrality in the outcome of the election by petitioning for an injunction.[7]

Accordingly, for these reasons, and those given by the Hearing Officer, I agree with her conclusion to overrule Objection 1.

## Objection 2

In Objection 2, as set for hearing in the Order Directing Hearing, the Employer contends as follows:

---

[5] The Employer asserts that the Hearing Officer should have analyzed this objection under *Athbro Precision Eng'g Corp.*, 166 NLRB 966 (1967).  That case concerned the conduct of the Board agent on the same day as and during the election and is factually distinguishable from the allegations made here on that basis.

[6] I have reviewed the exhibits connected with the Section 10(j) filing, including "the substance of the pleadings," as the Employer urges, and this evidence does not alter my decision.

[7] The Employer seems to claim that the appropriate action of the Regional Director would have been to delay filing the petition until after the election, but nothing in the Board's rules or the Casehandling Manual commands such conduct on the part of the Regional Director.

Amazon.com Services LLC
Case 29-RC-288020

The Region failed to protect the integrity and neutrality of its procedures and created the
impression of Board assistance or support for the Petitioner when it delayed investigating
numerous unmeritorious and frivolous unfair labor practice charges that were pending
during the critical period rather than properly dismissing them or soliciting withdrawals.

The Employer's Objections filed on April 8, provided the following additional assertions:

The Region's inaction enabled the ALU to perpetuate its false campaign narrative that
Amazon was a recidivist violator of the National Labor Relations Act ("Act"), when in
fact there has not been a single NLRB order finding that Amazon has violated the Act.
The ALU exploited the Region's inaction by continuing to file numerous baseless unfair
labor practice charges throughout the critical period.  Many of these charges challenge
conduct that is lawful under extant Board precedent (*e.g.*, charges about Weingarten
rights and captive audience meetings).  Some were later withdrawn by the ALU while
others were withdrawn and then refiled to create the appearance of a greater volume of
charges.[8]

The additional assertions in the Employer's version of Objection 2 allege that the
Petitioner perpetuated a "false campaign narrative" stemming from the filing and pendency of
unfair labor practice charges.  In other words, the Employer contends that the Petition engaged in
misrepresentations concerning the Employer's election campaign conduct.  The Board has
declined to set aside elections based on misrepresentations unless they involve misuse of the
Board's election process or forged documents. *See Midland National Life Ins.*, 263 NLRB 127
(1982).  Here, neither exception to the *Midland National* standard is alleged, nor is there any
contention that the evidence the Hearing Officer precluded involved misuse of the Board's
election process or forged documents.

In affirming the Hearing Officer's rationale for overruling Objection 2, I do not rely on
her statement that "the *Petitioner's* alleged strategy in filing its unfair labor practice charges
against the Employer is not relevant to Objection 2," and I find it unnecessary to pass on her
comments regarding objections the Employer "could have" filed.  Report at 23, fn. 9.  I find
instead that the details of Petitioner's strategy, in the circumstances described here, are not
grounds for overturning the election because they do not rise to the level of objectional
campaigning conduct or raise any substantial issues under *Midland National*, above.

I also find it unnecessary to rely on the Hearing Officer's reasoning that "even if there
were truth to Employer's contention that the Region 'delayed' its investigation and processing of
'unmeritorious' charges filed against the Employer, such evidence does not raise 'a reasonable
doubt as to the fairness and validity of the election.'"  There is no need to reach that issue
because the evidence simply does not show that the Region calculatedly delayed processing the
alleged non-merit charges in a way that affected laboratory conditions, as the Hearing Officer
properly found.

---

[8] The Employer's objection includes a footnote stating that the Petitioner repeatedly and falsely
claimed it had filed over 40 ULP charges against it.

Amazon.com Services LLC
Case 29-RC-288020

For similar reasons, I find it unnecessary to rely on the Hearing Officer's statement that the Employer did not "present or proffer any eligible voter employee witness to testify of any knowledge of any unfair labor practice charges filed against the Employer or that any unfair labor practice charges filed against the Employer had any bearing on the election whatsoever." As with Objection 1, an argument can certainly be made that a lack of evidence of employee knowledge is relevant.  But the bottom line is that nothing objectionable occurred with respect to the Region's handling of unfair labor practice charges, as alleged in Objection 2.  Despite the Employer's arguments to the contrary, I do not construe the Report as applying a "subjective voter standard" or as relying on subjective reactions to overrule this objection.  The Hearing Officer correctly found that "Region 29 was acting on behalf of the General Counsel, pursuant to the General Counsel's 'unreviewable discretion' and authority vested under Section 3(d) of the Act."  Report at 26.

Accordingly, for these reasons, and those given by the Hearing Officer, I agree with her conclusion to overrule Objection 2.

**Objections 3, 4, and 5**

Objections 3, 4, and 5 concern the showing of interest and will be discussed together.  In Objection 3, as set for hearing in the Order Directing Hearing, the Employer contends as follows:

> The Region failed to protect the integrity and neutrality of its procedures and created the impression of Board assistance or support for the Petitioner when it allowed the Petitioner's petition in Case 29-RC-288020 to proceed to election knowing that the Petitioner did not have the required 30% showing of interest in the petitioned-for unit.[9]

In Objection 4, as set for hearing in the Order Directing Hearing, the Employer contends as follows:

> The Region failed to protect the integrity and neutrality of its procedures and created the impression of Board assistance or support for the Petitioner when it impermissibly allowed the Petitioner for more than a month (from December 22, 2021, to January 25, 2022) to continue gathering and submitting late signatures to bolster its insufficient showing of interest.[10]

---

[9] The Employer's Objections filed April 8 further asserted the following allegations:

> It did so after public threats by the ALU to expose "concerning issues" about the Region, including public comments from ALU officials that urged the Board to "work with" and help the ALU through the process, and to relax its rules.  The Board's validation of the ALU's insufficient petition in response to and after these public threats and comments reasonably suggested to employees that the ALU had more support in the petitioned-for unit than it did and/or that the Region favored the ALU in its case processing.

[10] The Employer's Objections filed April 8 asserted the Region's actions were "contrary to Board procedure," with a citation to Section 1103.1(a) of the Casehandling Manual (Part Two).

Amazon.com Services LLC
Case 29-RC-288020

In Objection 5, as set for hearing in the Order Directing Hearing, the Employer contends as follows:

> The Region failed to protect the integrity and neutrality of its procedures and created the impression of Board assistance or support for the Petitioner when it unilaterally altered the scope and size of the petitioned-for unit for the purpose of investigating the Petitioner's showing of interest.[11]

Although the Employer excepts to the Hearing Officer's use of the statements of Objection 3, 4, and 5 as they appear in the Order Directing Hearing, instead of using the Employer's Objections filed on April 8, I find the Hearing Officer considered all issues raised in either iteration of Objections 3, 4, and 5. I affirm the Hearing Officer's rationale for recommending these objections be overruled.

The Hearing Officer properly found that the sufficiency of the showing of interest is a purely administrative function within the discretion of the Agency, and it is not subject to collateral attack in litigation, absent the rarest of circumstances, none of which is not present here.[12] I observe that my Order setting Objections 3, 4, and 5 for hearing does not mean that that all evidence in existence must be received into the record and considered. Rather, the Hearing Officer has discretion and is responsible for resolving the issues raised and ruling on relevance. I affirm her determination that Board law precludes attacks on the showing of interest such as those alleged in these objections.[13] The Board's precedent unambiguously holds that the showing of interest "is not statutorily required," is not "intended to create a right in any party to protest the conduct of an election," *River City Elevator Co.*, 339 NLRB 616, 617 (2003), and "after the election the adequacy of the showing of interest is irrelevant." *Gaylord Bag Co.*, 313 NLRB 306, 307 (1993). Relying on this, and other relevant precedent cited in her Report, the Hearing Officer appropriately precluded evidence seeking to litigate the showing of interest.

## Objections 6, 7, and 8

Objections 6, 7, and 8 primarily concern the circumstances in the polling place on election days and will be discussed together. In Objection 6, as set for hearing in the Order Directing Hearing, the Employer contends as follows:

---

[11] The Employer's Objections filed April 8 contained additional assertions, including that the Region altered the unit description and thereby reduced the size of the unit and "perpetuated the false impression that the ALU had sufficient support to proceed forward with an election when it clearly did not have sufficient support." Similar to Objection 2, I find under *Midland National*, 263 NLRB 127, that this does not rise to the level of being objectionable conduct.

[12] This is particularly true where, as here, the Employer entered into a stipulated election agreement and the election has concluded.

[13] *E.g.,* the Employer does not assert that there is taint in the showing of interest or that the showing of interest was obtained through threats or coercion.

Amazon.com Services LLC
Case 29-RC-288020

The Region failed to protect the integrity of its procedures when it deviated from the Casehandling Manual on Representation Proceedings by failing to staff the election adequately. Among other things, the Region provided an insufficient number of Board Agents for check-in and failed to provide adequate equipment for the election, supplying only three voting booths for an election with more than 8,000 potential voters.[14]

In Objection 7, as set for hearing in the Order Directing Hearing, the Employer contends as follows:

The Region failed to protect the integrity of its procedures when it turned away voters when they attempted to vote during open polling sessions and told voters they were only being allowed to vote in alphabetical order.[15]

In Objection 8, as set for hearing in the Order Directing Hearing, the Employer contends as follows:

The Region failed to protect the integrity of its procedures when it failed to control media presence in and around the voting area.[16]

---

[14] The statement of Objection 6 set forth in the Employer's Objections filed on April 8, provided the following additional assertions:

The Region was well aware of the size of the petitioned-for unit and potential number of voters. *See* Voter List, filed on February 22, 2022 (including 8,325 employees in the petitioned-for unit). These inactions caused extraordinarily long lines during the first voting session, widely publicized in the news media, and discouraged many employees from voting in subsequent polling sessions, particularly as the temperatures dropped to 20 degrees during two nights of polling. The Board's actions had a reasonable tendency to disenfranchise voters (as evidenced by extremely low voter turnout), and contributed to the Board's ineffective policing of the polling area, as further described in objections below.

[15] The statement of Objection 7 set forth in the Employer's Objections filed on April 8 provided the following additional assertions:

The parties' Stipulated Election Agreement provided that "the Board Agent will allow any voter who is in line during the polling period to vote." These actions disenfranchised those voters who were turned away, but also other voters who learned that voters were turned away from the polls and chose not to participate in the election.

[16] The statement of Objection 8 set forth in the Employer's Objections filed on April 8 provided the following additional assertions:

Amazon specifically raised concerns to the Region about media interference in the voting process prior to the start of the election. Yet during the first polling session, numerous media members—including a documentary film crew retained by Mr. Smalls—entered

Amazon.com Services LLC
Case 29-RC-288020

     The Employer excepts to the Hearing Officer's use of the statements of Objection 6, 7, and 8 as they appear in the Order Directing Hearing, instead of using the statements set forth in the Employer's Objections filed on April 8.  However, the record reflects that the Hearing Officer received all relevant evidence in connection with the entirety of Objections 6, 7, and 8, and that her analysis considered all issues raised in either iteration of the objections.[17]  I affirm the Hearing Officer's rationale for recommending these objections be overruled.

     Numerous Employer exceptions challenge the Hearing Officer's factual findings underlying her analysis and recommendations as to Objections 6, 7, and 8.  I have carefully reviewed these findings in light of the record and find the exceptions to be either without merit or to challenge factual determinations that have no meaningful bearing on the outcome of the objections.[18]

---

     Amazon's private property, filmed and recorded employees who were in line to vote, and even asked voters how they planned to vote, within feet of Board Agents.  Photographs and quotes of these employees were then publicly broadcast across the nation.  All of this media filming, recording, and broadcasting took place within the same zone around the polling place where the Region required Amazon to disable its security cameras during voting.  The Board's failure to stop the media from surveilling and interrogating voters standing in line to vote had a reasonable tendency to discourage other employees from voting in subsequent polling sessions (as evidenced by extremely low voter turnout).

[17] The Employer excepts to the Hearing Officer's handling of photographic evidence showing voters engaged in the act of voting.  The Employer has not established that requiring the redaction of those exhibits imposed prejudice because the exhibits, as redacted, are sufficient to allow for review.

[18] As one example, the Employer excepts to the Hearing Officer's factual findings regarding pre-election conferences and Board agent instructions to observers, including her finding that "the record generally reflects that during the pre-election conference held approximately fifteen minutes to a half hour before each of the polling sessions during the election, the assigned Board agent gave the observers written and verbal instructions, with representatives from the Employer and Petitioner present." Report at 32.  I confirm that the record reflects instances when party representatives were present for instructions to observers (*e.g.*, Employer witness Chaka Donaldson, the Employer's Employee Relations Principal, testified that that before the first voting session on March 25, the Board agents "called everybody together, all of the management representatives, all of the Union representatives, and all of the observers to have a conversation about their duties as observers." [Tr. at 338]).  I also take note of some witness testimony for other sessions that party representatives were not present when observers received instructions (*e.g.*, Employee witness Cassio Mendoza testified that those present at the pre-election conferences were observers for the parties, the Board agents, "and I believe that's it." [Tr. 5080]).  I do not, however, find the circumstance of some observers receiving instructions outside the presence of the party representatives, or the exact timing of when the instructions were given, to be germane to the Employer's objections or to have a material impact on my decision to overrule Objection 6, or any other objection.  In an election of this size, spanning several sessions over multiple days, minor differences between the pre-election conferences and

Amazon.com Services LLC
Case 29-RC-288020

The Employer further excepts to the Hearing Officer's findings that neither Objection 6, nor any other objection, is sufficiently related to an allegation that the polls opened 5 to 12 minutes late at the first polling session on March 25. The Hearing Officer's findings and rulings are affirmed in this regard. When the polls open is a very specific objection to the timing of the election that is not encompassed by Objection 6, which by its terms, concerns staffing and equipment in relation to the size of the unit causing long lines. Objection 6 is unrelated to when the polls opened. Nor do any other objections contain allegations that bear a sufficient relationship to an allegation of polls opening late.[19]

I also affirm the Hearing Officer's findings and recommendations with respect to Objection 7. In its exceptions and brief, the Employer, renewing arguments it submitted in its

---

instructions to observers are to be expected; and overall, there is insufficient evidence of any election irregularity significant enough to cast doubt on the outcome of the election.

Other examples of exceptions to factual findings that lack merit include the exception to the Hearing Officer's factual finding that "[Employee Lisa] Laporta's entire voting experience lasted approximately 15 to 20 minutes." Report at 39. While Laporta declined to affirmatively admit on cross examination that her voting experience "took about 15 to 20 minutes" or "took less than 25 minutes," she testified that she left the building to vote at around 8:10 AM and had cast her ballot and placed in the ballot box by 8:30 AM [Tr. at 2142]. The Employer also excepts, without justification, to the Hearing Officer's factual finding that "[Employee Antonia] Famiglietti testified that no voters left during the period of time that the Board agent left her A-F checking table," which is an accurate statement based on the witness's testimony [Tr. at 603, 607, 625-626].

These examples do not exhaust the list of the Employer's exceptions to the Hearing Officer's factual findings. Although I shall not specifically discuss each of these factual exceptions, I have carefully considered all of the Employer's exceptions to the Hearing Officer's factual findings and find, except as otherwise discussed herein, each factual exception is either without merit or if meritorious and accepted, arguendo, would not alter my determination to affirm the Hearing Officer's recommendations.

[19] Even if I were to assume, for sake of argument, that the first polling session opened 5 to 12 minutes late, the polls remained open well into the afternoon on March 25 and reopened for the nine remaining scheduled 5-hour voting sessions. In those circumstances, I would be unable to find that a sufficient number of voters were disenfranchised by the momentary delay on the first day, which the Employer does not contend was repeated at any other sessions.

Accordingly, I reject the Employer's argument that the Hearing Officer' improperly applied *Pea Ridge Iron Ore Co., Inc.*, 335 NLRB 161 (2001) in her analysis of Objection 6. *Pea Ridge* concerns late opening of polls and has limited application, if any, to the actual allegations of Objection 6. The Hearing Officer correctly reasoned that for Objection 6 to be sustained, there must be evidence that "raises a reasonable doubt as to the fairness and validity of the election," under such cases as *Polymers, Inc.*, 174 NLRB 282, 282 (1969), enfd. 414 F.2d 999 (2d Cir. 1969), and *Durham Sch. Servs., LP*, 360 NLRB 851, 851 (2014). I affirm her findings that there is insufficient evidence in this case to satisfy that standard.

Amazon.com Services LLC
Case 29-RC-288020

posting-hearing brief to the Hearing Officer, claims she ignored evidence showing that Board agents "were rude" to voters and created disorganization or the impression thereof by altering voting procedures during the first polling session to have voters to enter queues according to their last names (instead of having one single line), and by directing voters to particular lines pursuant to their last names.

The evidence on which the Employer relies does not support sustaining Objection 7.  Nor did the Hearing Officer necessarily ignore evidence on the circumstances of the election.  Rather, regarding alleged "rudeness," the Hearing Officer discredited the witness testimony (Employee Amarilis Villalongo) on which the Employer relies. Report at 39.  There is a complete lack of credited evidence from which to conclude that Board agents conducted themselves unprofessionally much less rudely toward voters.  Then, for the alleged disorganization, the Employer relies on testimony concerning long lines at certain voting sessions (particularly the first voting session) and the use of an alphabetical split by last name implemented shortly after the first session began.

Having reviewed the record, I agree with the Hearing Officer that "the record contains *no* evidence of a Board agent turning away *any* voters when they attempted to vote or telling any voters that they were *only* allowed to vote in alphabetical order," as alleged in Objection 7.  I further find that the instances of Board agent conduct cited by the Employer in its exceptions brief could not reasonably be interpreted as calling into question the Board's neutrality in the election, or as impeding voters' efforts to cast ballots.[20]  Voters waited in line to vote; the record does not indicate an atmosphere of severe chaos or confusion such that voters were disenfranchised.  There is no basis to find that Board agents implicitly or constructively deterred eligible voters from casting ballots, as suggested by the Employer.  I am, therefore, overruling Objection 7.

Finally, I affirm the Hearing Officer's findings and recommendations with respect to Objection 8 concerning media presence.  As the Hearing Officer found, before the first polling session on March 25, the Board agent designated a particular area as the "no-electioneering zone."  It was to be the area inside the barricades the Employer placed in the parking lot drive lanes perpendicular to the JFK8 building, and to the left and right of the voting tent.  After the first voting session, the Employer installed an approximately 6.5 feet tall chain-link fence that was covered with solid green mesh; this nearly solid fence was outside the entrance to the voting

[20] The Employer citation to, and reliance on, *Athbro Precision Eng'g. Corp.*, 166 NLRB 966, 967 (1967), in connection with Objection 6 or 7, is misplaced.  In *Athbro*, between polling sessions, a voter saw the Board agent who had been conducting the election drinking beer with one of the union's representatives and reported it to the employer.  The question in *Athbro* was whether the conduct of the Board agent in conducting the election "tended to destroy confidence in the Board's election process, or . . . could reasonably be interpreted as impairing the election standards [the Board] seek[s] to maintain." *Id*. at 966.  The *Athbro* standard is applied when there are allegations that the Board agent conducting the election revealed personal feelings about the election to voters or acted in a way that could be reasonably perceived as favoring one party.  That circumstance is not alleged in either Objection 6 or 7.

Amazon.com Services LLC
Case 29-RC-288020

tent and enclosed the perimeter of the voting queue.[21]   The purpose of the fence was to limit visibility of the voters waiting in line.

During the morning sessions on March 25 and 30, some media members, including photographers, reporters, and journalists, were present on the Employer's property taking pictures and videos and, in some instances, conducting interviews.  All of this took place outside of the voting tent.  A great deal of evidence indicates that the media presence was often located outside the barricades that demarcated the no-electioneering zone, but there were some instances when media members were or may have been inside the no-electioneering zone, as detailed in the Hearing Officer's Report.

The Hearing Officer properly found, and the Employer does not seriously dispute, that "there is no record evidence that the media was engaging in any 'electioneering' seeking to influence eligible voters to vote in any particular way." Report at 49.  Likewise, there is no record evidence of media members being present inside the voting tent.  Instead, the evidence revealed a media presence either on the edges of the voting line or stationed outside of the no-electioneering zone.

The presence of media members outside of the voting tent, and the contact between the press and voters that occurred during this election, does not warrant setting aside the election results.  Objection 8 expressly seeks to hold Region 29 and its representatives accountable for the media's activities and the alleged impact on voters of those activities.  But the responsibility of Region 29 and the Board agents to control the media in areas outside of the no-electioneering zone or to limit the press's contact with voters from the periphery of the no-electioneering zone is extremely limited, if any such responsibility exists at all.  The record demonstrates that the press was peaceably assembled and not engaged in harassment of voters, electioneering, or exertion of influence to vote a particular way.  In those circumstances, I find the Board agents conducting the election had no responsibility to instruct the press not to talk to voters or to leave the Employer's property.  To the extent that the press was present in the no-electioneering zone in some (apparently limited) instances, I agree with the Hearing Officer the Board agents were responsible "at most. . . to police *electioneering* that occurred in a *no-electioneering zone* while the polls were open."  The record fails to show the Board agents disregarded that responsibility.

In overruling this objection, I note that in *Milchem, Inc.*, 170 NLRB 362 (1968), the Board set out a bright-line rule to govern electioneering conduct directed at voters in line to vote by the parties to an election, stating as follows:

> the potential for distraction, last minute electioneering or pressure, and unfair advantage from prolonged conversations *between representatives of any party to the election and voters waiting to cast ballots* is of sufficient concern to warrant a strict rule against such conduct, without inquiry into the nature of the conversations.  The final minutes before an employee casts his vote should be his own, as free from interference as possible.  Furthermore, *the standard here applied insures that no party gains a last minute*

---

[21] The Hearing Officer's Report mistakenly states the mesh fence was 1.5 feet tall.

Amazon.com Services LLC
Case 29-RC-288020

> *advantage over the other, and at the same time deprives neither party of any important access to the ear of the voter.*  The difficulties of recapturing with any precision the nature of the remarks made in the charged atmosphere of a polling place are self-evident, and to require an examination into the substance and effect of the conversations seems unduly burdensome and, in this situation, unnecessary.  Finally, a blanket prohibition against such conversations is easily understood and simply applied.

*Id*. at 362 (emphasis added).

Subsequent Board decisions have made clear that "[t]he *Milchem* standard applies to parties or representatives of parties," and the Board has never "extend[ed] the *Milchem* standard to nonparties." *Rheem Mfg. Co.* 309 NLRB 459 (1992).  Indeed, the Board's rationale in *Milchem* was expressly concerned with preventing parties to the election from gaining last minute advantages.  But where, as here, the contact with voters and "electioneering" activity is not conducted by a party, "the proper standard to be applied is the third-party standard, i.e., whether the conduct at issue so substantially impaired the employees' exercise of free choice as to require that the election be set aside." *Id*. (citing *Southeastern Mills,* 227 NLRB 57, 58 (1976)) (cleaned up).  As the Hearing Officer noted, there was no evidence that the media presence caused voters to decline to vote or influenced their voting decisions.  There is likewise no evidence that the press created an atmosphere of confusion or bias for or against either party.  I am unable to find that the media presence served to deter voting or restrict free choice.[22]

Accordingly, for these reasons, and those given by the Hearing Officer, I agree with her conclusion to overrule Objection 8.

## Objections 9, 23, 24, and 25

Like Objections 6, 7, and 8 discussed above, Objections 9, 23, 24, and 25 also primarily concern the circumstances in the polling place on election days and will be discussed together. In Objection 9, as set for hearing in the Order Directing Hearing, the Employer contends as follows:

> The Region failed to protect the integrity and neutrality of its procedures and created the impression of Board assistance or support for the Petitioner when it allowed non-employee Petitioner President [Petitioner's President Christian] Smalls to loiter around the polling location and within the "no-electioneering zone" established by the Region on multiple occasions during polling times, where he was able to observe who participated in the election.

The Employer's Objections filed on April 8, additionally stated: "Mr. Smalls' presence in and around the 'no-electioneering zone' during polling times reasonably tended to intimidate, coerce, and create the impression of surveillance among voters and prospective voters."

---

[22] To the extent that the Employer argues in its exceptions that the Hearing Officer analyzed Objection 8 under a "subjective standard," I do not construe the Report to do so.

Amazon.com Services LLC
Case 29-RC-288020

In Objection 23, as set for hearing in the Order Directing Hearing, the Employer contends as follows:

On March 25, Petitioner's President Christian Smalls posted to his social media accounts a video of himself standing outside the voting area over 20 minutes after voting began and after he had told certain employees that the Petitioner would know how they voted. Employees viewing a video of the Petitioner's President appearing to stand outside the polling area while the polls were open reasonably tended to coerce and intimidate voters and potential voters and lead them to believe that the Petitioner and Mr. Smalls was or would surveil them.  Mr. Smalls' social media post also reasonably tended to create the impression with voters that the Board supported Petitioner in the election, as it failed to properly police and/or took no actions to remove him from the "no-electioneering zone" established by the Board.

In Objection 24, as set for hearing in the Order Directing Hearing, the Employer contends as follows:

The Petitioner engaged a camera/documentary crew that maintained a consistent presence in the polling place.  Despite being directed to leave the area by the Employer in front of the Board Agent and Petitioner President Smalls, the crew returned several times and filmed employees in line waiting to vote, and employees entering and exiting the voting tent.  These actions reasonably tended to coerce and intimidate voters and potential voters and lead them to believe that Mr. Smalls and the Petitioner would know if or how they voted, and created the impression of surveillance.

In Objection 25, as set for hearing in the Order Directing Hearing, the Employer contends as follows:

Petitioner's officials, agents, and supporters, including but not limited to non-employee Petitioner President Smalls and non-employee Gerald Bryson, engaged in objectionable conduct, including loitering in the "no-electioneering zone" established by the Board and/or within view of the polling area while polls were open, creating the impression among employees that the Petitioner was surveilling the polling area, and otherwise engaging in electioneering.  This conduct reasonably tended to coerce and intimidate voters and potential voters.

The Employer excepts to the Hearing Officer's use of the statement of Objection 9 as it appears in the Order Directing Hearing, instead of using the Employer's Objections filed on April 8.[23]  I find the Hearing Officer duly considered all issues raised in either iteration of Objection 9, including the assertions contained in the Employer's April 8 filing, in finding "the

---

[23] Objections 23, 24, and 25 are substantively identical in the Order Directing Hearing and in the Employer's April 8 Objections.  The Employer excepts "to the Hearing Officer's failure to consult Amazon's Objections, as opposed to the Notice," but because the objection is stated identically in either version, this is immaterial.

Amazon.com Services LLC
Case 29-RC-288020

mere presence of union representatives in the vicinity of the polling area, without more, is not objectionable." Report at 62.  I agree with the Hearing Officer's recommendation to overrule Objection 9 for the reasons stated in the Report.

The Employer has excepted, however, to the Report's finding that "the Employer did not present any credited witness that testified about Smalls being present *within* a no-electioneering zone during polling times." Report at 61.  The Employer further takes exception to the Hearing Officer's conclusion that Employee witness Karen Martinez's testimony placed Smalls outside the designated no-electioneering zone.  The Employer contends in its brief that Objection 9 should be sustained based on "the ubiquitous presence and continued trespassing around the polls by the highly recognizable ALU President Smalls throughout the daylong election."

I do not find the Employer's position supported by credited evidence.  Initially, I affirm the Hearing Officer's finding that Smalls did not have a "ubiquitous presence" around the polls. *See* Report at 61.  Aside from making the claim of a "ubiquitous presence" by Smalls, the Employer has not marshalled facts demonstrating there was such a presence in its exceptions or its brief.  As to the testimony of Ms. Martinez, she stated that on March 25, between approximately 9:30 and 10:00 a.m., for "maybe two or three minutes" (Tr. at 2007), she saw Mr. Smalls standing on the other side of "a tape thing" that was possibly serving as a barricade to the voting area, and that Smalls was "15, 20 feet" away from her as she stood in line to vote, as well as "15 to 20 feet away from the door of the tent" [Tr. at 2001, 2002].

Contrary to the Employer's position, this testimony is not specific enough to support a conclusion that Small was present within what had been designated as the no-electioneering zone.[24]  Even assuming Ms. Martinez's testimony indicates Smalls was present in that zone, she expressly testified that he was only there for two to three minutes and not in the voting tent.  Critically, there is no credited evidence, from Ms. Martinez or otherwise, that Smalls was looking at voters, as alleged in Objection 9, or keeping written lists, or doing anything that could be interpreted as monitoring or surveilling voters in an intimidating way.  Put differently, there is a lack of evidence that Smalls "compromised the secrecy of the ballot by observing how other employees voted." *Envtl. Maint. Solutions, Inc.*, 355 NLRB 334, 334, fn. 2 (2010).  Instead, there is evidence that Ms. Martinez saw Smalls standing by himself 15 to 20 feet from the entrance to the tent for a few fleeting moments—apparently silently—then he was gone.  The Hearing Officer accurately summarized the additional evidence of extremely limited instances in which voters observed Smalls well beyond the polling area, outside the no-electioneering zone, having no contact with voters, much less observing them, or requiring voters to pass by him to vote, or engaging in electioneering activities.

The evidence, therefore, is insufficient to establish that the results of the election were affected by Smalls' mere presence, just as the Hearing Officer found.  *Cf. Piggly-Wiggly #11 and #228 Eagle Food Centers, Inc.*, 168 NLRB 792 (1967) (election set aside where union representatives stationed themselves four to six feet in front of stores and notated papers with

---

[24] I adopt the Hearing Officer's finding that Smalls or other Petitioner agents were not "stationed" outside of the voting area.

Amazon.com Services LLC
Case 29-RC-288020

names as each employee entered to vote).[25]  There is simply no evidence that any Petitioner representatives were stationed in the no-electioneering zone during the election.

For these reasons, and those given by the Hearing Officer, I agree with her conclusion to overrule Objection 9, as the record does not support finding that the Board agents or regional personnel failed to protect election integrity by allowing Smalls to "loiter" around the polls.  I also adopt the Hearing Officer's findings and rationale recommending that Objections 23, 24, and 25 be overruled.

## Objection 10

In Objection 10, as set for hearing in the Order Directing Hearing, the Employer contends as follows:

> The Region failed to protect the integrity and neutrality of its procedures and created the impression of Board assistance or support for the Petitioner when it directed voters to cover up "Vote NO" shirts, but allowed other voters to wear Petitioner shirts and other Petitioner paraphernalia in the polling area.[26]

I find that the Hearing Officer considered all issues raised in Objection 10, including the assertions contained in the Employer's April 8 Objections.  I further find that she received all

---

[25] I find without merit the Employer's argument that *Athbro*, above, supports sustaining Objection 9 because there is no evidence that the Board agents acted in a way that could reasonably be perceived as favoring one party over another.  I further find the evidence inadequate to support finding evidence of objectionable conduct under *Milchem*, above, insofar as there is no evidence that Smalls engaged in "prolonged conversations" with "voters waiting to cast ballots."

[26] The statement of Objection 10 set forth in the Employer's Objections filed on April 8 provided the following additional assertions:

> There was no basis for this direction as the Board has consistently held that wearing stickers, buttons, and similar campaign insignia by participants and observers at an election is, without more, not prejudicial.  *R. H. Osbrink Mfg. Co.*, 114 NLRB 940, 941-43 (1955); *see also Furniture City Upholstery Co.*, 115 NLRB 1433, 1434–1435 (1956).  The Board has held that the impact on voters is not materially different "whether the observers wear prounion or antiunion insignia of this kind."  *Larkwood Farms*, 178 NLRB 226, 226 (1969) (observer wearing "Vote No" hat not objectionable).  The Region's discriminatory directions toward ALU opponents created the impression for all voters present, as well as all potential voters who learned of these incidents, that the Board appeared to favor the ALU over Amazon in the outcome of the election.  "No participant in a Board election should be permitted to suggest to the voters that this Government agency, or any of its officials, endorses a particular choice."  *Am-O-Krome Co.*, 92 NLRB 893, 894 (1950).

Amazon.com Services LLC
Case 29-RC-288020

relevant evidence and set forth accurate findings and sound reasoning in recommending that the objection be overruled, which I accordingly adopt.[27]

To the extent that the Employer argues in its exceptions that the Hearing Officer analyzed Objection 10 under a "subjective standard," I do not construe the Report to do so. In any event, the objective interpretation of the Board agents' conduct during the election is to inform voters that electioneering is not permitted within the polling place and to discouraging wearing insignia at the polls. It would be unreasonable to construe the Board agents' conduct as reflecting a preference or choice for one party or the other.

Accordingly, for these reasons, and those given by the Hearing Officer, I agree with her conclusion to overrule Objection 10.

**Objection 11**

In Objection 11, as set for hearing in the Order Directing Hearing, the Employer contends as follows:

The Region failed to protect the integrity and neutrality of its procedures and created the impression of Board assistance or support for the Petitioner when it repeatedly allowed a Petitioner's observer to audio/video record the check-in tables and voting area on his mobile phone while serving as an observer during multiple voting sessions.[28]

Although the Employer excepts to Hearing Officer's use of Objection 11 as it is stated in the Order Directing Hearing instead of the April 8 Objections, I find the Hearing Officer considered and received relevant evidence with respect to all issues raised in either iteration of this objection. The findings in the Report make plain that there is insufficient evidence that any of the Petitioner's election observers engaged in "objectionable list keeping of voters, objectionable surveillance of voters," or that those observers "created the impression for voters

---

[27] The Hearing officer found that "[employee witness Sophia] Campbell served as an Employer observer for two polling sessions and testified she saw an eligible voter wearing a blue 'Vote No' t-shirt inside the voting tent." Report at 72. I clarify that the witness's testimony was equivocal on this point and, as the Hearing Officer found, "Campbell also testified that she 'maybe' saw one eligible voter inside the voting tent wearing a blue 'Vote No' shirt." Report at 69. The Hearing Officer "did not credit" Campbell's testimony based on a lack of reliability. Report at 69, fn. 25. Accordingly, I do not rely on it.

[28] The statement of Objection 11 set forth in the Employer's Objections filed on April 8, provided the following additional assertions:

The Region permitted this individual to continue serving as an ALU election observer following his conspicuous recording of the voting area while the polls were open. These actions further constitute objectionable list keeping of voters, objectionable surveillance of voters, and also created the impression for voters and potential voters that the ALU was surveilling them.

Amazon.com Services LLC
Case 29-RC-288020

and potential voters that the ALU was surveilling them."  I affirm the Hearing Officer's rationale
for recommending Objection 11 be overruled.

The Hearing Officer's Report accurately summarizes the evidence presented regarding
two Petitioner observers "using" their cell phone.  In this regard, there is evidence that Petitioner
observer Jason Anthony had his cell phone clipped to his belt, on the table, or in his hand during
the first day of the election.[29]  There is also evidence that Petitioner observer Cassio Mendoza
glanced at his cell phone then put it back in his pocket in the evening session on March 29.
Report at 73-75.

The law in this area is well settled.  In general, parties to an election are not permitted to
keep a list of eligible voters at the polling place during an election, aside from the official
eligibility list that the Board provides.  *Tom Brown Drilling Co.*, 172 NLRB 1267 (1968);
*International Stamping Co.*, 97 NLRB 921 (1951).  But an exception exists for observers, who
are allowed to keep a list of voters they plan to challenge.  *See Avante at Boca Raton, Inc.*, 323
NLRB 555, 557 (1997); *Cerock Wire & Cable Group*, 273 NLRB 1041, 1041 (1984).  For the
Board to set aside an election based on party "list keeping," there must be evidence affirmatively
showing, or from which it can be inferred, that employees knew their names were being
recorded—this is of paramount importance to setting aside an election based on alleged list
keeping.  *Cf. Chrill Care, Inc.*, 340 NLRB 1016, 1016-1017 (2003) (no objectionable conduct
occurred where "no eligible voter testified to having witnessed anyone recording names or other
information," even though union agents had kept a list "circumspectly, and a short distance away
from the premises where the election was held"); *Textile Serv. Indus.*, 284 NLRB 1108 (1987)
(not objectionable for observer to write hash marks and unknown words not recognized as names
on piece of paper); and *Cross-Pointe Corp.*, 315 NLRB 714 (1994) (not objectionable for
observer to write something unknown on piece of paper); *with Hallandale Rehabilitation Cntr.*,
313 NLRB 835, 836–837 (1994) (objectionable for observer to keep a list of who voted,
comment audibly on how each voter would vote, and make derogatory remarks at voters
perceived to be against the union) and *Days Inn Mgmt. Co.*, 299 NLRB 735, 736–737 (1992)
("by openly maintaining a list of individuals who voted in the election, when the employees were
shown to have known that the names of voters were being recorded, the Respondent engaged in
objectionable conduct interfering with the election.").  *See also, Southland Containers*, 312
NLRB 1087 (1993).

Here, there is neither affirmative evidence, nor evidence from which it can be inferred,
that voters knew they were being recorded in the voting process by Petitioner's observers.  To be
sure, there is insufficient evidence that any Petitioner observer was, in fact, recording any aspect
of the voting process.  While the Hearing Officer did not expressly analyze this objection as one
of "list keeping" or surveillance, she properly found "there is *no* record evidence to support that
any observer audio or video recorded at any time during any polling session for the entirety of
the election."  The limited evidence of observers having cell phones present or minimally
handling those cell phones, without more, would not reasonably be construed by voters to mean

---

[29] Although the Employer claims Anthony admitted that he was using his cell phone as an
election observer to take notes, his testimony does not contain this admission [Tr. at 3647].

Amazon.com Services LLC
Case 29-RC-288020

the observer is keeping a list of who voted or surveilling voting activities.  While the Board's policy is to prevent observers from using or displaying their phones during an election—a policy to which the Board agents here adhered—the Board has never set aside an election because an observer merely possessed a cell phone or glanced at it while in the polling area.

For the above reasons, and those provided in the Report, I adopt the Hearing Officer's recommendation to overrule Objection 11.[30]

## Objection 12

In Objection 12, as set for hearing in the Order Directing Hearing, the Employer contends as follows:

The Region failed to protect the integrity and neutrality of its procedures and created the impression of Board assistance or support for the Petitioner when it solicited unfair labor practice charges against the Employer in the presence of voters in the polling area while the polls were open.

The statement of Objection 12 set forth in the Employer's Objections filed on April 8, provided the following additional assertions:

During the election, an employee entered the polling area and complained about Amazon's actions during the campaign.  Rather than tell the employee that they could discuss the matter privately, the Board Agent, within earshot of voters, stated to the employee that the employee could file unfair labor practice charges against Amazon with the NLRB.

The Employer excepts to the Hearing Officer's use of the Order Directing Hearing, instead of using the statements of Objection 12 set forth in the Employer's Objections filed on April 8.  However, the Hearing Officer considered the entirety of this objection, in either iteration, and did not err in "refus[ing] to receive evidence to resolve the issues raised with respect to" it, as the Employer contends in its exceptions.

I adopt the Hearing Officer's findings and recommendations on Objection 12.  In doing so, I note that the objection arises from a delicate representation-election predicament that

---

[30] In doing so, I affirm the Hearing Officer's well-reasoned conclusion that the evidence fails to show that the Board agent's conduct in response to, and connection with, observer cell phone usage, demonstrates any election irregularity or casts doubt on the fairness or validity of the election.  My decision to overrule Objection 11 is well supported by the decision by the U. S. Court of Appeals for the D.C. Circuit in *RadNet Mgmt. v. NLRB*, in which the court considered a similar election objection concerning observer cell phone use and declined to disturb the Board's affirmance of a regional director's overruling of that objection. 992 F.3d 1114, 1127 (D.C. Cir. 2021) ("Because RadNet offered no evidence of actual or even perceived list-keeping, the Board reasonably overruled the objection.").

Amazon.com Services LLC
Case 29-RC-288020

requires careful handling by the Board agent.  In this case, the Board agent was tasked with diffusing a situation in which a persistent individual in the polling area asked questions about whether certain conduct by the Employer is lawful.  As the Hearing Officer duly explained, the most preferable outcome is to have complete separation between the representation election and the unfair labor practice and charge-filing arena.  To that end, the Board agent ideally would have referred individuals in the polling area to the regional office for issues that are not directly related to the election at hand.

I am, nevertheless, satisfied that the Board agent's handling of the scenario here does not warrant setting aside the election results, for several reasons.  First, the agent did not "solicit" a charge, as alleged in Objection 12.  Second, the agent did not demonstrate bias or a predetermined view that the Employer engaged in misconduct.  Quite the opposite, the agent told the voter that his complaints about the Employer concerned lawful conduct.  Last, the agent did nothing to indicate that he or the Board was opposed to the Employer.  Instead, the agent merely recited basic and noncontroversial rights that the inquirer has under law to file a charge.  Overall, the Board agent's conduct was not severe enough to find the overall laboratory conditions were disturbed.  In distinguishing *Athbro*, the Board noted in *Ensign Sonoma LLC*, 342 NLRB 933, 993-934 (2004):

> [T]he agent's impulsive remarks, only one of which could be construed as partisan, were not as public as the conduct in question in *Athbro*, came in response to questions asked by the election observers, were heard by only two employees—the election observers chosen by the parties—in an election won by a large margin, and do not reflect such a level of bias or impropriety that they tend to destroy confidence in the Board's election process or truly impugn the election standards the Board seeks to maintain. Nor, when considered in context, do they taint the "indispensable perception of Board neutrality." *Hudson Aviation Services*, supra. In so concluding, we are mindful of the fact that the impact of Board agent misconduct on an election's outcome is not determinative under *Athbro*. Nevertheless, preservation of the free and uncoerced choice of employees is a relevant and compelling consideration, and we will not nullify that choice under the circumstances presented in this case."

For the reasons set forth above, and those provided in the Report, I will not nullify the voters' choice under the circumstances presented in this case, and I adopt the Hearing Officer's recommendation to overrule Objection 12.

## Objection 13

In Objection 13, as set for hearing in the Order Directing Hearing, the Employer contends as follows:

> During the critical period and while the polls were open, the Petitioner's members and agents harassed and threatened physical violence and other reprisals against employees who were not supportive of the Petitioner's cause.

Amazon.com Services LLC
Case 29-RC-288020

The statement of Objection 13 set forth in the Employer's Objections filed on April 8 provided a quotation from *Robert Orr-Sysco Food Servs. LLC*, 338 NLRB 614, 615 (2002) (quoting *Baja's Place*, 268 NLRB 868 (1984)), that "Threats by union agents warrant the setting aside of an election where they 'reasonably tend[] to interfere with the employees' free and uncoerced choice in the election.'"

The Employer excepts to the Hearing Officer's use Objection 13 as it is stated in the Order Directing Hearing, instead of using the statement set forth in the Employer's Objections filed on April 8. This lacks merit, as the Hearing Officer considered the entirety of this objection, in either iteration and did not err in "refus[ing] to receive evidence to resolve the issues raised with respect to" it, as the Employer contends in its exceptions.

I adopt the Hearing Officer's recommendation to overrule Objection 13 and affirm her findings, except as otherwise stated herein.

I begin by observing that at pages 78 to 85 of the Report, the Hearing Officer set out factual findings detailing multiple incidents during the critical period that the Employer contends support the allegations of threats and harassment in Objection 13. Although the Employer filed enumerated exceptions to nearly all of the Hearing Officer's findings and recommendations on Objection 13 (including Employer's exceptions #337-443), its brief in support of the exceptions does not specifically present arguments or grounds for finding that each incident detailed in the Report is objectionable. Instead, the Employer's brief is primarily limited to the following substantive arguments in connection with Objection 13. First, that the Petitioner, by Angelika Maldonado (an employee who is a stipulated agent of Petitioner and who held the title of Chair of the Organizing Committee), threatened employee Natalie Monarrez with physical violence on the first day of the election in a break room at JFK8. Second, that an interaction on February 7, between Petitioner's Vice President of Organizing Derrick Palmer (a stipulated Petitioner agent) and employee Robert Castellano, for which other Petitioner supporters were present, is conduct that reasonably tended to impact employees' free choice. Third, that Employee Monarrez was "chastised" by Petitioner's Secretary Madeline Wesley. In addition, the Employer argues elsewhere in its brief that the Hearing Officer erred in finding that Petitioner supporters Jason Anthony, Justine Medina, and Jordan Flowers—all of whom are employees of the Employer— are not agents of Petitioner. Last, the Employer asserts the Hearing Officer considered "subjective reactions" of employees in assessing Objection 13, contrary to Board law.

Taking these contentions largely in reverse order, I will first address the Hearing Officer's findings with respect to there being a lack of employee testimony that the allegedly objectionable conduct interfered with their free choice in the election. I construe these statements in the Report as finding insufficient evidence that the at-issue conduct was disseminated to a sufficient number of voters or that it was pervasive or persistent in employees' minds. The Hearing Officer properly relied on that circumstance in overruling this objection. *See generally, Avis Rent-A-Car Sys.*, 280 NLRB 580, 581 (1986) (setting forth factors relevant to determining whether employees could fully and fairly exercise their choice in an election). In other words, the Hearing Officer was not faulting the Employer for not introducing evidence of employees' "subjective reactions;" she was merely noting a lack of testimonial evidence

Amazon.com Services LLC
Case 29-RC-288020

detailing circumstances that would weigh in favor of finding the conduct warrants setting aside
the election.

I will next discuss whether employees and Petitioner supporters Anthony, Medina, and
Flowers are agents of the Petitioner, as this relates to whether the Hearing Officer properly
applied the third-party standard to their conduct.[31]  In finding that these individuals are not
Petitioner's agents, the Hearing Officer noted that they spoke at rallies and "sought employees'
signatures on the Petitioner's documents, distributed pro-Petitioner flyers, t-shirts, lanyards,
buttons, and free food, attended the Petitioner's meetings, and volunteered to talk to employees
about the Petitioner at its tables, by phone and text, and during home visits." Report at 15, 18.
The Employer contends that Medina would "hold herself out as someone who could represent
and speak on behalf of" the Petitioner and that Anthony was an administrator of Petitioner's
Facebook page and created a public Facebook group for the Petitioner.  The Employer further
contends that the Petitioner's outward communications with workers gave "the impression" that
it was an organization run and led by workers and that the Petitioner circulated pictures of
Anthony, Medina, Flowers, and other pro-Petitioner workers wearing "ALU" shirts.

Contrary to the Employer contentions, the evidence fails to show that the Petitioner
imparted actual or implied authority to these pro-Petitioner employees.[32]  The cases cited by the
Employer are readily distinguishable from the facts of this case.  *E.g., Loc. 147, Laborers Int'l
Union of N. Am.*, 370 NLRB No. 30, 30 (2020) (affirming judge's finding that an individual was
the union's general agent where he held an executive board position with the union and
demonstrably "maintain[ed] order at meetings" by issuing warnings and ejecting non-compliant
attendees); *Int'l Bhd. Of Elec. Workers Loc. 45*, 345 NLRB 7 (2005) (finding individual to be a
union agent because he was the point of contact for filing grievances, the main source of
information about union meetings, and the union's admitted "eyes and ears" and "liaison" with
its members).  The Employer also cites *NLRB v. Georgetown Dress Corp.*, 537 F.2d 1239, 1243
(4th Cir. 1976), which concerned an in-plant committee of employees as the union's sole in-plant
contact with the workers, quite unlike the circumstances here.

However, in *Health Care & Ret. Corp. of Am. v. NLRB*, 255 F.3d 276, 280 (6th Cir.
2000), cited by the Employer, the court declined to find rank-and-file workers were union agents
given the lack of evidence that the union "manifested" that they had authority to act for the union
or that they organized events or meetings for the union. In multiple other cases, including those
cited by the Hearing Officer, the Board has similarly found that a lack of authority of rank-and-

---

[31] The Employer also contends that other pro-Petitioner employees who served as observers, who
were not union officers, were agents of the Petitioner at all times, specifically Cassio Mendoza,
Pat Cioffi, and Tristan Dutchin.  My decision here affirming the Hearing Officer's agency
findings applies equally to these individuals, none of whom is squarely implicated by the
allegations in Objection 13.

[32] As to Medina, while she may have "held herself out as" someone who could speak on behalf
of the Petitioner, there is no evidence from which to find that the Petitioner held Medina out as
having such authority or that it ratified her actions.

Amazon.com Services LLC
Case 29-RC-288020

file employees to act on behalf of the union, absent the Union's consent or ratification.[33]  These cases are apposite to the facts of the instant case.

The law, therefore, does not support the Employer's contentions.  Nor do the facts as none of the activities these workers engaged in on the Petitioner's behalf are sufficient to confer agency status.  The Petitioner's messaging that workers lead the union, and its use of employee pictures in its messaging, simply is not sufficient to demonstrate ratification or confer agency status on Petitioner supporters who are not officers.

Having concluded that the Hearing Officer's agency findings are correct, I will next address the alleged threat by Anthony and Brett Daniels about needing to "get" Employer General Manager Felipe Santos, and the statement that they had to "do something" with Santos. The Employer has excepted to these findings in its enumerated exceptions but has not advanced specific reasons for reversing the Hearing Officer.  I agree with the Hearing Officer that this incident did not amount to a threat of physical violence or reprisals against those who were not supportive of the Petitioner's cause.  The statements are so ambiguous that one would have to severely contort their meaning to construe an objectionable threat.  I decline to do so here.

Similarly, the evidence of alleged "harassment" by Conor Spence toward employee Nakeesha Fray does not come close to being objectionable conduct.  Spence credibly testified that he approached Fray because he had heard from a coworker that a manager told Fray to cover up Petitioner's name on her shirt and he was concerned about the legality of a manager providing that instruction.  Even without that context, Spence's statements were devoid of coercion and unthreatening in nature, as the Hearing Officer properly found.  This single incident was not severe, it was not adequately disseminated, and most importantly, it could not reasonably be understood by employees as coercing support for the Petitioner.

I further affirm the Hearing Officer's findings concerning the alleged threating conduct by Derrick Palmer during the February 7 small group meeting toward Robert Castellano,[34] the alleged threatening statement by Petitioner supporter Sam Bowman of "who will protect you?," the alleged threatening circumstance in which Palmer laughed at an employee wearing a "Vote No" shirt, the alleged harassing conduct by Petitioner supporter Anthony toward employee Goriva and in online forums consisting namely of using curse words.  Each of these situations cannot be reasonably interpreted as threatening violence, engendering fear, or influencing

---

[33] While the Employer excepts to the Hearing Officer's application of *Advance Prod. Corp.*, 304 NLRB 436, 436 n. 3 (1991), *Crestwood Convalescent Hosp.*, 316 NLRB 1057, 1057 (1995), and *United Builders*, 287 NLRB 1364 (1988), I find these cases support the lack of agency status for the Petitioner supporters in issue in this case.

[34] I agree with the Hearing Officer that Palmer's conduct toward Castellano did not reasonably tend to interfere with free choice.  The Hearing Officer adequately justified her findings as to this incident.  Contrary to the Employer's contentions, she did not rely solely on the subjective reactions of employees.

Amazon.com Services LLC
Case 29-RC-288020

employees' decision to vote for or against the Petitioner, as the Hearing Officer appropriately found.

The same is true when it comes to the evidence of four Petitioner supporters (including Medina and Flowers) visiting employee Gopi Vaidya at her home during the weekend before the election. Because I agree with the Hearing Officer's findings that the Petitioner supporters are not Petitioner agents, the proper standard is "whether the misconduct was so aggravated as to create a general atmosphere of fear and reprisal rendering free election impossible." *Westwood Horizons Hotel* , 270 NLRB 802, 803 (1984). That standard is not met here.[35] The aforementioned incidents lacked severity and do not rise to the level of inducing fear or inhibiting employees' free and uncoerced choice to vote how they chose in the election.

Last, I will address the incidents involving Monarrez on the first day of the election. I affirm the Hearing Officer's finding that Anthony's conduct was not "so aggravated to create a general atmosphere of fear and reprisal rendering a free election impossible," and that the conduct occurring later by Palmer, Maldonado, and Daniels as a group toward Monarrez did not rise to a level of reasonably tending to interfere with free choice. Report at 90.[36]

---

[35] I reject the Hearing Officer's statement that "[v]ideotaping by a union, even if employees are engaged in protected activity, unaccompanied by threats or other coercive conduct, does not constitute objectionable conduct." The Hearing Officer relied on *Randell Warehouse of Arizona*, 328 NLRB 1034 (1999), which was subsequently overruled in *Randell Warehouse of Arizona*, 347 NLRB 591 (2006). Under the extant law set forth in the 2006 *Randell Warehouse* decision, and as I discuss more later in this decision, the Board will find that a union's photographing of employees engaging in private Section 7 activity tends to intimidate employees and constitutes objectionable conduct when it is unexplained. The 2006 *Randell Warehouse* decision teaches that to be permissible, there must be a legitimate justification for the photography, and it must be timely communicated to employees. However, because none of the individuals at the home visit to Ms. Vaidya were agents of the Petitioner, *Randell Warehouse* does not apply.

With respect to the Hearing Officer's statement that "home visits by a union, without threats, do not constitute objectionable conduct," to which the Employer excepts, this is a correct statement of law. *See generally Livingston Shirt Corp.*, 107 NLRB 400, 406 (1953) ("solicitation while entering and leaving the premises, at their homes, and at union meetings. . . are time-honored and traditional means by which unions have conducted their organizational campaigns."); *see also Canton, Carp's, Inc.*, 127 NLRB 513, 513 n.3 (1960) (union campaigning by home visits unaccompanied by threats and coercion is not objectionable); *Plant City Welding & Tank Co.*, 119 NLRB 131, 133-134 (1957) (same), *revd. on other grounds*, 133 NLRB 1092 (1961). But again, because the individuals conducting the home visit were not agents of the Petitioner, the proper standard is the third-party standard, and the Hearing Officer correctly found insufficient evidence of threats or harassment under that standard.

[36] The Employer excepts to the Hearing Officer's finding that the Employer's CCTV records would constitute "the best evidence of what transpired in the first-floor breakroom on March 25," Report at 83, n. 30. I agree with the Hearing Officer that video footage of the incident would be highly relevant evidence. But whether it would be the "best evidence" is

- 25 -

Amazon.com Services LLC
Case 29-RC-288020

Monarrez testified that after Palmer ad Daniels left the scene, Maldonado told her she "didn't know who [she] was dealing with because she [Maldonado] was the head of the Workers' Committee, she was in the ALU" and Maldonado "was going to kick my ass in the parking lot" and "take me outside" and "beat me up."  While I do not condone this sort of hot-tempered bombast, on these facts, I do not find it objectionable.  The details and context of the encounter are well documented in the Report and serve to undermine a view that Maldonado's comments would instill trepidation in the bargaining unit or create a fearful atmosphere.  The record is unambiguous that Maldonado's statements were not directed at the entire unit, but a single individual.  The Hearing Officer properly reasoned that the statement would not be perceived as a serious, specific threat of physical harm.  Notably, there is no evidence of widespread dissemination, or evidence that the encounter had an impact on the remainder of the electorate who had not yet voted.  The margin by which the Petitioner won the election further cuts against ordering a rerun based on the argument between Monarrez and Maldonado.  *Cf. Steak House Meat Co.*, 206 NLRB 28 (1973) (election set aside based on threat to kill employee if he voted against the union where knife was brandished); *Buedel Food Products Co.*, 300 NLRB 638 (1990) (election set aside based on threat to burn employee's car if he did not vote for the union); *Smithers Tire*, 308 NLRB 72 (1992) (election set aside based on threat to flatten employee's tires); *see also Robert Orr-Sysco Food Serv.*, 338 NLRB 614, 615 (2002) (election set aside based on threat to crack head for voting against union and crossing picket line).  The Hearing Officer properly contextualized the conduct that occurred and found it distinguishable from cases where the Board has found violent rhetoric warrants a rerun election.

The Hearing Officer found that just before making those statements, "Maldonado called Smalls on her phone and then took pictures and videos of Monarrez while she was holding her sign."  She found, however, that such allegations are not sufficiently related to Objection 13 or any other objection.  Report at 88, fn. 33.  I find it unnecessary to pass on whether the recording is sufficiently related to other objections, because as explained below, even if it is, I find the recording is not objectionable conduct.

As I have noted above, the governing standard for recording by a union is set forth in *Randell Warehouse of Arizona*, 347 NLRB 591 (2006).  In that case, the union took pictures before the election of employees who were either taking or rejecting union literature, thereby creating a permanent record of which employees were favorable toward the union.  After discussing Board precedent holding that an employer's unexplained photographing of employees engaged in Section 7 activity is presumptively unlawful, the Board considered the effect of such conduct by a union on the validity of the election.  The Board concluded "that in the absence of a valid explanation conveyed to employees in a timely manner, photographing employees engaged in Section 7 activity constitutes objectionable conduct whether engaged in by a union or an employer."  *Id*. at 591.  The Board reasoned as follows:

---

hardly germane to this objection, as the Hearing Officer did not draw an adverse inference against the Employer for declining to present video footage evidence, and I find that the evidence presented is insufficient to sustain this objection in any event.

Amazon.com Services LLC
Case 29-RC-288020

A reasonable employee would anticipate that the union would not be pleased if he or she
failed to respond affirmatively to the union's efforts to enlist support, just as an employee
would anticipate that an employer would not be pleased if he or she rebuffed the
employer's solicitation to reject union representation.

*Id*. at 594.

The Board further noted that while unions can lawfully undertake direct personal
solicitation and poll employees, photographing them "is different" because it "captures a
nonconsensual record of the extent of an employee's participation in or receptiveness to certain
Section 7 activity." *Id.* at 596.

I find the reasoning behind the Board's 2006 *Randell Warehouse* decision to have limited
application to Maldonado using her phone to take pictures of Monarrez holding a sign. This was
a brief, one-off instance characterized by improvisation, as opposed to a systematic recording of
union activities to ascertain employee sentiment toward representation. The photographing did
nothing to reveal otherwise unknown details regarding which employees support or do not
support the Petitioner as Monarrez was voluntarily displaying the sign on her own accord. Her
identity and non-receptiveness toward Petitioner were fully disclosed. In that circumstance, the
concern that employees will have anticipatory fears that the record of their protected activities
will be used for future reprisals falls away, and it would not be reasonable for Monarrez or any
other employee to believe the picture would be used for any sort of retaliation by Petitioner.

For the reasons stated above, and those given in the Report, I adopt the Hearing Officer's
recommendation to overrule Objection 13.

## Objection 14

In Objection 14, as set for hearing in the Order Directing Hearing, the Employer contends
as follows:

The Petitioner improperly promised employees in the final days of the campaign that it
would not charge them dues unless and until the Petitioner secured a raise for employees
during collective bargaining. Prior to and during the critical period, the Petitioner was
clear that it would charge employees dues immediately following a successful vote.
After employees expressed reluctance to pay dues, the Petitioner directly contradicted its
earlier statements and asserted for the first time, late in the campaign, that it would not
charge dues unless and until it secured higher wages in contract negotiations with the
Employer.[37]

---

[37] The statement of Objection 14 set forth in the Employer's Objections filed on April 8 provided
the following additional assertions:

The ALU made these promises to employees during employee meetings, on social media,
and in a letter from the ALU's President to all eligible voters two days before the polls
opened. The ALU's failure to file any foundational documents and LM filings with the

Amazon.com Services LLC
Case 29-RC-288020

Although the Employer excepts to the Hearing Officer's use of the statement of
Objection 14 as it appears in the Order Directing Hearing, the record reflects that the Hearing
Officer received all relevant evidence in connection with the entirety of Objection 14, and that
her analysis addressed the allegations the Employer has raised in either iteration of the objection.

The Hearing Officer's findings and recommendations are affirmed.[38]  She properly found
the Petitioner's Constitution and bylaws provided that the amount of dues would be
"democratically voted upon," and that no such vote had occurred.  There is no evidence of
employees paying union dues or the union collecting dues during the critical period.  At the end
of the day, there is a simple reason for finding nothing objectionable in the Petitioner's
communications that it would not charge dues unless it secured a contractual raise.  These
statements were made to *all* employees, without concern for whether they voted for or against
representation.  That is not the sort of *quid pro quo* that is impermissible under the teachings of
*NLRB v. Savair Mfg. Co.*, 414 U.S. 270, 272-273 (1973) (union interferes with employee free
choice by offering to waive initiation fees for employees who join the union before the election).

The Hearing Officer correctly relied on cases holding that a union may offer to waive
dues for the entire unit until a first contract is obtained.  The Report fully explains why the
evidence does not demonstrate an impermissible grant of benefits, as the Employer asserts in this
objection and argues in its exceptions and brief. [39]  When considering similar allegations, the
Board has explain that "a union's promise to waive back dues simply removes an artificial
obstacle to the endorsement of the union by creating a situation in which the employee will not

---

Department of Labor, as required by the Labor Management Reporting and Disclosure
Act of 1959 ("LMRDA"), coupled with its late-hour promise of free union representation,
allowed it to make promises regarding its dues structure in a way that deprived Amazon
of the ability to effectively respond, and denied employees the opportunity to assess the
credibility of the promise.  Additionally, the ALU's promises of free union representation
is an objectionable grant of a benefit because this benefit is within the ALU's power to
effectuate.  *See, e.g., Alyeska Pipeline Serv. Co.*, 261 NLRB 125, 126-27 (1982) (union
controlled all access to construction jobs in Alaska for employees participating in
election, and thus union's suggesting only way to get union card was by voting for union
in upcoming election was objectionable as union was clearly promising to grant members
advantage over nonmembers and had power to do that); *see also, Go Ahead N. Am., LLC*,
357 NLRB 77, 78 (2011) (finding objectionable union's offer to waive back dues).

[38] I correct an error in the Report's citation to *Lalique N.A., Inc.*, 339 NLRB 1119, 1120 (2003). I
also address the Employer's exception to the Hearing Officer's "rejection of EMP 297."  I find
the record lacking clarity, as it reflects the exhibit—a screen shot of a text message—was
received into evidence [Tr. at 2041], and the Hearing Officer summarized this evidence in her
Report at pg. 98, but yet the exhibit appears in the rejected exhibits file.  I find this exhibit may
be received into the record but that it does not change the decision to overrule this objection.

[39] It is beyond dispute that the Petitioner, who is awaiting certification, had not obtained a first
contract for the bargaining unit providing for employee dues authorization.

Amazon.com Services LLC
Case 29-RC-288020

have to pay back dues whether he votes for or against the union." *Mcallister Towing & Transp. Co., Inc.*, 341 NLRB 394, 418-419 (2004).

Accordingly, for these reasons, and those given by the Hearing Officer, I agree with her conclusion to overrule Objection 14.

## Objection 15

In Objection 15, as set for hearing in the Order Directing Hearing, the Employer contends as follows:

> The Petitioner engaged in repeated and deliberate attempts to interfere with and "shut down" the Employer's small group meetings, solicited employees during the Employer's educational meetings in violation of the Employer's policies, and destroyed the Employer's campaign materials.[40]

Although the Employer excepts to the Hearing Officer's use of the statements of Objection 15 as it appears in the Order Directing Hearing, instead of using what is set forth in the Employer's Objections filed on April 8, I find the Hearing Officer considered all issues raised in either iteration of the objection.  The record reflects that the Hearing Officer received evidence in connection with the entirety of Objections 15 and that her analysis covered all the Employer's contentions raised in either iteration.  I find none of the Employer's exceptions to present sufficient grounds for reversing the Hearing Officer's findings or recommendations.

Accordingly, for these reasons, and those given by the Hearing Officer, I agree with her conclusion to overrule Objection 15.

## Objection 16

In Objection 16, as set for hearing in the Order Directing Hearing, the Employer contends as follows: "Non-employee Petitioner organizers repeatedly trespassed on the Employer's property."  The statement of Objection 16 set forth in the Employer's Objections filed on April 8, provided the following additional assertions:

---

[40] The statement of Objection 15 set forth in the Employer's Objections filed on April 8 provided the following additional assertions:

> The ALU's actions intentionally created hostile confrontations in front of eligible voters and hindered Amazon's lawful right to communicate its views to employees during the campaign.  *See, e.g.*, *Livingston Shirt Corp.*, 107 NLRB 400, 406-407, 409 (1953) (union has no right to campaign or solicit during employer's lawful small group meetings); *United Steelworkers of Am. v. NLRB*, 646 F.2d 616, 627 (D.C. Cir. 1981) (same, unless an employer has a broad rule prohibiting solicitation during nonworking time [Amazon has no such policy]).

Amazon.com Services LLC
Case 29-RC-288020

Over the course of many months, Amazon informed non-employee ALU organizers on
several occasions that they had no right to solicit on Amazon's property and that their
presence on Amazon's property constituted unlawful trespass.  Nevertheless, Mr. Smalls
and other nonemployee ALU organizers continued to trespass on Amazon's property for
the purpose of soliciting employee support during the critical period.  On
February 23, 2022, during the critical period, Mr. Smalls and two ALU organizers
initiated a confrontation with the New York Police Department after Mr. Smalls
repeatedly refused to leave Amazon's property, which resulted in their arrests.  After his
arrest, Mr. Smalls and the ALU consistently misrepresented what had occurred, claiming
that he merely dropping off food for employees and was akin to an Uber Eats driver, and
that Amazon "called the cops on employees."  Mr. Smalls consistently failed, however, to
mention in his social media posts and interviews on the subject that on the date of his
arrest, he brought a film crew onto Amazon's property without authorization, conducted
an interview (that can be seen on social media), and then proceeded to trespass and loiter
for over one hour.  The ALU also filed ULP charges—which the Region has yet to
investigate—and falsely alleged that Amazon had "violated its national settlement" with
the NLRB.  The ALU then amplified these misrepresentations and the pendency of the
charge in the media.  All of these actions had a reasonable tendency to interfere with
laboratory conditions.  *See Phillips Chrysler Plymouth*, 304 NLRB 16, 16 (1991) (Board
set aside election when union agents invaded the employer's premises without permission
and refused to leave when asked, engaging in a confrontation with company
management).

The Employer excepts to the Hearing Officer's use of the statement of Objection 16 as it
appears in the Order Directing Hearing, instead of using that which is set forth in the Employer's
Objections filed on April 8.

To the extent that the Hearing Officer did not fully address, or precluded the introduction
of evidence related to, allegations that the Petitioner "consistently misrepresented what has
occurred," filed unfair labor practices charges regarding *inter alia* Mr. Smalls' arrest, or
"amplified these misrepresentations and the pendency of the charge in the media," I find the
exclusion of this evidence to be without harm or prejudice to the Employer's objections.  As I
explained above, pursuant to *Midland National*, 263 NLRB 127, the Board will not set aside
elections based on misrepresentations unless they involve misuse of the Board's election process
or forged documents.  In Objection 16, neither exception to the *Midland* standard is alleged, nor
is there any contention that the evidence the Hearing Officer precluded involved misuse of the
Board's election process or forged documents.[41]

---

[41] I accordingly find that even if the Hearing Officer had admitted Employer Exhibit 595, it is not
evidence of objectionable conduct sufficient to warrant setting aside the election.  I further find
that even if employees had testified regarding what Petitioner told them about Smalls' arrest on
February 23, mere misrepresentations are not objectionable under *Midland National*, and based
on the evidence that is in the record on this subject, there is no reason to believe such testimony
would have been sufficient to sustain this objection.

Amazon.com Services LLC
Case 29-RC-288020

The Report thoroughly and accurate summarizes the record evidence relevant to Objection 16.  I agree with the Hearing Officer that there is insufficient record evidence that Smalls "repeatedly trespassed on the Employer's property" during the critical period, and that Objection 16 should be overruled.  I affirm the Hearing Officer's rationale for recommending Objection 16 be overruled.

In its exceptions, the Employer indicates that the Hearing Officer should have applied *Lechmere, Inc. v. NLRB*, 502 U.S. 527, 533 (1992) and other "legal authority regarding an employer's right to exclude non-employee organizers from its property."  I disagree.  The Board has found that "*Lechmere* addresses the circumstances in which an employer may exclude union organizers from its premises without committing an unfair labor practice.  It is concerned, in other words, with whether the *employer's* conduct is *lawful*."  *Edward J. DeBartolo Corp.*, 313 NLRB 382, 382 (1993).  But in election cases, like this one, the question is not whether conduct is lawful; it is whether laboratory conditions were destroyed, specifically "whether the Union's conduct reasonably tended to interfere with the employees' free and uncoerced choice in the election."  *Id*. (citing *Baja's Place*, 268 NLRB 868 (1984)) (cleaned up).  To answer that question, the Board considers numerous factors, including the number of incidents, their severity, whether they were likely to cause fear among the employees in the bargaining unit, and the proximity to the election date.

I conclude that the Hearing Officer properly applied that standard.  In adopting the Hearing Officer's analysis, I only add that the record contains no evidence that the Petitioner representatives who the Employer claims repeatedly trespassed were committing any destruction of property or engaging in violent activities.  Further, the incidents were far removed in time from the election date.  Overall, I find the record shows that the physical presence of Petitioner representatives around JFK8 was entirely peaceful, that none of the alleged trespass incidents would reasonably cause fear among the bargaining unit, and that the evidence presented did not rise to a level of objectionable conduct.

Accordingly, for these reasons, and those given by the Hearing Officer, I agree with her conclusion to overrule Objection 16.

## Objection 17

In Objection 17, as set for hearing in the Order Directing Hearing, the Employer contends as follows: "The Petitioner unlawfully polled employee support, engaged in unlawful interrogation, and created the impression of surveillance during the critical period."  The statement of Objection 17 set forth in the Employer's Objections filed on April 8 provided the following additional assertions:

The Employer's exceptions renew the argument that Smalls orchestrated his own arrest to bolster the organizing campaign and that this somehow supports sustaining Objection 16.  I disagree and find the Hearing Officer's assessment of this argument in fn. 41 of her Report to be comprehensive.  I do not rely, however, on her finding that the argument is not sufficiently related to the objections.

Amazon.com Services LLC
Case 29-RC-288020

During the critical period, the ALU distributed a pledge form that asked employees to fill out their name, state what day they planned to vote, what time they planned to vote, their phone number, their address, and to sign a commitment that they would vote "Yes." This constitutes objectionable polling and interrogation. The ALU's request that employees identify what time and date they would vote reasonably gave the impression that the ALU would surveil when and if they chose to vote, and the commitment to vote "Yes" gave the impression that they could not change their mind if they signed one of these commitment forms. *See, e.g., Kusan Mfg. Co. v. NLRB*, 749 F.2d 362, 365

Although the Employer excepts to the Hearing Officer's use of the statement of Objection 17 as it appears in the Order Directing Hearing, instead of using the Employer's April 8 Objections, I find the Hearing Officer considered all issues raised in either iteration of this objection. I further find the Hearing Officer received all relevant evidence in connection with the entirety of Objection 17, and that her analysis covered the full scope of the allegations raised by the Employer.

The Hearing Officer properly found that a union's polling of employees and asking them how they will vote is not objectionable. Consistent with the Hearing Officer's statement of Board law in this area, I note the Board has recognized that "[e]ven employees opposed to unionization would reasonably tend to regard personal solicitation and polling (devoid of accompanying coercive statements or conduct) as serving the legitimate purpose of identifying union supporters in an organizational campaign." *Randell Warehouse*, 347 NLRB at 595 & fn. 20 (collecting cases holding "that it is not objectionable conduct for a union to solicit employees noncoercively to support it and to maintain a written record of how employees respond.").

In this case, where multiple election sessions were held over several days to accommodate the large number of voters, I find that the Petitioner asking voters to identify which session they would attend to vote has a legitimate purpose of aiding the Petitioner's understanding of the election logistics, *i.e.*, how many voters would attend each session. Such information may be necessary for arranging transportation or for assisting the Petitioner's understanding whether the stipulated election terms were sufficient and workable. In affirming the Hearing Officer's recommendation to overrule Objection 17, I also rely on the voluntary nature of the pre-election pledge form, combined with a complete lack of coercive or intimidating statements or other such conduct surrounding the use or collection of the forms.

Accordingly, for these reasons, and those given by the Hearing Officer, I agree with her conclusion to overrule Objection 17.

## Objections 18 and 21

Objections 18 and 21 concern similar, but distinct, allegations regarding, *inter alia*, conduct by the Petitioner that is alleged to have deprived voters of the ability to make informed voting decisions. These objections will be considered together.

Amazon.com Services LLC
Case 29-RC-288020

In Objection 18, as set for hearing in the Order Directing Hearing, the Employer contends as follows:

> After disparaging—and celebrating its independence from—established, institutional unions for months leading up to the vote, the Petitioner's President and attorney asserted in 11th hour communications to voters that the Petitioner was backed by established unions with millions of union members, that those more-established unions were actively involved in the Petitioner's campaign, were providing funding and other services to the Petitioner, and would also be involved in contract negotiations if the Petitioner was elected.  These misrepresentations are objectionable conduct because, under the circumstances, employees were unable to discern the truth of these statements regarding which labor organization would be representing them.

The Employer's objections filed April 8 also stated: "The ALU's failure to file any foundational documents and LM filings with the Department of Labor as required by the LMRDA, coupled with its late-hour promise of operational support from and affiliation with other unions, deprived Amazon of the ability to effectively respond and employees the opportunity to assess the ALU's credibility."

In Objection 21, as set for hearing in the Order Directing Hearing, the Employer contends as follows:

> The Petitioner failed to file forms required by the Labor Management Reporting and Disclosure Act of 1959 ("LMRDA").  The LMRDA requires all unions purporting to represent private sector employees to file, among other things, detailed financial reports.  To date, the Petitioner has not filed any financial or other reports required by the LMRDA despite being under a legal obligation to do so.  The Petitioner's failure to comply with the LMRDA deprived employees from access to critical financial information about the Petitioner's operations during a critical time period (i.e., whether to vote for them as their bargaining representative).

The statement of Objection 21 set forth in the Employer's Objections filed on April 8, further asserted: "As acknowledged by the LMRDA, these disclosures are necessary to eliminate or prevent improper practices on the part of labor organization, their officers, and their representatives and to protect employees from the activities of labor organizations," and "ALU President Smalls brazenly told CNN the week before the election that he would not file these disclosures until after the election, if at all."

Although the Employer excepts to the Hearing Officer's use of the statements of Objections 18 and 21 as they appear in the Order Directing Hearing, the record reflects that she received all relevant evidence in connection with the entirety of these objections and that her analysis covered the full scope of the issues raised in either iteration.  Having reviewed the Employer's remaining exceptions and finding them to be without merit, I adopt the Hearing Officer's recommendation to overrule Objections 18 and 21 for the reasons stated in the Report.

Amazon.com Services LLC
Case 29-RC-288020

**Objection 20**

In Objection 20, as set for hearing in the Order Directing Hearing, the Employer contends
as follows:

> The Petitioner deployed a light projector outside the JFK8 facility that projected mass
> messaging on the façade of the JFK8 building immediately prior to the election.  Late at
> night on March 23, 2022, and through the early morning hours, after the voting tent was
> in place, the ALU projected messaging on the front of JFK8 immediately over the polling
> area which read: "Amazon Labor Union"; "VOTE YES"; "VOTE YES!TO KEEP
> YOUR PHONES"; "BE THE FIRST IN HISTORY"; "THEY FIRED SOMEONE YOU
> KNOW"; "THEY ARRESTED YOUR COWORKERS"; and "ALU FOR THE WIN".
> The Petitioner's light projections are also objectionable misrepresentations inasmuch as
> they caused confusion about the identity of the messenger, suggested that Amazon
> supported the messaging, and misrepresented the purpose and consequences of the vote.
> The Petitioner's light projections also reiterated the Petitioner's false campaign narrative
> that the Employer sought the arrest of employees.

The statement of Objection 20 set forth in the Employer's Objections filed on April 8,
provided references to *Peerless Plywood Co.*, 107 NLRB 427, 429 (1953) and *Bro-Tech Corp.*,
330 NLRB 37, 39 (1999), stating *inter alia*: "Because 'the Board's goal is to keep voters as free
of uninvited mass messages as possible during the period just prior to the conduct of the
election,' the ALU's mass projection of its campaign messaging falls squarely within the
prohibitions of *Peerless Plywood*."

The Employer excepts to the Hearing Officer's use of the statement of Objection 20 as it
appears in the Order Directing Hearing, instead of using that which is set forth in the Employer's
Objections filed on April 8.  With one singular exception which I will discuss below, the record
reflects that the Hearing Officer received all relevant evidence in connection with the entirety of
Objection 20 and that her analysis covered the full scope of the allegations raised by the
Employer.  The singular exception is the Hearing Officer found Objection 20 to contain a
temporal limitation and therefore to not be sufficiently related to allegations of the above-
described light projections occurring at approximately 1:00 a.m. on March 25.

I find, contrary to the Hearing Officer, that Objection 20 is not so limited as to time.  I
will accordingly take into consideration the Employer's offer of proof that the projection was
displayed a few hours prior to the polls opening.[42]  For the following reasons, I conclude such
projections are not objectionable.

Initially, as the Hearing Officer reasoned, even if I were to construe the messages in the
projections as misrepresentations, mere misrepresentations do not constitute objectionable
conduct warranting setting aside the election under *Midland National*, 263 NLRB 127.  Further,

---

[42] I similarly find EMP 909 should be removed from the rejected exhibit file and received into
evidence.

Amazon.com Services LLC
Case 29-RC-288020

as the Hearing Officer reasoned, "given the plain meaning of the light projections themselves, there is no record evidence to support that any eligible voter was confused about the identity of the entity projecting the light projections as Petitioner." Report at 133.

Additionally, the record makes plain that employees were not compelled to view the light projection messages while they were working. Rather, these messages were only visible to workers from the outside of the building. In that circumstance, the projections are not objectionable under *Peerless Plywood Co.*, 107 NLRB 427 (1954) and its progeny.

In finding no *Peerless Plywood* violation, I begin by observing the factual context in which *Peerless Plywood* was decided. There, the employer "assembled employees on its property in order to have them listen to a prepared speech about the election delivered by the secretary-treasurer of the Employer." *Id.* at 429. The Board set forth a timing-based rule for such speeches and held that "employers and unions alike will be prohibited from making election speeches on company time to massed assemblies of employees within 24 hours before the scheduled time for conducting an election." *Id.* at 430. The Board articulated the following reasons for its new rule:

> Last-minute speeches by either employers or unions delivered to massed assemblies of employees on company time have an unwholesome and unsettling effect and tend to interfere with that sober and thoughtful choice which a free election is designed to reflect. We believe that the real vice is in the last-minute character of the speech coupled with the fact that it is made on company time whether delivered by the employer or the union or both. Such a speech, because of its timing, tends to create a mass psychology which overrides arguments made through other campaign media and gives an unfair advantage to the party, whether employer or union, who in this manner obtains the last most telling word.

*Id.* at 429. The Board stated the new rule "will not interfere with the rights of unions or employers to circulate campaign literature on or off the premises at any time prior to an election." *Id.* at 430.

Two years later, in *U.S. Gypsum Co.*, 115 NLRB 734 (1956), the Board applied the principles of *Peerless Plywood* to a union's use of a sound truck to broadcast campaign speeches and other auditory material 24 hours before the election. The sound truck was parked across the street from the workplace, and the speeches projected were heard by employees working inside the plant. The Board first noted that "the usual *Peerless Plywood* situation" is the speech of an individual speaker to a "massed assembly of employees gathered together for the purpose of hearing the speech by a speaker who addresses them face to face." The Board explained, however, that the "critical factor" is "whether the employees are exposed" to the speaker's remarks, not the location of the speaker. The Board reasoned that it was enough that the employees exposed to the sound truck's broadcast were "working with or near each other," and therefore, the employees did not need to be "gathered for the purpose of hearing the speeches." *Id.* at 735.

Amazon.com Services LLC
Case 29-RC-288020

Several decades later, in *Bro-Tech Corp., t/a Purolite*, 330 NLRB 37 (1990), the Board applied the *Peerless Plywood* rule to a union's sound truck broadcast of pro-union songs which included the lyrics, "we are united, we are like unbeatable, we can do anything as long as we're together," "stand united, brothers and sisters, come together," and "we're brothers and sisters until the end." The broadcast began on the day of the election 45 minutes before the polls opened and continued for over 9 hours. The Board concluded the broadcast "interfered with the conduct of a fair election." *Id*. at 39. The Board reasoned that the employees were subjected to the audio recordings on their way into work, at work, or leaving the plant. Thus, the employees "became a captive audience" and were a massed assembly effectively forced to hear the songs. The Board further found that employees clearly understood the pro-union message of the broadcast, and therefore, the songs constituted "campaign speech" under *Peerless Plywood*. As the broadcast occurred within the 24-hour period before the election, the Board ordered the election be set aside. *Id.* at 40.

In *Virginia Concrete Corp.*, *Inc*., 338 NLRB 1182 (2003), the Board declined to extend the *Peerless Plywood* rule to ban a brief electronic "VOTE NO" message transmitted to the electronic screen in drivers' work trucks 24 hours before the election. The Board reasoned that communication "is more analogous to campaign literature than to a campaign speech or sound truck broadcast." *Id.* at 1187.

In the instant case, the Hearing Officer found *Peerless Plywood* does not apply, even assuming the light projections were made in the 24-hour pre-election period, because there was no sound or speech with the light projections. The Petitioner's answering brief similarly suggests that *Peerless Plywood* does not apply because the light projections did not involve audible sound, citing *Pearson Education, Inc.*, 336 NLRB 979, 979 (2001) and *Myrna Mills, Inc*., 133 NLRB 1740, 1743 (1961), for the proposition that written material is not covered by *Peerless Plywood*.

I do not find *Peerless Plywood* to be necessarily limited to oral speech. But in deciding whether *Peerless Plywood* applies or does not apply to specific non-oral speech or written speech, the nature of the written speech must be considered. If the written speech, in itself, is coercive or intrudes into the polling area, it will be objectionable without resort to *Peerless Plywood* standards. *See, e.g., Pearson Education, Inc.* If not, the operative fact is whether employees are compelled into receiving the message at a mass meeting on company time, that is, whether employees have a choice to be present for it or if they are free to walk away. In essence, what *Peerless Plywood* proscribes is campaign speech made to amassed employees 24 hours before the election and distributed in such a way that employees have no choice but to pay attention to it.

Here, the Petitioner's light projections did not violate the *Peerless Plywood* rule. There is no evidence that employees were gathered together and compelled to read the projections. Further, the projections were only visible outside the building, on breaks or non-work time, and were not displayed at employees' workstations or inside the facility. Hence, employees were not exposed to the projected messaging in the same way that they would be exposed to a broadcast from a sound truck. The projections were images from which anyone could look away if they

Amazon.com Services LLC
Case 29-RC-288020

chose.  The projections, therefore, are more akin to "posters," found in *Myrna Mills, Inc.* to be not objectionable.  For these reasons, I find the light projections, even assuming they occurred at around 1:00 am on March 25, are not objectionable under *Peerless Plywood*.

Accordingly, I adopt the Hearing Officer's recommendation to overrule Objection 20, to the extent that it is consistent with this decision.[43]

## Objection 22

In Objection 22, as set for hearing in the Order Directing Hearing, the Employer contends as follows:

The Petitioner distributed marijuana to employees in return for their support in the election. The Petitioner's distribution of marijuana was an impermissible grant of benefit and interfered with employees' free choice in the election.

The statement of Objection 22 set forth in the Employer's Objections filed on April 8 provided, *inter alia*, the following additional assertions: "Amazon made the Region aware of such conduct several times. The Board, as a federal agency and regulator, cannot condone such a practice as a legitimate method of obtaining support for a labor organization."

Although the Employer excepts to the Hearing Officer's use of the statement of Objection 22 as it appears in the Order Directing Hearing, instead of using that which is set forth in the Employer's Objections filed on April 8, the record reflects that the Hearing Officer considered all of the salient issues raised in either iteration of Objection 22 and received all relevant evidence in connection with this objection.

In affirming the Hearing Officer's recommendation to overrule Objection 22, I neither condone nor condemn the Petitioner's alleged giving out of marijuana.  Rather, I agree with the Hearing Officer that what was allegedly given was not proven to be of substantial or significant value, as testimony reflects at most small samples were provided.  Further, the Hearing Officer determined that the Petitioner did not give away marijuana during the critical period, and a preponderance of evidence does not show otherwise.  In this connection, I note that the Hearing Officer's denial of EMP 448.1-V was appropriate based on the testimony that the video was posted before the critical period.  [Tr. at 4561].  In sum, the record fails to show that the Petitioner engaged in objectionable conduct by giving out marijuana as a reward or inducement

---

[43] As with other objections, in connection with Objection 21, the Employer contends the Hearing Officer required it to produce "subjective evidence" that voters were confused about the entity responsible for the light projections.  I disagree.  The Hearing Officer's finding that "there is no record evidence to support that any eligible voter was confused about the identity of the entity projecting the light projections as Petitioner" is entirely supported by the record.  To put it differently, the evidence viewed objectively does not permit a finding that voters who viewed these projections would be perplexed to such an extent that their ability to exercise free choice was diminished.

Amazon.com Services LLC
Case 29-RC-288020

to vote for the Petitioner in the election.  To the extent that the Employer argues in its exceptions that the Hearing Officer analyzed Objection 22 under a "subjective standard," I do not construe the Report to do so.[44]

Accordingly, for these reasons, and those given by the Hearing Officer, I agree with her conclusion to overrule Objection 22.

## CONCLUSION

Based on the above and having carefully reviewed the entire record, the Hearing Officer's Report and recommendations, the exceptions and arguments made by the Employer, and the Petitioner's answering brief, I overrule the objections, and I shall certify the Petitioner as the representative of the appropriate bargaining unit.

## CERTIFICATION OF REPRESENTATIVE

**IT IS HEREBY CERTIFIED** that a majority of the valid ballots have been cast for Amazon Labor Union, and that it is the exclusive representative of all the employees in the following bargaining unit:

INCLUDED: All hourly full-time and regular-part time fulfillment center associates employed at the Employer's JFK8 building located at 546 Gulf Avenue, Staten Island, New York.

EXCLUDED: Truck drivers, seasonal employees, temporary employees, clerical employees, professional employees, managerial employees, engineering employees, maintenance employees, robotics employees, information technology employees, delivery associates, loss prevention employees, on-site medical employees, guards and supervisors as defined by the Act.

## REQUEST FOR REVIEW

Pursuant to Section 102.69(c)(2) of the Board's Rules and Regulations, any party may file with the Board in Washington, DC, a request for review of this decision.  The request for review must conform to the requirements of Sections 102.67(e) and (i)(1) of the Board's Rules and must be received by the Board in Washington by **January 25, 2023.**  If no request for review is filed, the decision is final and shall have the same effect as if issued by the Board.

A request for review may be E-Filed through the Agency's website but may not be filed by facsimile.  To E-File the request for review, go to www.nlrb.gov, select E-File Documents,

---

[44] I correct what appears to be a minor error in the Report at pg. 142, where the Hearing Officer stated that Smalls was "in a vehicle at the bus stop across from JFK8," when the testimony by Mr. Delancey indicates merely that Smalls "was there," without additional details specified [Tr. at 1261].

Amazon.com Services LLC
Case 29-RC-288020

enter the NLRB Case Number, and follow the detailed instructions.  If not E-Filed, the Request for Review should be addressed to the Executive Secretary, National Labor Relations Board, 1015 Half Street SE, Washington, DC 20570-0001.  A party filing a request for review must serve a copy of the request on the other parties and file a copy with the Regional Director.  A certificate of service must be filed with the Board together with the request for review.

Dated at Phoenix, Arizona, this 11th day of January, 2023.

*/s/ Cornele A. Overstreet*

Cornele A. Overstreet, Regional Director
National Labor Relations Board, Region 28