**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DR. BRIMA SYLLA, CONNOR SPENCE, DAVID-DESYRÉE SHERWOOD, KATHLEEN COLE, SULTANA HOSSAIN, TRISTIAN MARTINEZ, JUSTINE MEDINA, BRETT DANIELS, RUEL MOHAN, ROB MCDONALD, PASQUALE CIOFFI, SAM BOWMAN, JOE LUCCHESE, ROBERT PECORARO, YACKISHA NEBOT-LOPEZ, AIDE ESTUDILLO, BRIANA ANDERSON, NAQUASIA ROWLAND, TAMIA CAMPBELL, JENNIFER SCHOFIELD, MICHAEL RIVERA, CHRISTIAN MOHANSINGH, JAMES BARDO, ABDULA DIALLO, IBRAHIM BALDE, FELICIA REESE, IGOR MABIKA, MICHAEL LOPEZ, NICHOLAS FERRUGIARO, ABDULLAH SESAY, KAREEM LINDSAY, LILLIAN LOPEZ, TREMAYNE YOUNGBLOOD, ALI GIGNI, MANNY THOMPSON, RJEEN RODRIGUEZ, SIMONE SUE, LATIFAH X, COMRAD BROWN, JORDAN SILVEIRA, RICHARD COTTO, DEYANIRIS MOTE, JESSICA EDMONDS, KIMBERLY MERISE, BIANCA BUTLER, MICHAEL ANTONIO, MARK JOHNSON, CRAIG AYALA, JOHN PHILIP, LASALLE DELLA ROCA, CHRIS KOKO, CHRISTINA JIMMY, CHARLES JOHNSON, CHRIS PHILIP, AHMED BOBACAR, CATY RIDREGO, DURVIS SAINT LUIS, KEVIN BERTMAN, AALIYA DIAMOND, MOHAMED AWES, ALI DAWUD, FRED FIBIO, ISMAEL MENDOZA, BRIANA PACHECO, JAYSHAWN BAZEMORE, AMANI CLAUDIA, CHRISTOPHER WHRIGHT, EZEKIEO BENSON, ETHAN COPER, JOSEPH DEJESUS, ISOLA OKUNU, ARIANA JOHNSON, MOSTEP STEP, ABAYOMI "BAYOU" ABIMBOLA, | Civil Case No. 23-5261 (AMD)(TAM) |

GABRIEL WEBBS, ALIYYAN AZIZ, EMMANUEL JEAN, ANTOINETTE GRAY, DON ELIJAH, ERIC HARRIS, RONDU JOHN, NICOLE FLORES, MERLDON GUSTAVE, MOHAMED GACK, JOE JOHNSON, and ADRIAN JOHN,

Plaintiffs,

-against-

AMAZON LABOR UNION, and CHRIS SMALLS, as President of the Amazon Labor Union,

Defendants.

**NON-PARTIES RAYMOND ROACH AND AMAZON.COM SERVICES LLC'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS' MOTION FOR AN ALL WRITS ACT ORDER AND IN SUPPORT OF THEIR MOTION TO QUASH AND FOR A PROTECTIVE ORDER**

HUNTON ANDREWS KURTH LLP

Patrick L. Robson
Michael B. Kruse
200 Park Avenue, 52nd Floor
New York, New York 10166
(212) 309-1000
probson@HuntonAK.com
mkruse@HuntonAK.com

**TABLE OF CONTENTS**

**Page**

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 2

RELEVANT BACKGROUND ........ 4

A. The Action ........ 4

B. The Underlying NLRB Proceeding ........ 4

C. Basis for All Writs Motion and Subpoena ........ 5

ARGUMENT ........ 6

A. Legal Standard ........ 6

B. The All Writs Motion should be denied. ........ 8

C. The Subpoena should be quashed and a protective order entered. ........ 19

1. The Subpoena should be quashed because it threatens Amazon's right to NLRB and judicial review of its election objections and the union certification determination. ........ 19

2. The Subpoena should also be quashed because it improperly involves Amazon in the internal affairs of the ALU. ........ 19

3. The Subpoena should be quashed because it subjects Amazon to other undue and unreasonable burdens. ........ 20

CONCLUSION ........ 24

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Andover Data Servs. v. Stat. Tabulating Corp.*,
876 F.2d 1080 (2d Cir. 1989)....12

*In re Apple, Inc.*,
149 F. Supp. 3d 341 (E.D.N.Y. 2016) ....6, 8

*Arrmaz Prod., Inc. & Int'l Chem. Workers Union Council of the United Food & Com. Workers Int'l Union, AFL-CIO, CLC*,
372 NLRB No. 12 (Dec. 6, 2022)....9, 10

*Athalonz, LLC v. Under Armour, Inc.*,
No. 24 MISC. 0047 (DEH), 2024 WL 1555685 (S.D.N.Y. Apr. 10, 2024) ....7

*B & B Trucking, Inc.*,
345 NLRB 1 (2005) ....20

*Blue Angel Films, Ltd. v. First Look Studios, Inc.*,
No. 08 CIV. 6469 DAB JCF, 2011 WL 830624 (S.D.N.Y. Mar. 9, 2011) ....1

*Bob's Big Boy Family Restaurants v. NLRB*,
625 F.2d 850 (9th Cir. 1980) ....9

*Broadcort Cap. Corp. v. Flagler Sec., Inc.*,
149 F.R.D. 626 (D. Colo. 1993) ....1

*Clinton v. Goldsmith*,
526 U.S. 529 (1999)....6, 18

*Coffman v. Queen of Valley Med. Centr.*,
895 F.3d 717 (9th Cir. 2018) ....9, 10, 11

*Dow Chem. Co. v. Allen*,
672 F.2d 1262 (7th Cir. 1982) ....7

*EM Ltd. v. Republic of Argentina*,
695 F. 3d 201 (2d Cir. 2012)....7

*In re Fosamax Prod. Liab. Litig.*,
No. 1:06-MD-1789JFKJCF, 2009 WL 2395899 (S.D.N.Y. Aug. 4, 2009)....7

*Freds Inc. & S. Reg'l Joint Bd., Unite, AFL-CIO, CLC*,
343 NLRB 138 (2004) ....................10

*I.O.O.F. Home of Ohio, Inc.*,
322 NLRB 921 (1997) ....................10

*Ireh v. Nassau Univ. Med. Ctr.*,
No. CV06-09 LDW/AKT, 2008 WL 4283344 (E.D.N.Y. Sept. 17, 2008) ....................23

*King Radio Corp. v. N. L. R. B.*,
398 F.2d 14 (10th Cir. 1968) ....................10

*In Re Konig*,
318 NLRB 901 (1995) ....................10

*Langton v. Town of Chester Libr. Bd.*,
No. 14-CV-9474 (NSR), 2022 WL 2609005 (S.D.N.Y. July 8, 2022)....................6

*Loc. 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York*,
No. 18CV4476LJLJW, 2023 WL 8804257 (S.D.N.Y. Dec. 20, 2023) ....................22

*Miceli v. Mehr*,
No. 3:17-cv-00029 (VAB), 2018 WL 4925689 (D. Conn. Aug. 14, 2018)....................21

*NLRB v. Downtown Bid Services Corp.*,
682 F.3d 109 (D.C. Cir. 2012) ....................9

*In re Nonparty Subpoenas Duces Tecum*,
No. 18-MC-468 (GBD)(KNF), 2019 WL 2122898 (S.D.N.Y. May 15, 2019)....................22

*NP Palace LLC*,
368 NLRB No. 148 (2019) ....................11

*Peabody Coal Co. v. N.L.R.B.*,
725 F.2d 357 (6th Cir. 1984) ....................11

*Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*,
474 U.S. 34 (1985)....................6

*Pro. Transportation, Inc. & Int'l Bhd. of Teamsters Loc. 512*,
362 NLRB 534 (2015) ....................10

*Sackin v. TransPerfect Glob., Inc.*,
278 F. Supp. 3d 739 (S.D.N.Y. 2017)....................23

*Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*,
No. CV126383JFBAKT, 2016 WL 4703656 (E.D.N.Y. Sept. 7, 2016) ....................22

*Solarex Corp. v. Arco Solar, Inc.*,
121 F.R.D. 163 (E.D.N.Y. 1988) ....................................................................................7

*Solow v. Conseco, Inc.*,
No. 06 CIV. 5988 BSJTHK, 2008 WL 190340 (S.D.N.Y. Jan. 18, 2008) ...............................1

*Sundstrand Heat Transfer, Inc.*,
221 NLRB 544 (1975) ...........................................................................................................11

*Sundstrand Heat Transfer, Inc. v. N.L.R.B.*,
538 F.2d 1257 (7th Cir. 1976) ..............................................................................................11

*Technicolor Gov't Servs., Inc. v. NLRB*,
739 F.2d 323 (8th Cir. 1984) ..................................................................................................9

*Terrace Gardens Plaza, Inc. v. NLRB*,
91 F.3d 222 (D.C. Cir. 1996).........................................................................................10, 13

*United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*,
948 F.2d 98 (2d Cir. 1991)...........................................................................................17, 18

*United States v. Kaplan*,
No. 23CR00293JMAJMW, 2023 WL 5718901 (E.D.N.Y. Sept. 5, 2023) ..............................6

*United States v. New York Tel. Co.*,
434 U.S. 159 (1977)..............................................................................................................6, 8

*Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.*,
No. 01 CIV. 7677, 2002 WL 31309232 (S.D.N.Y. Oct. 15, 2002) .......................................22

*Va. Dep't of Corr. v. Jordan*,
921 F.3d 180 (4th Cir. 2019) ........................................................................................7, 21, 23

*Warnke v. CVS Corp.*,
265 F.R.D. 64 (E.D.N.Y. 2010) ..............................................................................................23

*Washington Beef, Inc.*,
322 NLRB 398 (1996) ...........................................................................................................10

*Wehling v. Columbia Broad. Sys.*,
608 F.2d 1084 (5th Cir. 1979) ..............................................................................................12

**Statutes**

28 U.S.C. § 1651 ......................................................................................................................6

29 U.S.C. § 158 ............ 20

29 U.S.C. § 160 ............ 5, 9, 13

N.Y. Lab. Law § 203-d ............ 23

**Other Authorities**

Fed. R. Civ. P. 26 ............ 1, 7, 21

Fed. R. Civ. P. 45 ............ *passim*

Non-parties Raymond Roach and Amazon.com Services LLC (collectively, "Amazon" or "Company") respectfully submit this memorandum of law in Opposition to Plaintiffs' Motion for an All Writs Act Order and in support of Amazon's Motion to Quash and for a Protective Order, pursuant to Federal Rules of Civil Procedure 45(d)(3) and 26(c) and the Court's April 25, 2024 Minute Order. Amazon respectfully requests that the Court: (a) deny Plaintiffs' request for an order under the All Writs Act directing Amazon to compile a list of the names and contact information of certain current and former employees; (b) quash the subpoena served on it by Defendants Amazon Labor Union ("ALU") and Chris Smalls under Fed. R. Civ. P. 45 ("Subpoena")[1]; and (c) enter a protective order against the requested discovery.[2] Should the Court deny Amazon's motion in any part, Amazon asks that the Court certify the Court's order for immediate interlocutory appeal.[3]

---

[1] A copy of the Subpoena is attached as Exhibit A to the Declaration of Patrick L. Robson ("Robson Decl.").

[2] In its April 25, 2024 Minute Order, the Court denied Plaintiffs' motion to the extent it sought an order under the All Writs Act allowing access to Amazon's JFK8 facility. Amazon's opposition is, therefore, limited to Plaintiffs' motion seeking information about JFK8 employees.

[3] While the Subpoena was addressed only to Mr. Roach, Amazon has standing to move to quash because the information sought is Amazon's and (as explained below) requiring Mr. Roach to comply with the Subpoena threatens Amazon's legal rights in a separate proceeding. *E.g.*, *Blue Angel Films, Ltd. v. First Look Studios, Inc.*, No. 08 CIV. 6469 DAB JCF, 2011 WL 830624, at *1 (S.D.N.Y. Mar. 9, 2011) ("[A] party with a real interest in the documents has standing to raise objections to their production.") (quoting *Solow v. Conseco, Inc.*, No. 06 CIV. 5988 BSJTHK, 2008 WL 190340, at *3 (S.D.N.Y. Jan. 18, 2008)); *Broadcort Cap. Corp. v. Flagler Sec., Inc.*, 149 F.R.D. 626, 628 (D. Colo. 1993) ("There is little doubt that a court has the power and duty to examine all appropriate issues dealing with persons affected by the subpoena under [Rule 45].").

## INTRODUCTION

This motion arises out of an acrimonious struggle between two factions of the ALU for control of the Union. On April 1, 2022, a Tally of Ballots reflected that a majority of voters who cast ballots in an NLRB election at Amazon's JFK8 fulfillment center in Staten Island ("JFK8") voted for the ALU. *See* NLRB Case 29-RC-288020. The Company objected to the results of that election, filing a request with the NLRB to review and overturn the result. Amazon's Request for Review has been pending with the NLRB for over a year. In the meantime, Amazon has scrupulously avoided recognizing and/or bargaining with Plaintiffs and Defendants, lest it waive its challenge to the validity of the ALU's purported certification and compromise its pending Objections.

Plaintiffs and Defendants purportedly settled their dispute under a consent order entered in January 2024. On April 2, 2024, Defendants served the Subpoena on Mr. Roach, the general manager of JFK8, requesting that he compile lists of the names and contact information of all current employees and certain former employees who are or would have been "qualified … for membership in the ALU bargaining unit at JFK8" to facilitate an ALU leadership election that Defendants and Plaintiffs agreed to in the consent order. More than two weeks later, Plaintiffs filed a motion under the All Writs Act ("All Writs Motion") seeking the names and addresses of *all* hourly employees who were employed at JFK8 prior to May 24, 2024.

The All Writs Motion should be denied and the Subpoena should be quashed for several reasons. First, the record in this case and in Amazon's challenge to the ALU's certification pending before the NLRB shows that the ALU has been effective in identifying and communicating with its potential members over the past two years. In fact, Plaintiffs admit as much in their own filings in support of their All Writs Motion, representing to the Court that it is "not necessary" for Amazon

to provide any list of employees as a prerequisite to holding officer elections because "the union is independent of the employer and maintains its own membership eligibility criteria and managers its own roster." That alone is compelling evidence that the information sought is neither "necessary or appropriate" in order to hold the election anticipated under the consent order.

Second, the requested relief unreasonably and unnecessarily burdens Amazon—most significantly by threatening Amazon's legal rights. The principal effect, if not intent, of the parties' efforts to obtain information from Amazon is to serve as an improper collateral attack on Amazon's efforts challenge to the ALU's purported certification. Indeed, for more than two years, Amazon has rejected any suggestion that the ALU represents any "bargaining unit" at JFK8 or that a valid union election has been held at JFK8. Accordingly, Amazon has diligently challenged the results of the election at JFK8 and the current certification of the petitioned-for bargaining unit before the NLRB. Granting the All Writs Motion and enforcing the Subpoena threatens to strip Amazon of its right to obtain NLRB and judicial review of the certification of the ALU and Amazon's Objections to the results of the election.

Finally, the Subpoena further subjects Amazon to liability for interfering in the internal affairs of the ALU, and unreasonably burdens Amazon by forcing it to run those risks by providing information that is *irrelevant* to this now-settled case and so is clearly beyond the scope of a Rule 45 subpoena.

Under the demanding requirements of Rule 45 and the All Writs Act, then, neither party is entitled to compel the production of information that they either have or can obtain without jeopardizing Amazon's legal rights in a separate proceeding.

## RELEVANT BACKGROUND

### A. The Action

This action was filed July 10, 2023. It involves a dispute over the control of ALU. Plaintiffs are a group of potential ALU members that are current and former employees at Amazon's JFK8 Fulfillment Center in Staten Island, New York. Plaintiffs allege that the ALU and its president, Chris Smalls, have violated the Labor-Management Reporting and Disclosure Act of 1959 and the ALU's constitution and bylaws. (*See* Complaint (ECF 9) ¶¶ 78–84.) In their Complaint, Plaintiffs seek guidelines for holding an election, including deadlines for nominations, election notices, the election itself, rules about who can vote and the manner in which a vote should be held, and the appointment of a Neutral Election Monitor to conduct the election and rule on disputes which may arise. (*Id.* ¶ 2.)

On October 17, 2023, the parties asked the Court to supervise settlement discussions. (ECF 29 & 30.) The parties reached an agreement in principle on December 8, 2023 to draft a consent order concerning the disputes raised in Plaintiffs' Complaint. On January 5, 2024, the parties settled and submitted the signed consent order to the Court, which was entered by the Court on January 10, 2024 (ECF 46, "Consent Order").

### B. The Underlying NLRB Proceeding

On December 22, 2021, prior to the commencement of this action, ALU petitioned the NLRB for certification as the exclusive bargaining representative of a bargaining unit of thousands of hourly employees working at JFK8. (Robson Decl. Exh. B ("Petition").) The NLRB conducted an election in March 2022 that showed a majority of employees who actually cast valid ballots (a small percentage of the full eligible voter population) cast them in favor of the ALU. (Robson Decl. Exh. C, at 1.) Amazon filed numerous Objections to conduct affecting the results of that

election. Following a hearing, an NLRB Hearing Officer recommended overruling Amazon's Objections on August 2, 2022. On January 11, 2023, an NLRB Regional Director overruled Amazon's exceptions to the Hearing Officer's recommendations and issued a Certification of Representative, purportedly certifying the ALU as the exclusive representative of the petitioned-for JFK8 bargaining unit. (*Id.* at 1–2, 38.)

On February 9, 2023, per its rights under the NLRB's Rules and Regulations, Amazon filed a timely Request for Review of the Regional Director's Decision to the full National Labor Relations Board asking for a new election in light of the significant misconduct that occurred before and during the election. That request remains pending before the Board. If the NLRB overturns the Regional Director and sustains Amazon's Objections, it could invalidate the results of the first election and order a second election. If, on the other hand, the Board overrules Amazon's Objections and orders the Company to bargain with the Union, Amazon would have the right to appeal such an order to the appropriate United States Court of Appeals. *See* 29 U.S.C. § 160(f).

**C. Basis for All Writs Motion and Subpoena**

Plaintiffs' All Writs Motion and Defendants' Subpoena generally seek the production of the names and contact information of current and former Amazon JFK8 employees who were employed at JFK8 since at least April 1, 2022.[4]

The basis for both the All Writs Motion and the Subpoena presumably is that the Consent Order states that "[t]he parties will seek assistance from the Court to access mailing and email lists

[4] The scope of Plaintiffs' and Defendants' requests differ somewhat, but are not material for purposes of Amazon's Opposition to Plaintiffs' Motion or Amazon's Motion to Quash.

of current JFK 8 workers or to use in advertising the mass meeting." (Consent Order ¶ 8.) Amazon is not a party to this proceeding or to the Consent Order and played no role in the negotiation or approval of the Consent Order.

## ARGUMENT

### A.    Legal Standard

Under the All Writs Act, "[t]he Supreme Court and all courts established by Act of Congress may issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). "The All Writs Act is a source of extraordinary relief and is not ordinarily called upon for routine matters." *United States v. Kaplan*, No. 23CR00293JMAJMW, 2023 WL 5718901, at *4 (E.D.N.Y. Sept. 5, 2023) (citing *Pennsylvania Bureau of Correction v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985)). Resort to the All Writs Act is "out of bounds" and "unjustifiable either as 'necessary' or as 'appropriate' in light of alternative remedies." *Clinton v. Goldsmith*, 526 U.S. 529, 537 (1999). If an application for a writ satisfies the statutory requirements, a court "'may' issue the requested writ in the exercise of its discretion—but it is never required to do so." *In re Apple, Inc.*, 149 F. Supp. 3d 341, 351 (E.D.N.Y. 2016).

The All Writs Act cannot be used to impose "unreasonable burdens" on nonparties. *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977). In deciding whether to exercise its discretion to issue a writ to a nonparty, the court should consider: "[1] the closeness of the relationship between the person or entity to whom the proposed writ is directed and the matter over which the court has jurisdiction; [2] the reasonableness of the burden to be imposed on the writ's subject; and [3] the necessity of the requested writ to aid the court's jurisdiction. *In re Apple, Inc.*, 149 F. Supp. 3d at 351; *see also Langton v. Town of Chester Libr. Bd.*, No. 14-CV-9474

(NSR), 2022 WL 2609005, at *3 (S.D.N.Y. July 8, 2022) (writ issued to nonparty is "necessary or appropriate" only if it does not "unreasonabl[y] burden[]" the nonparty and the writ is "'necessary' or 'essential to the fulfillment of the purpose'" for which a previous order has been issued).

All civil discovery must be relevant and "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). "A district court has broad latitude to determine the scope of discovery and to manage the discovery process." *EM Ltd. v. Republic of Argentina*, 695 F. 3d 201, 207 (2d Cir. 2012).

Under Rule 45, the court "*must* quash or modify a subpoena that … subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv) (emphasis added). Similarly, Rule 26(c) authorizes a court, for good cause, to issue a protective order to protect "any person from whom discovery is sought" from undue burden or expense. Fed. R. Civ. P. 26(c).

Nonparty status is "significant in "determining whether compliance [with a discovery demand] would constitute an undue burden." *Solarex Corp. v. Arco Solar, Inc.*, 121 F.R.D. 163, 179 (E.D.N.Y. 1988), *aff'd*, 870 F.2d 642 (Fed. Cir. 1989) (quoting *Dow Chem. Co. v. Allen*, 672 F.2d 1262, 1277 (7th Cir. 1982)). "[W]ithin this Circuit, courts have held nonparty status to be a significant factor in determining whether discovery is unduly burdensome." *Athalonz, LLC v. Under Armour, Inc.*, No. 24 MISC. 0047 (DEH), 2024 WL 1555685, at *3 (S.D.N.Y. Apr. 10, 2024); *In re Fosamax Prod. Liab. Litig.*, No. 1:06-MD-1789JFKJCF, 2009 WL 2395899, at *3 (S.D.N.Y. Aug. 4, 2009) (nonparties are "afforded more sympathy in weighing the burden of discovery" than parties); *accord Va. Dep't of Corr. v. Jordan*, 921 F.3d 180, 189 (4th Cir. 2019) (because "[n]onparties are 'strangers' to the litigation," a "more demanding variant of the proportionality analysis … applies when determining whether, under Rule 45, a subpoena issued against a nonparty 'subjects a person to undue burden' and must be quashed or modified"; "courts

must give the recipient's nonparty status special weight," which leads to "an even more demanding and sensitive inquiry than the one governing discovery generally") (citations omitted).

To determine whether a subpoena imposes an undue burden on a nonparty, courts may consider not just the "dollars-and-cents costs" associated with a production, but also nonmonetary burdens, including invasions of "privacy or confidentiality interests" of the recipient of the subpoena "as well as others who might be affected." *Id.* at 189–90.

**B.     The All Writs Motion should be denied.**

The Court has already held in its Minute Order that Plaintiffs have not carried their burden with respect to their request for a writ requiring access to JFK8. The Court should find the same with respect to Plaintiffs' demand for Amazon's current and former employees' contact information, since it is not "necessary or appropriate" in aid of its jurisdiction, nor is it "agreeable to the usages and principles of law."

The All Writs Act empowers courts to issue extraordinary writs "as may be necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued." *United States v. New York Tel.*, 434 U.S. 159, 172 (1977). Here, the Court's "previously issued" order is the Consent Order. In assessing whether it is "necessary or appropriate" to issue an extraordinary writ to Amazon, a non-party to the Consent Order, the Court should consider the *reasonableness* of the burdens to be imposed on Amazon and the *necessity* of the requested order to prevent the frustration of that Consent Order. *In re Apple, Inc.*, 149 F. Supp. 3d at 351.

The All Writs Motion should be denied because requiring Amazon to provide the requested information unreasonably and unnecessarily threatens Amazon's legal right to NLRB and judicial review of its pending election Objections and challenge to the certification of the ALU.

It is well-settled that an order from the NLRB certifying a union as the exclusive bargaining representative is not directly reviewable in federal court. *See* 29 U.S.C. § 160(f). To challenge certification, an employer must instead refuse to recognize a union and then defend its refusal in subsequent proceedings:

> In order to challenge certification of a collective bargaining unit, *an employer must refuse to recognize a union after its certification*. If the union files unfair labor practice charges for refusal to bargain, under § 8(a)(5) of the Act, the employer may then raise the issue of the propriety of the unit as an affirmative defense to the charges. An employer then obtains judicial review of a certification determination via a review of the unfair labor practice charges.

*Technicolor Gov't Servs., Inc. v. NLRB*, 739 F.2d 323, 326–27 (8th Cir. 1984) (emphasis added).[5]

An employer who "who fails to follow this procedural course waives the right to contest certification." Thus,

> in order to challenge the propriety of a certification, an employer must refuse to recognize a union immediately after the collective bargaining unit has been certified and the union has been elected as the representative for the bargaining unit. *Once an employer honors a certification and recognizes a union by entering into negotiations with it, the employer has waived the objection that the certification is invalid.*

*Id.* at 326–27 (emphasis added).

---

[5] *See also Coffman v. Queen of Valley Med. Centr.*, 895 F.3d 717, 727 (9th Cir. 2018) (describing the procedural process for challenging a certification); *NLRB v. Downtown Bid Services Corp.*, 682 F.3d 109, 112 (D.C. Cir. 2012) (noting that a "refusal to bargain sets up judicial review of an election certification that is otherwise insulated from direct review"); *Bob's Big Boy Family Restaurants v. NLRB*, 625 F.2d 850, 851 n.1 (9th Cir. 1980) ("This procedure, known as a technical refusal to bargain, is the accepted method of obtaining appellate review of representation cases."); *Arrmaz Prod., Inc. & Int'l Chem. Workers Union Council of the United Food & Com. Workers Int'l Union, AFL-CIO, CLC*, 372 NLRB No. 12, at *6 (Dec. 6, 2022) ("[T]he only way an employer can obtain judicial review of a certification of representative is by refusing to bargain with a certified union and then presenting its representation-case contentions to a federal court of appeals on a petition for review of the Board's order in the ensuing unfair labor practice case.").

In short, an employer "may negotiate with, *or* challenge the certification of, the Union; *it may not do both at once*." *Terrace Gardens Plaza, Inc. v. NLRB*, 91 F.3d 222, 226 (D.C. Cir. 1996) (emphases added); *see also King Radio Corp. v. N. L. R. B.*, 398 F.2d 14, 20 (10th Cir. 1968) ("When an employer honors a certification and recognizes and begins bargaining with the certified representative, it waives a contention that the election and certification are invalid."); *Coffman*, 895 F.3d at 727 (same).[6]

The NLRB has thus found that an employer waives a certification challenge when the employer voluntarily bargains with a union. *See Pro. Transportation, Inc. & Int'l Bhd. of Teamsters Loc. 512*, 362 NLRB 534, 535 (2015) (holding that the employer waived challenge to union's certification when it held several bargaining sessions with union after certification); *In Re Konig*, 318 NLRB 901, 904 (1995) (holding that the employer's conduct "amounted to a waiver of its right to challenge the [union's] certification," because after certification the employer did not contest the certification's validity "and proceeded instead, just 1 month later, to recognize the [u]nion by engaging in contract negotiations with it").

The NLRB has consistently viewed requests like that of the ALU for information from Amazon as "a request for recognition and bargaining." *Washington Beef, Inc.*, 322 NLRB 398,

---

[6] *See also Arrmaz Prod., Inc.*, 372 NLRB No. 12, at *6 ("An employer waives its right to challenge a union's certification in the courts of appeals if it recognizes and bargains with the union."); *Freds Inc. & S. Reg'l Joint Bd., Unite, AFL-CIO, CLC*, 343 NLRB 138, 138 (2004) ("[A]n employer must either bargain unconditionally, or, if it wants to contest the union's right to represent the employees, refuse to bargain and defend itself in an unfair labor practice proceeding."); *I.O.O.F. Home of Ohio, Inc.*, 322 NLRB 921, 923 n.6 (1997) ("[T]he courts have held that where, as here, "an employer honors a certification and recognizes and begins bargaining with the certified representative, it waives a contention that the election and certification are invalid," and therefore the employer in these circumstances cannot get judicial review of the underlying representation proceedings when the Board seeks enforcement of its bargaining order.").

400 n.1 (1996). It has, therefore, treated the provision of information in response to such requests as tantamount to bargaining that waives any right to challenge certification. *NP Palace LLC*, 368 NLRB No. 148, at *7 (2019); *see also Coffman*, 895 F.3d at 727 (finding that the employer likely recognized the union by, among other things, providing the union with relevant information); *Sundstrand Heat Transfer, Inc.*, 221 NLRB 544, 547 (1975), *set aside in part on other grounds by Sundstrand Heat Transfer, Inc. v. N.L.R.B.*, 538 F.2d 1257 (7th Cir. 1976) (noting the employer did not provide information in response to a union's request "presumably because the Union had not yet been certified and the Respondent did not wish to waive its pending objection to that certification").

Amazon has scrupulously avoided any suggestion that it has recognized the ALU in order to protect its right to have its day in federal court if the NLRB denies its Request for Review. If Amazon provides the requested information, however, it risks being found to have recognized the ALU, and so having waived its right to challenge certification in court. *E.g.*, *Peabody Coal Co. v. N.L.R.B.*, 725 F.2d 357, 365 (6th Cir. 1984) (stating that even "limited recognition" of a union prior to the disposition of the certification proceedings "may be taken as a waiver of objections to union representation"); *Coffman*, 895 F.3d at 727 (holding that the interactions between the employer and union constituted voluntary recognition of the bargaining unit that waived the employer's objection to certification).

Here, there is no justification for requiring Amazon to potentially forfeit its right to challenge certification by compelling it to provide the requested information. As the Sixth Circuit held in *Peabody Coal Co.*, "[t]here is no legal basis" to force an employer "engaged in a certification battle" to choose between opposing certification and complying with other legal obligations. 725 F.2d at 365.

More generally, courts have held that a party's discovery obligations should not be used to prejudice that party's rights in other proceedings. For example, in *Andover Data Servs. v. Stat. Tabulating Corp.*, 876 F.2d 1080 (2d Cir. 1989), the Second Circuit held that a non-consenting defendant in a civil case could not be forced to answer potentially incriminating questions through discovery when he potentially faced a criminal investigation. Recognizing that the disclosures in the civil case might waive the defendant's Fifth Amendment rights in a future criminal case, the district court ordered the defendant to testify in the civil case subject to a protective order, in an attempt to "foreclos[e] the possibility of its future use in a criminal proceeding" and so "remov[e] the need for the bar against compelled testimony in the first instance." *Id.* at 1083. The defendant still refused to testify, and he was held in contempt. *Id.* at 1081–82. The Second Circuit reversed and directed the district court to vacate its order requiring the defendant to testify, stating that because a protective order may be "overturned or modified by another court in a subsequent proceeding," it "provides no guarantee that compelled testimony will not somehow find its way into the government's hands for use in a subsequent criminal prosecution." *Id.* at 1083.

Similarly, in *Wehling v. Columbia Broad. Sys.*, 608 F.2d 1084 (5th Cir. 1979), the Fifth Circuit reversed the district court's denial of the plaintiff's motion for a protective order and dismissal of his civil complaint when complying with his discovery obligations would result in the plaintiff's waiving his Fifth Amendment rights in connection with a criminal investigation. *Id.* at 1089. The Court of Appeals noted that the plaintiff has "a due process right to a judicial determination of his civil action," and that "[t]he Supreme Court has disapproved of procedures which require a party to surrender one constitutional right in order to assert another." *Id.* at 1087–88; *id.* at 1086 ("Even if the [Federal Rules] did not contain specific language exempting privileged information, it is clear that the Fifth Amendment would serve as a shield to any party who feared

that complying with discovery would expose him to a risk of self-incrimination."). It then concluded that "[b]ecause staying discovery would not impose undue hardship on defendant and, therefore, would protect the party exercising a constitutional privilege from unnecessary adverse consequences, we believe the court abused its discretion in denying [the plaintiff's motion]." *Id.*

Amazon has found no authority holding that its compliance with a Court order ordering such compliance cannot be construed by the NLRB as a waiver of Amazon's right to challenge the ALU's purported certification. And, regardless of what this Court decides, the determination of whether Amazon has waived its certification challenge will be decided by the NLRB in the first instance. The NLRB can then press for the adoption of its waiver finding by the Court of Appeals. Indeed, even if Amazon chooses *not* to seek review of such a finding, the NLRB has its own, independent right to seek federal court enforcement of its bargaining orders. *See* 29 U.S.C. § 160(e).

The lack of any precedent precluding the NLRB from finding that Amazon will be waiving its objections to the ALU's election results by providing the information at issue presents an unreasonable risk to Amazon's carefully crafted and consistently held legal position. *See Terrace Gardens Plaza, Inc.*, 91 F.3d at 226 (an "employer must either bargain unconditionally or, if it wants to contest the union's right to represent the employees, refuse to bargain"). Given the significant risk to Amazon's due-process rights posed by the remedy Plaintiffs seek, then, granting the All Writs Motion and ordering Amazon to provide the requested information would be unreasonable, inequitable, and unduly burdensome.

Moreover, while Plaintiffs and Defendants assert that their intentions are benign and that all they want is the ability to hold effective ALU officer elections, the ALU's current President has stated repeatedly that the ALU's singular goal is to get Amazon to the bargaining table, and

that "[t]he only vision [he] and [the ALU's] leadership has [had] since day 1 is getting a contract."[7] The parties have also derided Amazon's decision to seek further review of its Objection challenges, labeling the Company's appeals anti-union and unfounded, and have demanded that the Company drop its Objections and meet the ALU at the negotiating table.[8] Under those circumstances, Amazon can be forgiven for looking with skepticism upon promises by either party that they will

---

[7] Braden Campbell, *Struggling Amazon Union Hopes To Retool As Election Looms*, LAW 360 (April 26, 2024), https://www.law360.com/employment-authority/articles/1829073; *see also* Jules Roscoe, *NLRB Files Complaint Against Amazon for Refusing to Bargain with Union*, VICE.COM (July 12, 2023), https://www.vice.com/en/article/bvjv93/nlrb-files-complaint-against-amazon-for-refusing-to-bargain-with-unionon (quoting Smalls as saying "it's about time," when the NLRB filed its complaint against Amazon for refusal to bargain); Annie McDonough, *'It's a marathon.' Chris Smalls talks Amazon union gameplan after setbacks*, CITY & STATE NEW YORK, (Nov. 30, 2022), https://www.cityandstateny.com/policy/2022/11/its-marathon-chris-smalls-talks-amazon-union-gameplan-after-setbacks/380308/ (quoting Smalls: "[O]ur main focus is JFK8. Making sure that we get Andy Jassy to come to the table, that's why we're here today."); Alex N. Press, *As Amazon Refuses to Bargain, Divisions Have Emerged in the Amazon Labor Union*, JACOBIN.COM (July 15, 2023), https://jacobin.com/2023/07/amazon-labor-union-jfk8-chris-smalls-reform-caucus-democracy (referring to Plaintiffs' lawsuit, Smalls stated: "[i]t's unfortunate that they are doing this, because the only winner is Amazon. We've got to stay focused on our contract fight."); Julia Conley, *Amazon Workers to Protest 'Corporate Law Breaker' CEO Jassy, Demanding End to Union-Busting*, COMMONDREAMS.ORG (Nov. 28, 2022), https://www.commondreams.org/news/2022/11/28/amazon-workers-protest-corporate-law-breaker-ceo-jassy-demanding-end-union-busting (quoting Smalls: "If Jassy comes to New York he should come to bargain a contract with Amazon workers, not bluster or practice union-busting.").

[8] *See*, *e.g.*, 1/13/2023 Email from J. Mirer to K. Larkin (Robson Decl. Exh. E) (responding to request for extension of time to file Request for Review by stating "Given our views on your use of these unfounded objections as a merely a delaying tactic and in light of the limited bases for review we oppose."); 9/2/2022 Email from J. Mirer to K. Larkin *et al.* (Robson Decl. Exh. F) (responding to request for extension of time to file exceptions by stating "We believe your client's objections were not supported when they were filed. They remain not supported. We believe seeking further review is just Amazon's further attempt to punish workers for voting for the Union.").

not treat Amazon's compliance with their respective requests as a waiver of its certification challenges.[9]

The relief Plaintiffs seek is all the more unreasonable in light of the fact that the requested information is *not necessary* for the ALU to hold the internal election anticipated under the Consent Order. Plaintiffs themselves have admitted as much, stating that

> *Amazon has not provided a current list of employees. That's not necessary*, the union is independent of the employer and maintains its own membership eligibility criteria and manages its own roster. So long as we give reasonable notice to JFK8 workers and verify a voter's eligibility for membership, we are able to run a valid election.[10]

The record includes several other admissions by the parties that the requested information from Amazon is not needed to conduct the election anticipated in the Consent Order, particularly through the ALU's savvy use of social media.[11] Moreover, the ALU has demonstrated over the

---

[9] The history of the parties suggests that while they may *now* dismiss the risk that Amazon will waive its rights by providing the requested information, they are likely to take a different position before the NLRB. For example, on April 4, 2024, Plaintiffs' counsel filed charges with the NLRB alleging that Amazon interfered with the referendum vote by "barr[ing] Connor Spence from participating in [that] referendum process." (NLRB Charge Against Employer (Robson Decl. Exh. G).) On April 24, 2024, however, apparently perceiving it to be advantageous to suggest that Amazon had already cooperated with the ALU, Plaintiffs' counsel represented to the Court that Amazon had purportedly "allowed" the ALU to conduct the referendum and that he and the Neutral Monitor had "communicated with" Amazon's attorneys "to set the terms" allowing for the ALU's and Connor Spence's presence at the referendum. (ECF 67, at 2.)

[10] Exhibit G to Declaration of Counsel in Support of Order to Show Cause and Stay (ECF 3-2), at 2 (emphasis added); *see also id.* at 3 ("*Nothing about officer elections involves Amazon* or the NLRB at all, it is entirely an internal union matter.") (emphasis added).

[11] *See*, *e.g.*, Wynnie Chan, *A Worker Perspective with Christian Smalls*, COLLECTIVE ACTION IN TECH, (Apr. 5, 2022), https://collectiveaction.tech/2022/the-time-is-now-worker-perspective-with-christian-smalls-amazon-labor-union/ (quoting Smalls: "In 27 years of existence, I don't think we have ever seen a campaign quite like the one we have. We have a mixture of Gen Z, Gen X organizers that are using social media. We're using things like TikTok. The things that we're using to reach the masses are completely 21st century ….. We're utilizing these tools and utilizing the media and being creative."); Josefa Velasquez, *Meet Christian Smalls and Derrick*

past two years its effectiveness in contacting its potential members for purposes of organizing them. For instance, although it was initially unable to access its own email lists—not because of Amazon, but because of intra-union disputes—the ALU was ultimately able to send emails to JFK8 employees on February 16, 2024 to notify them of the mass membership meeting held later that month.[12]

---

*Palmer, the DIY Duo Behind the Amazon Labor Union's Guerrilla Bid to Make History*, THE CITY, (Mar. 24, 2022), https://www.thecity.nyc/2022/03/24/amazon-workers-staten-island-union-vote/ (reporting that "social media suffuses the organizing campaign," and that "Smalls turned to Twitter when the budding union drive needed a labor lawyer — and found it in Seth Goldstein, who remains the union's pro bono attorney."); Jeffrey Dastin, *Amazon union leader Smalls went from rapper to voice of protest*, REUTERS, (Apr. 1, 2022), https://www.reuters.com/business/retail-consumer/amazon-union-leader-smalls-went-rapper-unlikely-voice-protest-2022-04-01/ (quoting labor professor as saying that while the ALU "ran a campaign that many called chaotic and unprofessional, … they had great media and social media"); Exhibit 2 to Declaration of Michelle Nieves (ECF 18, at 7) (referring to "Email list of JFK8"); Dec. 19, 2023 Letter from Ms. Mirer to Magistrate Judge Merkl (ECF 41), at 1 (referring to ALU's "gmail suite, 'You Tube' channel, 'Instagram[,'] 'X' (formerly 'Twitter'), email marketing platform 'Mailchimp' and Facebook accounts"); *id.* at 1–2 (stating that the ALU's YouTube channel and "gmail suite" has been used "to spread mis-information to the members" and that Plaintiffs have used the ALU's "email marketing platform" to contact potential members); Dec. 18, 2023 Email from Ms. Mirer to Mr. Schwartz (ECF 42-1) ("[T]he ALU has its own list of emails that it has created over the years."); Declaration of Jeanne Mirer (ECF 51, "Mirer Decl.") ¶¶ 8–9 (stating that Valentin Nieves has "refuse[d] to return to the Union the passwords needed to the Union to continue its work, send emails, use its social media platforms, and the like to communicate with members," and so has "has suppressed the Union's ability to communicate with its members").

[12] Mirer Decl. ¶ 21. *See also* Robson Decl. Exh. H (compiling sample social-media posts: ALU Democratic Reform Caucus (@ReformALU), Twitter (April 3, 2024), https://twitter.com/ReformALU/status/177552517742460963 (reporting ALU Democratic Reform Caucus hosted a breakfast for JFK8 workers in the main break room at the beginning of Ramadan); Christian Smalls (@shut_downamazon), Twitter (Feb. 20, 2024), https://x.com/Shut_downAmazon/status/1759977467031261557 (Smalls posting the date and details for the ALU's mass membership meetings on February 24 and 25, 2024, at the Hilton Hotel Staten Island); ALU Democratic Reform Caucus (@ReformALU), Twitter (Dec. 18, 2023), https://twitter.com/ReformALU/status/1736862221060411621 (ALU Democratic Reform Caucus posting that the ALU would be leading a walkout on December 20 in protest of working conditions); ALU Democratic Reform Caucus (reform_alu) Instagram (Oct. 6, 2023), https://www.instagram.com/p/CyFUOBXAKRB/?img_index=1 (ALU Democratic Reform

Nothing in Plaintiffs' memorandum in support of its motion establishes, as required under the All Writs Act, that their requested order is reasonable and necessary. Certainly the only authority Plaintiffs rely on, *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 948 F.2d 98 (2d Cir. 1991), *cert. granted, judgment vacated sub nom. Yellow Freight Sys., Inc. v. United States*, 506 U.S. 802 (1992), does not do that. To the contrary, that case supports *Amazon*'s position, insofar as the Second Circuit vacated the district court's order because it did not "adequately consider the availability of alternate means by which the [union] might communicate with employees of Yellow Freight who are members of the [union]." *Id.* at 99–100.

*Int'l Bhd. of Teamsters* involved a consent decree entered in the course of litigation brought by the United States to hold free and open elections in order to rid the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America, AFL–CIO ("IBT") of organized crime. The district court held that, while an employer, Yellow Freight, was not a party to the consent decree, it was subject to an order issued under the All Writs Act that it allow union organizers access to its property. The district court then affirmed a determination by the independent administrator (who was appointed pursuant to the consent decree) giving nonemployee union members access to Yellow Freight's premises to campaign for office. *Id.* at 104, 108.

---

Caucus posting that it would be providing free food each month at the JFK8 bus stop from 4-6 pm to all JFK8 workers and would be "handing out close to 200 brand new blankets that are … brand new, from Saks and are super soft and comfortable"); Christian Smalls (@shut_downamazon), Twitter (July 28, 2023), https://twitter.com/Shut_downAmazon/status/1684977611150438400 (Smalls posting a video of an ALU-sponsored barbeque outside the JFK8 facility at the bus stop).)

*Int'l Bhd. of Teamsters* offers no support for Plaintiffs' All Writs Motion. Plaintiffs highlight the fact that the court there agreed that a consent decree can, as a general matter, be enforced against a nonparty under the All Writs Act. But Plaintiffs fail to mention that the court there *vacated* the district court's order requiring the employer to grant access to nonemployee union members. Specifically, it found that the union had failed to meet its burden of showing that "alternative means of communication were unreasonable," holding that "[t]he problem with the determination on appeal here is that virtually no consideration was given to alternative ways of communicating with the … employees of Yellow Freight away from the jobsite." *Id.* at 107.

Plaintiffs' own motion suffers the same defect, inasmuch as there are feasible, and clearly less burdensome, alternatives to the relief they seek. Indeed, not only has the ALU already shown that it is capable of communicating with current and former JFK8 employees *without* information from Amazon, but Plaintiffs themselves have expressly admitted that that information is "not necessary" to hold an election. (*See* ECF 3-2, at 2.) There is, therefore, no justification for invoking an "extraordinary" remedy like the All Writs Act when the requested relief not only risks waiver of Amazon's right to challenge ALU's certification in court, but is *unnecessary*. *Clinton*, 526 U.S. at 537 (All Writs Act is "out of bounds" and "unjustifiable either as 'necessary' or as 'appropriate' in light of alternative remedies").

Amazon has the right to challenge ALU's certification in court, and there is no legal basis for Plaintiffs to force it to risk waiving that right by providing information that Plaintiffs themselves admit is not necessary. Accordingly, Plaintiffs' All Writs Motion should be denied.

**C. The Subpoena should be quashed and a protective order entered.**

**1. The Subpoena should be quashed because it threatens Amazon's right to NLRB and judicial review of its election objections and the union certification determination.**

For the reasons given above, requiring Amazon to provide the requested information unreasonably—and entirely unnecessarily—threatens Amazon's legal right to NLRB and judicial review of its pending election Objections and challenge to the certification of the ALU. While Defendants' request is dressed as a Rule 45 subpoena, it is nothing more than a traditional information request that a union in a validly established bargaining relationship (which remains an open question here) would send an employer during collective bargaining.

There is no legal basis to require Amazon to risk waiving its rights to provide the ALU with information that is not needed to carry out the internal election anticipated under the Consent Order. The Subpoena should, therefore, be quashed and a protective order entered.

**2. The Subpoena should also be quashed because it improperly involves Amazon in the internal affairs of the ALU.**

The Subpoena is also unreasonable in that it requires Amazon to compile not just a list of current and former employees, but to identify those who are eligible for membership in the ALU, as defined in the ALU's Petition. But the question of who is eligible to vote in the ALU's election is an internal matter—and one of considerable internal debate. At one point, the ALU's Constitution defined "members entitled to vote" in ALU officer elections as being limited to employees covered by a collective bargaining agreement between the ALU and Amazon—essentially, no one. (*See* ECF 1-5, at Art. 2.1; 6.1.) A later version expanded the definition of a member to include "all workers in every [Amazon] job category … whose circumstances have ever been substantially connected" to Amazon's Staten Island "business practices." (*See* ECF 1-6,

at Art. 2.1.) The ALU then narrowed the definition of a member to "all workers in every [Amazon] job category" ***at JFK8***. (*See* ECF 1-7, at Art. 2.1.) In other words, the question of who is eligible to vote has been a moving target and one that has nothing to do with Amazon. Thus, what the Parties are really asking Amazon to produce here is not a list of "bargaining unit" employees, but rather a list of prospective ALU members. And who is on that list may change depending on which version of the ALU's Constitution is valid.

By requiring Amazon in effect to determine which current and former employees are eligible for hypothetical membership in the ALU, the request subjects Amazon to potential liability for interfering in the ALU's internal administration. *See* 29 U.S.C. § 158(a)(2) ("It shall be an unfair labor practice for an employer … (2) to dominate or interfere with the formation or administration of any labor organization or contribute financial or other support to it…."); *see also B & B Trucking, Inc.*, 345 NLRB 1, 5 (2005) (affirming ALJ's order that an employer violated Section 8(a)(1) and holding that employer's "insertion of itself into the internal affairs of the Union violates a basic tenet of the collective-bargaining system").

Forcing Amazon to risk this potential liability, particularly given the ALU's demonstrated and admitted current ability to communicate with its potential members, whomever those may be (*see supra*, nn.10–11 & associated text), is unnecessary, unreasonable, and unduly burdensome, and so justifies quashing the Subpoena and entering a protective order.

**3. The Subpoena should be quashed because it subjects Amazon to other undue and unreasonable burdens.**

Finally, the Subpoena should be quashed because it subjects Amazon and other affected individuals to other burdens that are disproportionate to the needs of this case.

As stated in its Objections to the Subpoena (Robson Decl. Exh. D), the information Defendants seek is irrelevant to any of the claims and defenses of the parties in this case. Fed. R. Civ. P. 26(b)(1) ("Parties may obtain discovery regarding any nonprivileged matter that is relevant to *any party's claim or defense* and proportional to the needs of the case.") (emphasis added); *see also* Fed. R. Civ. P. Advisory Comm. Note to 2000 Amendments ("The rule change signals to the court that it has the authority to confine discovery *to the claims and defenses asserted in the pleadings*, and signals to the parties that they have no entitlement to discovery to develop new claims or defenses that are not already identified in the pleadings.") (emphasis added). The parties in this case resolved their disputes by entering into the Consent Order. The information Defendants now seek thus can have no bearing on those now-resolved disputes and so is irrelevant.

Because the information sought is irrelevant to any claims or defenses in this case, *any* burden for Amazon will be disproportionate to the needs of the case—particularly given the "more demanding variant of the proportionality analysis" that must be applied under Rule 45. *Jordan*, 921 F.3d at 189; *Miceli v. Mehr*, No. 3:17-cv-00029 (VAB), 2018 WL 4925689, at *5 (D. Conn. Aug. 14, 2018) (granting motion to quash subpoena where "the discovery [requesting party] seeks is insufficiently related to any of his claims or defenses …").

Requiring compliance with the Subpoena will impose burdens on Amazon that, when weighed against the irrelevance of the information sought, cannot be justified. For example, on its face the Subpoena requires Amazon to compile lists including individuals who it has determined would be covered by the petitioned-for bargaining unit "as shown in the petition for the election at 29-RC-288020." Amazon should not be compelled under Rule 45 to perform the research and make the determinations required to compile such lists. Fed. R. Civ. P. 45(a)(1)(A)(iii) (requiring subpoena to command recipient to "attend and testify; produce designated documents,

electronically stored information, or tangible things in that person's possession, custody, or control; or permit the inspection of premises"); *In re Nonparty Subpoenas Duces Tecum*, No. 18-MC-468 (GBD)(KNF), 2019 WL 2122898, at *5 (S.D.N.Y. May 15, 2019) ("Rule 45 … does not contemplate or authorize commanding the subpoenaed person to create documents, including a 'simple listing.'"); *see also Sky Med. Supply Inc. v. SCS Support Claim Servs., Inc.*, No. CV126383JFBAKT, 2016 WL 4703656, at *11 (E.D.N.Y. Sept. 7, 2016) (parties "are not required to create documents responsive to [another party's] request"); *Universal Acupuncture Pain Servs., P.C. v. State Farm Mut. Auto. Ins. Co.*, No. 01 CIV. 7677, 2002 WL 31309232, at *4 (S.D.N.Y. Oct. 15, 2002) ("[C]ourts may not compel the creation of documents to comply with a discovery demand."). The Subpoena should be quashed on that basis alone.[13]

If the Court were nonetheless to order Amazon to compile the lists requested in the Subpoena, that would require it to review the employment records of every person currently at the JFK8 facility (approximately 8,000 employees) and everyone who has been employed at JFK8 since April 1, 2022 (thousands, if not tens of thousands) to determine for each as to whether his or her job and badge are or were within the petitioned-for bargaining unit at JFK8, and, for the thousands of employees terminated between April 1, 2022 and April 1, 2024, to determine which

---

[13] It is true that "simply searching a database and providing the results therefrom" does not require the creation of a "new document." *Loc. 3621, EMS Officers Union, DC-37, AFSCME, AFL-CIO v. City of New York*, No. 18CV4476LJLJW, 2023 WL 8804257, at *12 (S.D.N.Y. Dec. 20, 2023). However, the Subpoena, if enforced, would require Amazon to do more than simply query a database for the names of current and former employees, but would also require it to determine for those current and former employees whether they are or would have been "qualified … for membership in the Amazon Labor Union's bargaining unit at JFK8 as shown in the petition for the election at 29-RC-288020," and for the former employees whether they "filed Unfair Labor Practice charges and/or asked to appeal their termination."

(if any) filed unfair labor practice charges or "asked to appeal their termination." Whatever the cost of those efforts would be for Amazon, they necessarily outweigh the benefit of providing discovery that is irrelevant to the claims and defenses of the parties in this case, and so constitute an undue burden.

The Subpoena is also unduly burdensome because it seeks the names and contact information of thousands of current and former employees, many of whom have no involvement with the ALU and any litigation. Employees, however, have an important privacy interest in such information, even when it is held by their current or former employer. *E.g.*, *Ireh v. Nassau Univ. Med. Ctr.*, No. CV06-09 LDW/AKT, 2008 WL 4283344, at *3 (E.D.N.Y. Sept. 17, 2008), *aff'd*, 371 F. App'x 180 (2d Cir. 2010) (holding plaintiff "may assert a privacy interest in [his] personnel files, though they are in possession of [his] former employer" and so had standing to quash a Rule 45 subpoena for those files served on his former employer); *Warnke v. CVS Corp.*, 265 F.R.D. 64, 66 (E.D.N.Y. 2010) (granting plaintiff's motion to quash Rule 45 subpoenas to his former employers; plaintiff had standing because of his "legitimate privacy interest in information regarding his subsequent employment"). Indeed, Amazon could be held liable under New York law if it were simply to turn over the requested information and it were to be made public. *E.g.*, *Sackin v. TransPerfect Glob., Inc.*, 278 F. Supp. 3d 739, 749, 752 (S.D.N.Y. 2017) (holding plaintiffs stated a claim against the defendant under N.Y. Lab. Law § 203-d alleged to have "communicat[ed] an employee's personal identifying information to the general public").

In assessing the burdensomeness of a Rule 45 subpoena, the Court should consider the effect of compelling compliance on the privacy interests of not just the recipient of the subpoena, but also those of "others who might be affected." *Jordan*, 921 F.3d at 189–90. By requiring Amazon to turn over the names and contact information of current and former employees who may

have no interest in or connection to the anticipated election, the Subpoena unreasonably and unnecessarily encroaches on the privacy rights and expectations of such current and former employees.

* * * * *

Enforcing the Subpoena subjects Amazon to several different unreasonable and undue burdens, ranging from the simple dollars-and-cents cost of compliance to the potential waiver of its legal rights and liability for an unfair labor practice. Given the irrelevance of the information sought under the Subpoena to this case, the accumulation of burdens imposed by an order enforcing the Subpoena is more than sufficient to justify quashing the Subpoena and granting a protective order against such discovery.

## CONCLUSION

Requiring compliance with Plaintiffs' and Defendants' requests requires Amazon to risk losing a critical legal right—its right to challenge the validity of any purported certified bargaining unit—by providing information that is not needed by either party and is not necessary to implement the Consent Order. Even if the information sought is assumed to be relevant to the claims or defenses of the parties—and it clearly is not—the risk to Amazon if it is ordered to provide information that the ALU does not need to hold an internal officer election is disproportionate to the needs of the case. Neither Rule 45 nor the All Writs Act justify requiring Amazon to comply with such requests.

For the foregoing reasons, this Court should deny the All Writs Motion, quash the Subpoena, and enter a protective order against the discovery sought. Should the Court deny Amazon's motion and orders Amazon to provide any of the information requested by Plaintiffs or

Defendants, Amazon requests that the Court certify the Court's order for immediate interlocutory appeal.

April 30, 2024                    Respectfully submitted,

                                 /s/ *Patrick L. Robson*
                                 Patrick L. Robson
                                 Michael B. Kruse
                                 HUNTON ANDREWS KURTH LLP
                                 200 Park Avenue
                                 New York, NY 10166
                                 212-309-1000 office
                                 212-309-1100 fax
                                 probson@HuntonAK.com
                                 mkruse@HuntonAK.com

                                 *Counsel for Non-Parties Raymond Roach and Amazon.com Services LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on the 30th day of April, 2024, I electronically filed the foregoing document with the United States District Court for the Eastern District of New York through the Court's CM/ECF system, which sent notification of such filing to the attorneys of record.

*/s/ Patrick L. Robson*
Patrick L. Robson