UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

------------------------------------------------------------------------x

DR. BRIMA SYLLA et, al.

                                                                                                                         No.: 23-CV-05261 (AMD) (TAM)

Plaintiffs,

-against-

AMAZON LABOR UNION et. al.

Defendants.

------------------------------------------------------------------------x

**DEFENDANT AMAZON LABOR UNION'S MEMORANDUM OF LAW IN OPPOSITION TO NON-PARTY RAY ROACH AND AMAZON.COM SERVICES LLCS' MOTION TO QUASH AND FOR A PROTECTIVE ORDER**

Defendant Amazon Labor Union (hereafter "ALU" or the "union") provides this memorandum of law in Opposition to Non-Party Ray Roach's and Amazon.com Services LLC (hereafter "Amazon") motion to quash the union's subpoena and for a protective order. Mr. Roach was served with the subpoena at issue in this case as the General Manager of Amazon Fulfillment Center known as JFK8 in Staten Island.

**I.    Defendant ALU's Statement of the Relevant Background:**

On April 1, 2022 the National Labor Relations Board in Region 29, issued a tally of votes of the supervised election conducted at Amazon's JFK8 facility in Staten Island. The tally showed the Amazon Labor Union winning the election by more than 500 votes. Thereafter Amazon has engaged in a campaign to undermine the Union's victory by filing objections to the election and later two failed motions to reopen the record of the objections' hearings. Amazon has appealed every ruling against them, all to delay any order from the NLRB to bargain with the Amazon Labor Union.

In Amazon's motion to quash the subpoena and for a protective order, Amazon was crystal clear that it will refuse to do anything which might show a willingness to recognize or bargain with the union. Amazon filed 25 objections to the election, almost half of which claimed that region 29 of the NLRB acted inappropriately and not neutrally during the election. These objections had no merit. For example, they sought to relitigate issues which have for many years held to be nonlitigable such as whether the ALU had provided enough authorization cards to have a "showing of interest" for the election to begin with, despite this matter being an internal administrative issue within the NLRB. Amazon raised an objection about long lines to vote on the first of five days of voting, which did not suppress the vote but which Amazon claimed showed the NLRB had not properly staffed the election.

After 28 days of hearings on these objections, the Hearing officer issuing a long recommendation to the Regional Director that he overrule all of the objections. Amazon filed hundreds of exceptions to the Hearing Officer's findings requesting review by the Regional Director of Region 28 (where the matter had been transferred in light of the charges aimed at Region 29). The Regional Director of Region 28 on January 11, 2024, after considering the record, the Hearing officer's decision and his own analysis of both the law and facts, found that none of Amazon's objections to the election were valid and certified ALU as the exclusive bargaining agent for the JFK8 workers who fit into the description of the bargaining unit.

Amazon then filed a petition for review denial of to the full National Labor Relations Board (NLRB). The NLRB has not yet ruled. In the meantime, Amazon twice filed petitions to reopen the objections hearing record based on incorrect and untrue statements made by Plaintiffs' counsel and some Plaintiffs in their complaint and a second one based on clips from a documentary about the union's campaign to win the election. Both petitions to reopen were denied on April 16, 2024.

Amazon's request for review of the Regional Director's certification of the Union has been pending for over a year and could issue any day.[1] Nonetheless, Amazon admits in its motion that if the Board upholds the Regional Directors certification of the union, Amazon will still not bargain, but rather will contest the Certification in Court in response to an NLRB order to recognize and negotiate with the Union.

Defendant ALU asserts the instant lawsuit initiated against the Union by the Plaintiffs in July of 2023 is a direct result of the company trying to frustrate the workers and exploiting differences by refusing to bargain with the union. Mr. Smalls was fired from Amazon for leading a "walk out" over safety conditions in the warehouse due to COVID. From that point on, one of Amazon's strategies was to personally vilify one founder of the ALU, interim president Christian Smalls. The leaders of the so-called democratic reform caucus appear to have been influenced by Amazon's vilification of Mr. Smalls and have allowed themselves to be divided from their other union brothers and sisters to seek elected office before a contract is ratified.

Amazon cites cases to support its claims that cooperating, presumably voluntarily, in any way with the Union could be viewed as a waiver of their objections to the union's certification. Amazon claims to have "scrupulously avoided" taking any action which could be deemed as giving up their right to fight union recognition. But as to Court ordered information being provided to the union, Amazon states:

> Amazon has found no authority holding that its compliance with a Court order ordering such compliance cannot be construed by the NLRB as a waiver of Amazon's right to challenge the ALU's purported certification. And, regardless of what this Court decides,

---

[1] It was after this Court ruled on parties' joint request of August 14, 2023 to file further documents under seal, to avoid further attempts by Amazon to claim errors in the Plaintiffs' litigation papers were further bases for seeking to reopen the record on the election objections, October 2023, that the Union, to unite to fight for a contract at JFK8, approached Plaintiffs about settling the case. These talks led to the Consent Order which the parties are seeking to comply with and enforce.

the determination of whether Amazon has waived its certification challenge will be decided by the NLRB in the first instance. The NLRB can then press for the adoption of its waiver finding by the Court of Appeals. Indeed, even if Amazon chooses *not* to seek review of such a finding, the NLRB has its own, independent right to seek federal court enforcement of its bargaining orders. *See* 29 U.S.C. § 160(e). The lack of any precedent precluding the NLRB from finding that Amazon will be waiving its objections to the ALU's election results by providing the information at issue presents an unreasonable risk to Amazon's carefully crafted and consistently held legal position. *See Terrace Gardens Plaza, Inc.*, 91 F.3d at 226 (an "employer must either bargain unconditionally or, if it wants to contest the union's right to represent the employees, refuse to bargain"). (Amazon Br. p. 13)

The fact that there is no authority on point with respect compliance with a Court order rather than being a risk that the company will waive its position, likely means that complying with a Court order does not implicate any of the other authorities cited by Amazon for waiver.

II. **Amazon Mistakes the Law and Facts Regarding the Union's Need for the Subpoenaed Lists**.

A. **The Labor Management Reporting and Disclosure Act Requires the ALU Mail Notice of the Election to All Members.**

Amazon states that the reason Defendant ALU served the subpoena on Mr. Roach is that the Consent Order states that "the parties will seek assistance from the Court to access mailing and email lists of current JFK 8 workers or to use in advertising the mass meeting." (Consent Order ¶ 8.) Not true. 29 USC § 481(e) of the Labor Management Reporting and Disclosure Act states in pertinent part: "**Not less than fifteen days prior to the election notice thereof shall be mailed to each member at his last known home address.**" To mail such a notice, the Union needs to have an up-to-date list of all members or eligible members to be able to send this notification to their last known address.

> Similarly, labor unions have a statutory duty to distribute campaign literature to their membership in response to the reasonable request of any candidate for union office. *Int'l Org. of Masters v. Brown,* 498 U.S. 466, 467-468. [1C]
>
> The language of § 401(c) explicitly instructs the Union and its officers "to comply with *all* reasonable requests of *any candidate* to distribute by mail or otherwise at the candidate's expense campaign literature . . . ." 29 U. S. C. § 481(c) (emphasis added). The

language of the statute plainly requires unions to comply with "all reasonable requests," and just as plainly does *not* require union [****18] [**887] members to comply with "all reasonable rules" when making such requests. Unlike the member's right to run for union office, which is created by § 401(e) and made expressly subject to the "reasonable qualifications uniformly imposed" by the Union, and unlike the member's speech and voting rights, which are governed by sections of the LMRDA such as [*476] §§ 101(a)(1) and 101(a)(2), 29 U. S. C. §§ 411(a)(1) and 411(a) (2), and are made "subject to reasonable rules" in the union constitution, the [***1003] § 401(c) right is unqualified. Moreover, unlike other rights created by Title IV that are judicially enforceable only in actions brought by the Secretary of Labor, the § 401(c) right is directly enforceable in an action brought by the individual union member. Thus, as the language of the statute suggests, Congress gave this right pertaining to campaign literature a special status that it did not confer upon other rights it granted to union members. *Int'l Org. of Masters v. Brown,* 498 U.S. 466, 475-476

If the union is able to obtain an up-to-date lists of members and contact information the leadership is dutybound by statute to allow any candidates to have access to mail campaign literature to the members.

### B. ALU's Current List is Woefully Out of Date.

Amazon points to references in the record in which Plaintiffs' counsel claimed an up-to-date list was not necessary for the ALU to hold a valid internal election. Amazon cites mainly to statements made by Plaintiffs' counsel at the outset of this case who sought an order to show cause why an immediate election should not be ordered. Plaintiffs' counsel is quoted as saying the subpoenaed information "is *not necessary* for the ALU to hold the internal election anticipated under the Consent Order. Amazon also states "Plaintiffs themselves have admitted as much, stating that *Amazon has not provided a current list of employees. That's not necessary*, the union is independent of the employer and maintains its own membership eligibility criteria and manages its own roster. So long as we give reasonable notice to JFK8 workers and verify a voter's eligibility for membership, we are able to run a valid election."

Statements of Plaintiffs' counsel which are factually and/or legally incorrect cannot be relied on to show that the lists subpoenaed are not required so that the union can mail to everyone

5

a notice of the election. Amazon also made reference to some other documents in the record where the union's counsel regarding the lists the Union does have. Nothing quoted from the record establishes that the Union has an up-to-date list of members and contact information. The Union attaches as Exhibit 1 the Declaration of Claudia Ashterman, the ALU's Recording Secretary. In this declaration Ms. Ashterman describes her work with respect to the union's membership records and maintaining the various lists the union has. Ms. Ashterman states at paragraph 19 as follows:

> "At this point I would estimate that the lists we have put together ourselves and the out-of-date excelsior list represent only about 40% of the current workforce. To give notice to the full workforce that is eligible to vote we need an up-to- date list from which we can mail notice of the election or use for campaigning purposes. "

It is necessary for the Union to have the full up to date list as well as a list of those who were terminated since the 2022 election to determine which terminated employees are eligible to vote.

### III. Providing the Requested Information is Not Burdensome to Amazon

Amazon claims it is burdensome for the Company to compile the information subpoenaed, and claims that is especially true when the information is not relevant to the case. Amazon has failed to understand that to be a legally valid election the union needs to have the lists from which all members can get mailed to them the notice of the election. Amazon has its employee data computerized and communicates with its workers as to their weekly pay. Amazon workers are required to download the A to Z App to their phones and to use it to get messages regarding their schedules and other information. Messages from management to workers are emailed or texted to the workers through their A to Z apps. It is very likely Amazon could generate the lists the Union has subpoenaed by aggregating the various fields of data which the Union has subpoenaed and merging them into the list

### Conclusion:

The Union requests the Court deny Amazon's motion to quash and for a protective order.

Respectfully submitted,

/s/

Jeanne Mirer
Julien, Mirer, Singla & Goldstein PLLC
1 Whitehall Street, 16th Floor
New York, New York 10004
jmirer@workingpeopleslaw.com
(212) 231-2235