UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
---------------------------------------------------------------- X
                                                                  :
**DR. BRIMA SYLLA**, *et al.*,                                    :
                                                                  :
                                        Plaintiffs,               :
                                                                  :   **MEMORANDUM DECISION AND**
                      – against –                                 :   **ORDER**
                                                                  :   23-CV-05261 (AMD) (TAM)
                                                                  :
**AMAZON LABOR UNION**, *et al.*,                                 :
                                                                  :
                                        Defendants.               :
                                                                  :
---------------------------------------------------------------- X

**ANN M. DONNELLY**, United States District Judge:

This case arises out of a feud between rival factions of the Amazon Labor Union.  The

plaintiffs, a group of dissidents within the union, filed suit against the union and its president,

Chris Smalls, alleging that they violated the Labor Management Relations Act by postponing a

union leadership election.  After protracted settlement negotiations, the parties agreed in early

January 2024 to resolve their dispute via a Consent Order, which outlined a process for union

members to vote on whether and when to hold a leadership election.  The Court entered the order

on January 10, 2024.

Before the Court are four *pro se* motions to intervene, filed more than a month after the

Court entered the Consent Order, by one former and three current members of the union.  For the

reasons explained below, the motions to intervene are denied.

## BACKGROUND

On January 11, 2023, the National Labor Relations Board ("NLRB") certified the

Amazon Labor Union ("ALU"), which represents all hourly full-time and part-time

employees — "around 8000 non-managerial [] employees" — at the Amazon JFK8 fulfillment

center located at 546 Gulf Avenue, Staten Island, New York.  (*See* ECF No. 1 ¶ 3; ECF No. 71-4.)  Amazon's appeal to the certification is pending before the NLRB.[1]

## I.      Procedural History

On July 10, 2023, a group of 41 plaintiffs filed suit against the ALU and its president Chris Smalls.  (ECF No. 1.)  The plaintiffs, who call themselves a "reform caucus," include longtime ALU organizers and some "members of the initial Executive Board created at the time that the ALU was founded."  (*Id.* ¶ 3.)

The plaintiffs alleged that the union and its president violated the Labor Management Relations Act ("LMRA") by "refus[ing] to hold officer elections which should have been scheduled no later than March 2023."  (*Id.* ¶ 1.)  An earlier version of the ALU's constitution required a leadership election within 60 days of NLRB certification.  (*See id.* ¶ 37.)  But in December 2022, one month before the NLRB certified the ALU, the union's leadership presented a new constitution to its members.  (*See id.* ¶ 63.)  The new constitution changed the timing for a leadership election, scheduling it three months after the ALU ratifies a bargaining agreement with Amazon — "a date which could be years into the future," if at all.  (*See id.*)  The plaintiffs requested that the Court order the defendants to schedule a leadership election no later than August 30, 2023, and appoint a neutral monitor to oversee that election.  (*See id.* at 19–20 (Prayer for Relief).)

In October 2023, the parties sought to resolve the case without further litigation.  (*See* ECF Nos. 29, 30.)  Magistrate Judge Taryn Merkl oversaw protracted settlement conferences,

---

[1] On November 18, 2022, before the NLRB certified the ALU, Judge Diane Gujarati ordered Amazon to cease and desist firing employees at JFK8 who engaged in protected organizing activity.  *See King v. Amazon.com Servs. LLC*, No. 22-CV-01479, 2022 WL 17083273, at *2 (E.D.N.Y. Nov. 18, 2022).  Judge Gujarati declined to order Amazon to reinstate a former employee, Gerald Bryson, who was fired for protesting the company's lack of safety protocols.  Mr. Bryson is not a party to this lawsuit.  Amazon's appeal of Judge Gujarati's order is pending before the Second Circuit.

culminating in the parties' agreement to a Consent Order, which this Court ordered on January

10, 2024.  (ECF Nos. 45, 46.)

       In the Consent Order, the parties "committed to work together to achieve their common

end of improving working conditions at Amazon by, inter alia, concluding a collective

bargaining agreement at JFK8 and at the same time giving the members of the union a say in

whether to hold various elections."  (ECF No. 46 ¶ 2.)  To that end, the parties agreed to hold a

mass meeting of the members on February 24 or 25, 2024, and to advise members of the meeting

"by all possible means to ensure wide participation."  (*Id.* ¶¶ 6, 7.)  The Consent Order specified

that the purposes of the mass meeting were to (1) update the union members regarding "ongoing

activities of the union and progress toward bargaining a contract," (2) "to discuss whether to hold

elections for new officers in the few months following the meeting," and (3) "to discuss whether

to elect a constitution committee to propose updating and amending the Union's constitution."

(*Id.* ¶ 9.)

       The Order further provided that after the mass meeting, the members would vote from

February 27, 2024 to March 2, 2024 on "two propositions" addressing whether and when to hold

officer elections or convene a constitutional committee.  (*Id.* ¶¶ 11, 16.)  The "mass meeting and

the voting [would] be overseen by the neutral monitor who [would] be selected by the parties,"

and the parties would "work to decide the logistical details for the meeting and the voting

process on the two propositions."  (*Id.* ¶¶ 15, 16.)  "Any disagreements [would] be resolved by

the neutral monitor."  (*Id.* ¶ 16.)  The Consent Order also included specific directives about the

timing of the anticipated elections and nominating procedures for officer candidates, with

disputes to be resolved by the neutral monitor.  (*Id.* ¶¶ 19, 22.)

On January 24, 2024, the parties notified the Court that they had selected attorney

Richard Levy, the "former General Counsel of Health Care Workers Union Local 1199," to serve

as the neutral monitor to oversee implementation of the Consent Order.  (ECF No. 47, 56.)

## II.    The Intervention Motions

### a.    Michelle Valentin-Nieves' Motion

On February 22, 2024, over a month after the Court entered the Consent Order and the

parties began its implementation, Michelle Valentin-Nieves filed a *pro se* motion to intervene in

this action as "Vice President of the Amazon Labor Union."  (ECF No. 49.)  In a letter to the

Court attached to her motion, Valentin-Nieves argues that she has "been systematically excluded

from critical discussions and decisions . . . in relation to [this lawsuit]," including at least one

settlement conference in this case.  (ECF No. 49-1 at 1.)  She also argues the Consent Order is

inconsistent with the "constitution and bylaws of the ALU," and requests "an emergency

injunction" from this Court "to halt these unconstitutional actions."  (*Id.* at 1–2.)

### b.    Chermo Toure's Motion

On March 18, 2024, Chermo Toure,[2] an employee at JFK8 and a member of the ALU,[3]

filed a *pro se* motion to intervene in this action.  (ECF No. 53.)  In his filing, Toure criticizes

Smalls' actions as president of the ALU.  (*Id.*)

### c.    Ronald Boone, Jr.'s Motion

That same day, Ronald Boone, Jr., "a current employee at [] JFK8" and a "due[s-]paying

member [of the ALU and] a Chairman and a member of the disbanded Executive [Board]," also

---

[2] Toure refers to himself in the filing as "Chermo Toure," but signed as "Trumo Toure," the name he also used in the return address.  (ECF No. 53.)

[3] Toure states he is "an Amazon JFK 8 employee, an [ALU] Disbanded executive Boards Member also Director of Grievances and compliances at ALU."  (*Id.* at 1.)  The Court interprets this statement to mean that Toure formerly held leadership positions within the ALU.

filed a *pro se* motion to intervene.  (ECF No. 55.)  Boone argues that the Consent Order "was made without the consent of the officers being able to review the document before signing," a "violation of the [ALU] constitution which states there will be no elections until after a contract." (*Id.* at 1–2.)  Boone also makes recommendations for voting procedures, amendments to the ALU constitution, and the "restoration of officers that were let go unlawfully by Interim President Christian Smalls."  (*Id.* at 3.)

> ### d.    Nicole Druda's Motion

On March 20, 2024, Nicole Druda, "a former member of [the ALU] Disbanded Executive Board" and a "former dues-paying member of the union," filed a *pro se* motion to intervene. (ECF No. 54.)  In her filing, Druda criticizes actions taken by ALU leadership and asks the Court to "investigate these concerns promptly."  (*Id.* at 3.)  Druda's filing does not mention the Consent Order.

## III.   The Oppositions

> ### a.    The Plaintiffs' Oppositions

The plaintiffs oppose the motions to intervene, arguing that "[t]he complaints that all four individuals write about generally involve their critique of Chris Smalls' stewardship of the union," but "[t]hat is not a reason to become a party to a lawsuit which was largely settled via a Consent Order."  (ECF No. 56; *see also* ECF No. 52.)

The plaintiffs also updated the Court on two developments in the Consent Order's implementation: (1) in a vote that concluded on March 2, 2024, ALU members chose to hold a leadership election in "June or July" of 2024, and (2) the neutral monitor designated May 11, 2024 as the date for a candidate nominations meeting.  (ECF No. 56 at 1–2.)

**b.**       **The Defendants' Shifting Positions**

At first, the defendants — the ALU and its president — opposed Valentin-Nieves'

motion, arguing that there was "no basis" for it and that "it should be summarily denied."  (ECF

No. 50 at 1.)  The defendants explained that Valentin-Nieves "has not been Vice President of the

Amazon Labor Union since October 9, 2023," and that her letter to the Court was filed on

"outdated" ALU stationary listing her as Vice President in the letterhead.  (*Id.*)

On the merits, the defendants argued that Valentin-Nieves' motion was "untimely," and

that she was not entitled to intervention either as of right or on a permissive basis.  (*Id.* at 7–10.)

The defendants also argued that Valentin-Nieves' claims that the parties "were violating . . . the

[ALU] constitution in the implementation of the order . . . [were] incorrect."  (*Id.* at 2.)

However, the defendants backtracked in their "opposition" to Toure's, Boone's, and

Druda's motions.  The defendants now argue:

> As much as Defendants would like to oppose these motions to
> intervene, there are statements and arguments made therein that
> lead Defendants to believe that moving forward with enforcing the
> Consent Order, which Defendants negotiated and executed in good
> faith, could place Defendant Union in the position of being sued by
> members like the proposed intervenors, for violating the Union's
> Constitution, and also violating the Labor Management Reporting
> and Disclosure Act[] (LMRDA) by effectively disenfranchising
> thousands of potential voters.  Due to these risks, Defendants
> believe that the current consent order must be withdrawn or re-
> negotiated.

(ECF No. 57 at 2.)  The defendants also briefly discuss the merits of the motions:

> Despite the fact that the intervenors' allegations do not come close
> to articulating a valid basis for intervention under Rule 24(a), . . .
> [i]t is the Defendants' position that certain interests of its members
> are not being protected by the consent order and its operation, in
> fact the consent order has placed Defendants squarely in danger of
> violating Title I of the LMRDA and Defendant Union's existing
> Constitution.

(*Id.* at 4.) The remainder of the defendants' opposition consists of arguments about the Consent Order's incompatibility with the ALU Constitution, including the defendants' proposal "as a next step that the Court call the parties together to see if a resolution can be reached that can protect Defendant Union from being exposed to legal attacks from Plaintiff members who have sought early internal officer elections and those similarly situated to the proposed intervenors who allege that the Consent Order violates Defendant's Constitution." (*Id.* at 9.) The defendants have not moved to vacate the Consent Order.

## LEGAL STANDARD

Requests to intervene may be granted as of right or permissively under Rule 24 of the Federal Rules of Civil Procedure. "In reviewing a motion to intervene, the Court accepts the motion's non-conclusory allegations as true." *Friends of the E. Hampton Airport, Inc. v. Fed. Aviation Admin.*, No. 15-CV-0441, 2016 WL 792411, at *4 (E.D.N.Y. Feb. 29, 2016) (citing *Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 348, 352 (S.D.N.Y. 2009)).

Under Rule 24(a)(2), parties may intervene as of right if they "(1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected adequately by the parties to the action." *New York News, Inc. v. Kheel*, 972 F.2d 482, 485 (2d Cir. 1992).

Permissive intervention is "within the court's broad discretion." *Dorsett v. Cnty. of Nassau*, 289 F.R.D. 54, 70 (E.D.N.Y. 2012). Under Rule 24(b), the court may permit intervention for a party who makes a "timely motion" and "has a claim or defense that shares with the main action a common question of law or fact." "[T]he court must consider whether [permissive] intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3).

**DISCUSSION**

**I.      Intervention As of Right**

The movants are not entitled to intervention as of right.  Under Rule 24(a)(2), parties may

intervene as of right if they "(1) timely file an application, (2) show an interest in the action,

(3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show

that the interest is not protected adequately by the parties to the action."  *Kheel*, 972 F.2d at 485.

**a.      Valentin-Nieves**

Valentin-Nieves argues that the Court should allow her to intervene in this action because

(1) she was "excluded from critical discussions and decisions . . . in relation to [this lawsuit],"

including at least one settlement conference in this case, and (2) the Consent Order is

inconsistent with the "constitutional and bylaws of the ALU."  (ECF No. 49-1 at 1–2.)

As an initial matter, her motion is untimely.  *In re Pandora Media, Inc.*, No. 12-CV-

8035, 2013 WL 6569872, at *5 (S.D.N.Y. Dec. 13, 2013) ("Failure to satisfy *any one* of [the four

intervention as-of-right] requirements is a sufficient ground to deny the application." (quoting

*Farmland Dairies v. Commissioner*, 847 F.2d 1038, 1043 (2d Cir. 1988))).  "Among the most

important factors in a timeliness decision is 'the length of time the applicant knew or should have

known of [her] interest before making the motion.'"  *Catanzano v. Wing*, 103 F.3d 223, 232 (2d

Cir. 1996) (quoting *Farmland Dairies*, 847 F.2d at 1044)).

According to her letter, Valentin-Nieves knew of her "interest" as far back as October

2023, when the settlement discussions in this case began and continued through December 2023.

(ECF No. 49-1 at 1–2; *see Scheduling Order dated Oct. 20, 2023; Minute Entries dated Nov. 2,

2024, Nov. 30, 2024, Dec. 8, 2024, and Dec. 21, 2024.*)  She waited until February 22, 2024 —

after those negotiations concluded and after the Court entered the Consent Order — to file her

motion to intervene in this action.  *See Butler, Fitzgerald & Potter v. Sequa Corp.*, 250 F.3d 171,

182 (2d Cir. 2001) (in determining timeliness of an intervention motion, courts consider the

length of delay in seeking intervention); *United States v. Yonkers Bd. of Educ.*, 801 F.2d 593,

594–96 (2d Cir. 1986) (denying intervention as of right as untimely where the movants had

notice of their interests at least three months before they moved to intervene).

At that point, not only had the Court entered the Order, but its implementation was well

underway.  "Courts are particularly hesitant to allow intervention after the existing parties have

entered into a consent decree . . . ."  *Jones v. Caddo Par. Sch. Bd.*, 204 F.R.D. 97, 100 (W.D. La.

2001).  Indeed, in evaluating a motion to intervene under these circumstances, the timeliness

"factor encompasses the basic fairness notion that intervention should not work a last minute

disruption of painstaking work by the parties and the court."  *Public Citizen v. Liggett Group.,

Inc.*, 858 F.2d 775, 786 (1st Cir. 1988) (internal quotation marks omitted).

The only remaining issue in this lawsuit is the leadership election, scheduled to take place

in June or July 2024.  *Compare Issa v. Newsom*, No. 22-CV-01044, 2020 WL 6580452, at *1

(E.D. Cal. June 23, 2020) (finding intervention motions "timely because they were filed before

any substantive proceedings [had] occurred").  Allowing Valentin-Nieves to intervene at this

point in this case — so she could move to vacate or modify the Consent Order, or, as she states

in her letter, request "an emergency injunction" to "halt" its implementation — would cause

delay and "prejudice existing parties as it would amount to a relitigation of the original entry of a

delicately-crafted consent decree."  (ECF No. 49-1 at 1–2); *Jones*, 204 F.R.D. at 100 (internal

quotation marks omitted); *Public Citizen*, 858 F.2d at 786 (intervention is improper when it is

likely to "disrupt the resolution of the underlying merits").  Delay is not a minimal concern in

this case; indeed, the Consent Order specified July 2024, at the latest, for the leadership election.

(ECF No. 46 ¶ 20.)  Under these "unusual circumstances," Valentin-Nieves' delay in filing her

motion, in which she seeks to undo the Consent Order nearly a third of the way into its envisioned time frame for implementation, is sufficient on its own to deny her motion. *See Butler*, 250 F.3d at 182.

Nor does Valentin-Nieves have an interest in this action that would be impaired if she is not allowed to intervene, because the Court would deny the relief she seeks — modifying or vacating the Consent Order. Modification or vacatur of a consent order "is a remedy not to be lightly awarded." *Juan F. By & Through Lynch v. Weicker*, 37 F.3d 874, 878 (2d Cir. 1994); *see Sierra Club v. Meiburg*, 296 F.3d 1021, 1034 (11th Cir. 2002) ("A party seeking to modify a consent decree has a high hurdle to clear and the wind in its face."). As a threshold matter, a party seeking modification or vacatur of a consent decree must establish a "significant change either in factual conditions or in law." *Rufo v. Inmates of the Suffolk Cnty. Jail*, 502 U.S. 367, 384 (1992).

Valentin-Nieves' concerns about compliance with the constitution and bylaws of the ALU and the democratic processes of the union do not meet this threshold requirement, as they are not "significant change[s] either in factual conditions or in law." *Id.* The parties were well aware of the provisions in the ALU constitution and bylaws and considered them when they negotiated the Consent Order in this case. Unless there were changed circumstances or some other new development since entry of the Consent Order, the Court would deny a motion to modify or vacate the Order. In any event, there is no merit to Valentin-Nieves' claim that the Court must revisit the Order because it is inconsistent with the union constitution. Even if the Consent Order conflicted with the ALU's constitution and bylaws, the Second Circuit has held that the terms of the Consent Order supersede conflicting union bylaws and constitutional provisions. The parties are "bound by the terms of [the consent decree]," and any conflicting

union constitutional provisions or bylaws are "inoperative," "rendered nugatory" during the decree's implementation. *United States v. Int'l Bhd. of Teamsters, Chauffeurs, Warehousemen & Helpers of Am., AFL-CIO*, 931 F.2d 177, 184–85 (2d Cir. 1991).[4]

Accordingly, Valentin-Nieves is not entitled to intervene as of right.

**b.      Boone**

For many of the same reasons that Valentin-Nieves cannot intervene as of right, neither can Boone. His motion to intervene, filed on March 18, 2024, is untimely for the reasons discussed above. Moreover, he has not shown that he has an interest that would be impaired absent intervention. Like Valentin-Nieves, he seeks to intervene in this litigation to challenge the Consent Order's compatibility with the ALU constitution. (ECF No. 55 at 1–2 (arguing that the Consent Order "was made without the consent of the officers being able to review the document before signing" and the ALU constitution "states there will be no elections until after a contract").) Intervention as of right is therefore denied.

---

[4] As noted above, the defendants have expressed concerns about whether the Consent Order is compatible with the ALU constitution, and they suggest that "the current consent order must be withdrawn or re-negotiated." (ECF No. 57 at 2.) The defendants have not moved to vacate or modify the consent order, and their statements in an opposition to a motion to intervene are irrelevant to the motions currently before the Court. Moreover, the defendants cite no legal authority for the proposition that the Consent Order, to which they agreed after extensive settlement negotiations, may simply be rescinded. *See Rufo*, 502 U.S. at 384, 391; *see also In re Heartline Foods, Inc.*, No. 02-CV-51288, 2010 WL 3829461, at *2 (Bankr. D. Conn. Sept. 24, 2010) (observing that it "is well-settled in the Second Circuit that once reached, a settlement agreement constitutes a contract that is binding and conclusive and the parties are bound to the terms of the contract even if a party has a change of heart" (internal quotation marks omitted)); *id.* (finding that a consent order is a binding contract); *Acot v. New York Medical Coll.*, 99 F. App'x 317, 318 (2d Cir. 2004) ("When a party makes a deliberate, strategic choice to settle, she cannot be relieved of such a choice merely because her assessment of the consequences was incorrect." (quoting *United States v. Bank of New York*, 14 F.3d 756, 759 (2d Cir. 1994)).

11

### c.    Toure and Druda

Neither Toure nor Druda have identified any "interest in [this] action" that would be impaired without intervention. *Kheel*, 972 F.2d at 485.  Their motions are largely criticisms of the actions of ALU leadership.  (*See* ECF No. 53; ECF No. 54.)  Allegations of misconduct by ALU leadership are ancillary and have no place in this litigation.  The role of this Court is not to "investigate" or evaluate the merits of any claims regarding any of these individuals.  (*See* ECF No. 54 at 3.)

Toure mentions this litigation only once, saying that he "stop[ped] believing Christian Smalls [] when he made the agreement with the [reform] [c]aucus after saying that he wouldn't." (ECF No. 53 at 2.)  Intervention in this lawsuit is not the proper forum for Toure's concern; the appropriate forum is the forthcoming union election.

Druda explains that she is a "*former* dues-paying member of the union." (ECF No. 54 at 1 (emphasis added).)  Because she is not a member of the ALU, she has no interest in this intra-union dispute, and intervention as of right is improper.

## II.    Permissive Intervention

The Court also denies the movants permissive intervention.  Under Rule 24(b), the court may permit intervention when a party makes a "timely motion" and "has a claim or defense that shares with the main action a common question of law or fact."  A court also "must consider whether [permissive] intervention will unduly delay or prejudice the adjudication of the original parties' rights."  Fed. R. Civ. P. 24(b)(3).

Here, all four motions are untimely.  None of the movants has identified "a claim or defense" shared with the parties in this case.[5]  And, most importantly, as discussed above,

---

[5] Concern about whether the Consent Order is compatible with the terms of the ALU constitution is not a claim or defense shared with the existing parties.  Despite the defendants' irrelevant references to that

12

granting permissive intervention would unduly delay and prejudice the parties.  This case has

"advanced far into the remedial stage" and intervention by any of these movants would disrupt

time-sensitive implementation of a painstakingly negotiated Consent Order.  *Jones*, 204 F.R.D.

at 100.

Accordingly, the movants' motions to intervene are denied in their entirety.[6]

### CONCLUSION

For the reasons discussed, the motions to intervene are denied.  The parties are reminded

that they are bound by the terms of the Consent Order.


**SO ORDERED.**

s/Ann M. Donnelly

_____

ANN M. DONNELLY
United States District Judge


Dated:  Brooklyn, New York
        May 9, 2024

---

concern in their opposition, there is no properly presented claim or defense in this action raising that
issue.

[6] The motions to intervene are also denied because of their procedural deficiencies.  A party seeking to
intervene pursuant to Rule 24 "must state the grounds for intervention and be accompanied by a
pleading that sets out the claim or defense for which intervention is sought."  Fed. R. Civ. P. 24(c).
Failure to do so provides sufficient grounds to deny a motion to intervene.  *See G-I Holdings, Inc. v.
Baron & Budd*, No. 01-CV-0216, 2002 WL 1822929, at *1 (S.D.N.Y. Aug. 7, 2002).  None of the four
motions included a pleading.  Courts may overlook this deficiency if the proposed intervenor's claims or
defenses are "apparent from other filings."  *N. Shore-Long Isl. Jewish Health Sys., Inc. v. MultiPlan,
Inc.*, No. 12-CV-1633, 2015 WL 777248, at *17 (E.D.N.Y. Feb. 13, 2015); *Tachiona ex rel. Tachiona v.
Mugabe*, 186 F. Supp. 2d 383, 393 n.8 (S.D.N.Y. 2002).  The filings do not identify the claim or defense
for which intervention is sought.  Rather, the motions describe internal affairs of the union, not this
litigation or claims or defenses that could be relevant to it.  Accordingly, the intervention motions are
also procedurally inadequate.