UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
--------------------------------------------------------------- X
                                                      :

**DR. BRIMA SYLLA**, *et al.*,

                           Plaintiffs,

              – against –

**AMAZON LABOR UNION**, *et al.*,

                          Defendants.

--------------------------------------------------------------- X

**MEMORANDUM DECISION AND ORDER**

23-CV-05261 (AMD) (TAM)

**ANN M. DONNELLY**, United States District Judge:

       The parties in this case, two factions of the Amazon Labor Union ("ALU"), entered into a Consent Order in which they agreed to a process for the union to hold a leadership election. That election will take place within the next few months — in June or July 2024 — under the oversight of a neutral monitor.

       Before the Court are three related motions arising out of the union's attempts to compel third-party Amazon.com Services LLC ("Amazon") to produce an employee mailing list for the union to use to send its election notices. The plaintiffs move for a court order under the All Writs Act ("AWA") directing Amazon to provide an employee mailing list. Amazon moves for a protective order and to quash the defendants' subpoena for similar information. For the reasons explained below, the Court grants Amazon's motion to quash, denies its motion for a protective order, and grants the plaintiffs' motion for an AWA order.

## BACKGROUND

       On January 11, 2023, the National Labor Relations Board ("NLRB") certified the Amazon Labor Union ("ALU"), which represents all hourly full-time and part-time employees — "around 8000 non-managerial [] employees" — at the Amazon JFK8 fulfillment

center located at 546 Gulf Avenue, Staten Island, New York.  (*See* ECF No. 1 ¶ 3; ECF No. 71-4.)  Amazon's appeal to the certification is pending before the NLRB.[1]

## I.    Procedural History

On July 10, 2023, a group of 41 plaintiffs filed suit against the ALU and its president Chris Smalls.  (ECF No. 1.)  The plaintiffs, who call themselves a "reform caucus," include ALU organizers and some "members of the initial Executive Board created at the time that the ALU was founded."  (*Id.* ¶ 3.)

The plaintiffs alleged that the union and its president violated the Labor Management Relations Act ("LMRA") by "refus[ing] to hold officer elections which should have been scheduled no later than March 2023."  (*Id.* ¶ 1.)  A previous version of the ALU's constitution required a leadership election within 60 days of NLRB certification.  (*See id.* ¶ 37.)  But in December 2022, one month before the NLRB certified the ALU, the union's leadership presented a new constitution to its members.  (*See id.* ¶ 63.)  The new constitution changed the timing for a leadership election, scheduling it three months after the ALU ratifies a bargaining agreement with Amazon — "a date which could be years into the future," if at all.  (*See id.*)  The plaintiffs requested that the Court order the defendants to schedule a leadership election no later than August 30, 2023, and appoint a neutral monitor to oversee that election.  (*See id.* at 19–20 (Prayer for Relief).)

In October 2023, the parties sought to resolve the case without further litigation.  (*See* ECF Nos. 29, 30.)  Magistrate Judge Taryn Merkl oversaw protracted settlement conferences,

---

[1] On November 18, 2022, before the NLRB certified the ALU, Judge Diane Gujarati ordered Amazon to cease and desist firing employees at JFK8 who engaged in protected organizing activity.  *See King v. Amazon.com Servs. LLC*, No. 22-CV-01479, 2022 WL 17083273, at *2 (E.D.N.Y. Nov. 18, 2022).  Judge Gujarati declined to order Amazon to reinstate a former employee, Gerald Bryson, who was fired for protesting the company's lack of safety protocols.  Mr. Bryson is not a party to this lawsuit.  Amazon's appeal of Judge Gujarati's order is pending before the Second Circuit.

culminating in the parties' agreement to a Consent Order, which this Court ordered on January 10, 2024.  (ECF Nos. 45, 46.)

In the Consent Order, the parties "committed to work together to achieve their common end of improving working conditions at Amazon by, inter alia, concluding a collective bargaining agreement at JFK8 and at the same time giving the members of the union a say in whether to hold various elections."  (ECF No. 46 ¶ 2.)  To that end, the parties agreed to hold a mass meeting of the members on February 24 or 25, 2024, and to advise members of the meeting "by all possible means to ensure wide participation."  (*Id.* ¶¶ 6, 7.)  The Consent Order specified that the purposes of the mass meeting were to (1) update the union members regarding "ongoing activities of the union and progress toward bargaining a contract," (2) "to discuss whether to hold elections for new officers in the few months following the meeting," and (3) "to discuss whether to elect a constitution committee to propose updating and amending the Union's constitution." (*Id.* ¶ 9.)

The Order further provided that after the mass meeting, the members would vote from February 27, 2024 to March 2, 2024 on "two propositions" addressing whether and when to hold officer elections or convene a constitutional committee.  (*Id.* ¶¶ 11, 16.)  The "mass meeting and the voting [would] be overseen by the neutral monitor who [would] be selected by the parties," and the parties would "work to decide the logistical details for the meeting and the voting process on the two propositions."  (*Id.* ¶¶ 15, 16.)  "Any disagreements [would] be resolved by the neutral monitor."  (*Id.* ¶ 16.)  The Consent Order also included specific directives about the timing of the anticipated elections and nominating procedures for officer candidates, with disputes to be resolved by the neutral monitor.  (*Id.* ¶¶ 19, 22.)

On January 24, 2024, the parties notified the Court that they had selected attorney Richard Levy, the "former General Counsel of Health Care Workers Union Local 1199," to serve as the Neutral Monitor to oversee implementation of the Consent Order.  (ECF No. 47, 56.)

The plaintiffs notified the Court on April 2, 2024 that ALU members voted on March 2, 2024 to hold a leadership election in "June or July" 2024, and that the Neutral Monitor designated May 11, 2024 as the date for a candidate nominations meeting.  (ECF No. 56.)

## II.    The Plaintiffs' All Writs Act Motion

On April 18, 2024, the plaintiffs filed an "Application Addressed to Amazon.com Services, LLC to Further the Running of an Election in the Amazon Labor Union."  (ECF No. 62.)  The plaintiffs ask the Court to order Amazon

> to provide a third party mailing house[2] with the name and address of all "hourly fulltime and regular part-time fulfillment center associates employed at the Amazon JFK8 building located at 546 Gulf Avenue, Staten Island, New York," . . . on or before May 12, 2024 . . . .

(ECF No. 62-7 at 1.)[3]

According to the plaintiffs, "notice of the election must be mailed to the potentially eligible members at least 15 days before the election" so that there can be "a valid election in a

---

[2] The plaintiffs agree that providing this list to the neutral monitor would accomplish the same purpose.

[3] The plaintiffs also asked the Court to order Amazon to

> allow employees who are running for office in the election which will be occurring in the Amazon Labor Union, who are qualified to run for that office due to their current employment at Amazon, or because they are terminated employees currently challenging their termination through a legal process, including, but not limited to, the National Labor Relations Board,
>> 1. [A]ccess to all areas outside the front entrance of JFK8, so long as access to the doors of JFK8 are not blocked;
>> 2. Access to all employee break rooms within JFK8.

(ECF No. 62-7 at 1–2.)  The Court denied this request on the record at the motion hearing on April 25, 2024.  (*See Minute Entry dated Apr. 25, 2024.*)

private sector union, under the Labor Management Reporting and Disclosure Act." (*Id.* at 4 (citing 29 U.S.C. § 481(e)).) "Under the ALU Constitution, the election can be held 30 days after the nominations meeting, dependent, of course, on the proper LMRDA notice by mail." (*Id.* at 5.) The nominations meeting is scheduled for May 11, 2024. (*Id.* at 4.) The plaintiffs explain that "[i]deally, the election would be scheduled beginning June 11, 2024, and (if Plaintiffs' proposal is adopted) proceeding for five days until June 15, 2024, in front of the JFK8 building." (*Id.* at 5.) To carry this out, they must "send out the Election Notice no later than May 24, 2024." (*Id.*)

"[A]t the direction of the NLRB," Amazon "gave the union" an employee mailing list "back in 2022 (called an *Excelsior* list), but that list is extremely out of date because Amazon has a high turnover at JFK8." (*Id.* at 4.) "The only source of a complete list is Amazon." (*Id.*)

### III.   Hearing

The Court scheduled a hearing "to discuss whether the motion [could] be resolved without further litigation," and directed Amazon to appear. (*Scheduling Order dated Apr. 19, 2024.*) The Court also directed the plaintiffs to serve a copy of the scheduling order and the AWA motion on Amazon. (*Id.*)

In advance of the hearing, counsel for Amazon advised the Court by letter that "on April 2, 2024, non-party Raymond Roach, the general manager of [JFK8], was [] served a Rule 45 subpoena for the production of documents [] by Defendants in [this] Action," asking "Mr. Roach and Amazon to compile lists of the names and contact information of all current employees and certain former employees who are or would have been 'qualified . . . for membership in the [ALU] bargaining unit at JFK8,' presumably in connection with an ALU leadership election that Defendants and Plaintiffs agreed to in the consent order Your Honor entered on January 10,

2024." (ECF No. 64 at 1.) Amazon also explained that it intended to oppose the AWA Motion and file a motion to quash the Rule 45 subpoena.

On April 25, 2024, the Court heard arguments on the AWA motion and the anticipated motion to quash. (*See Minute Entry dated Apr. 25, 2024.*) Amazon informed the Court that it would not voluntarily give the union an employee mailing list and that it would oppose the application for an AWA order, move to quash the Rule 45 subpoena, and move for a protective order.

## IV.   Motion to Quash and Opposition to the All Writs Act Motion

Amazon filed its opposition to the AWA motion along with motions to quash and for a protective order. (ECF No. 71.)

### a.   Opposition to the All Writs Act Motion

In opposing the AWA motion, Amazon maintains that "requiring Amazon to provide the requested information unreasonably and unnecessarily threatens Amazon's legal right to NLRB and judicial review of its pending election Objections and challenge to the certification of the ALU." (ECF No. 71-10 at 15.) Amazon has "scrupulously avoided any suggestion that it has recognized the ALU in order to preserve its own right to have its day in federal court if the NLRB denies its Request for Review." (*Id.* at 18.) "If Amazon provides the requested information, however, it risks being found to have recognized the ALU, and so having waived its right to challenge certification in court." (*Id.*) Amazon argues that even complying with a court order "compelling it to provide the request information" would "present[] an unreasonable risk to Amazon's carefully crafted and consistently held legal position." (*Id.* at 20.) Amazon cites no precedent for its claim that compelled production of a list of employees' names and addresses would amount to a waiver; instead, it argues that the absence of any authority means that the

NLRB could find that "Amazon [waived] its objections to the ALU's election results by providing the information at issue." (*Id.* at 18–20.)

In addition, Amazon contends that "the requested information is not necessary for the ALU to hold the internal election anticipated under the Consent Order." (*Id.* at 22–23 (emphasis omitted).) Amazon cites the plaintiffs' July 7, 2023 letter to the defendants in which the plaintiffs state that the union "manages its own roster," as well as, according to Amazon, "the ALU's savvy use of social media" and email. (*Id.* (quoting ECF No. 3-2 at 2).) Amazon argues that there are "feasible, and clearly less burdensome, alternatives" to an AWA order because "the ALU has already shown that it is capable of communicating with current and former JFK8 employees *without* information from Amazon." (*Id.* at 25.)

### b.    Motion to Quash and Motion for a Protective Order

In its motion to quash, Amazon reiterates its argument that requiring it to provide the requested information would "threaten[] Amazon's legal right to NLRB and judicial review of its pending election Objections and challenge to the certification of the ALU." (*Id.* at 26.)

Amazon also argues that the subpoena is especially "unreasonable in that it requires Amazon to compile not just a list of current and former employees, but to identify those who are eligible for membership in the ALU, as defined in the ALU's Petition" — an "internal matter" of "considerable [] debate" within the ALU. (*Id.*)

Moreover, Amazon argues that the subpoena is improper Rule 26 discovery as it seeks information "irrelevant to any of the claims and defenses of the parties in this case," who have "resolved their disputes by entering into the Consent Order." (*Id.* at 28.) "The information Defendants now seek thus can have no bearing on those now-resolved disputes and so is irrelevant." (*Id.*)

**DISCUSSION**

I.      **Rule 45 Subpoena**

Under Rule 26(b)(1), information is "discoverable" if it is "relevant to any party's claim or defense."  Fed. R. Civ. P. 26(b)(1); *see Sibley v. Choice Hotels Int'l*, No. 14-CV-634, 2015 WL 9413101, at *2 (E.D.N.Y. Dec. 22, 2015).  Federal Rule of Civil Procedure 45 provides that "the court for the district where compliance is required must quash or modify a subpoena" if it "subjects a person to undue burden."  Fed. R. Civ. P. 45(d)(3)(A)(iv).[4]

Neither the plaintiffs nor the defendants have identified any "claim or defense" to which the subpoenaed mailing list could be "relevant."  Fed. R. Civ. P. 26(b)(1); *see Citizens Union of City of New York v. Att'y Gen. of New York*, 269 F. Supp. 3d 124, 138 (S.D.N.Y. 2017) (in determining whether a to quash a subpoena, courts consider the "relevance" of the information sought).  The defendants did not issue the subpoena for the mailing list so that they could obtain information to support one of their claims or defenses — indeed, they issued the subpoena after they resolved the case with the plaintiffs by entering into the Consent Order.  Rather, as the defendants state in their opposition, the defendants subpoenaed the information so that "notice of the election" could be "mailed" as required for "a legally valid election."  (ECF No. 72 at 6.) Accordingly, a Rule 45 subpoena for the mailing list is not appropriate at this stage of the litigation.  Amazon's motion is granted and the subpoena is quashed.

Amazon also moves for a protective order "because the Subpoena seeks discovery that is not 'necessary,' is not relevant to resolve the issues in the litigation, and constitutes an undue burden."  (ECF No. 71 at 2.)  "Under Rule 26(c), the trial court has broad discretion to decide

---

[4] Amazon and Roach are not parties to this case.  "[C]ourts give special weight to the burden on non-parties of producing documents to parties involved in litigation."  *Henry v. Bristol Hosp., Inc.*, No. 13-CV-826, 2020 WL 1158464, at *1 (D. Conn. Mar. 10, 2020) (quotation marks and alteration omitted)).

when a protective order is appropriate and what degree of protection is required." *Duling v. Gristede's Operating Corp.*, 266 F.R.D. 66, 72 (S.D.N.Y. 2010) (cleaned up).  The moving party "bears the burden of demonstrating that there is good cause for the [protective] order," and they "must demonstrate a particular need for protection." *Uto v. Job Site Servs. Inc.*, 269 F.R.D. 209, 211 (E.D.N.Y. 2010) (cleaned up), *objections overruled sub nom. Paulino Uto v. Job Site Servs., Inc.*, No. 10-CV-529, 2010 WL 11632756 (E.D.N.Y. Dec. 14, 2010).  Amazon has not made such a showing, as it has not shown any particular need for protection, and the Court finds that a protective order is not appropriate under these circumstances.  Accordingly, the motion for a protective order is denied.

## II.    AWA Motion

The AWA provides in its entirety:

> The Supreme Court and all courts established by Act of Congress
> may issue all writs necessary or appropriate in aid of their
> respective jurisdictions and agreeable to the usages and principles
> of law.

28 U.S.C. § 1651(a).  "This statute has served since its inclusion, in substance, in the original Judiciary Act as a 'legislatively approved source of procedural instruments designed to achieve the rational ends of law.'" *Harris v. Nelson*, 394 U.S. 286, 300 (1969) (*quoting Price v. Johnston*, 334 U.S. 266, 282 (1948)).  As interpreted by the Supreme Court, the AWA empowers a federal court to issue any writ that may be "necessary or appropriate to effectuate and prevent the frustration of orders it has previously issued." *United States v. New York Tel. Co.*, 434 U.S. 159, 172 (1977).

The power conferred by the AWA binds "persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order" or "Consent Decree." *United States v. Int'l Bhd. of Teamsters, Chauffeurs,*

*Warehousemen & Helpers of Am., AFL-CIO* ("*Teamsters*"), 948 F.2d 98, 102 (2d Cir. 1991)

(quoting *United States v. New York Tel. Co.,* 434 U.S. 159, 174 (1977)), *cert. granted, judgment*

*vacated other grounds sub nom. Yellow Freight Sys., Inc. v. United States*, 506 U.S. 802 (1992).

"[A]n order may issue under the [AWA] to effectuate [a] [Consent] Decree."  *Id.* at 103.

The plaintiffs have shown that an AWA order is necessary to effectuate the Consent

Order.  Consistent with the provisions of the Consent Order, the ALU held a referendum on

whether and when to hold a union leadership election.  (ECF No. 56.)  The union members voted

to hold an election in June or July of this year.  (*Id.*)

The Labor Management Reporting and Disclosure Act ("LMRDA") requires that an

election notice "be mailed to each [union] member at his last known home address" "not less

than fifteen days prior to the election."  29 U.S.C. § 481(e); (ECF No. 73 at 1–2 (the plaintiffs'

opposition); ECF No. 72 at 3–4 (the defendants' opposition).)  To hold a valid union leadership

election, the parties must mail notices to union members, which they can do only if they have a

mailing list with up-to-date contact information.  Indeed, the Consent Order explicitly

contemplated obtaining such a list from Amazon.  (*See* ECF No. 46 ¶ 8.)

The parties agree that Amazon is the only entity that could produce the necessary mailing

list, a point that Amazon does not seriously dispute.  (*See* ECF No. 72 at 5–6; ECF No. 72-1

¶ 19; ECF No. 62-1 ¶ 10; ECF No. 71-10 at 22–23.)  Instead, citing the plaintiffs' statements in a

letter to the defendants that the union "manages its own roster," and pointing to the ALU's

"savvy use of social media" and email, Amazon argues that compelling it to produce an up-to-

date list is "not necessary for the ALU to hold the internal election anticipated under the Consent

Order."  (*Id.* at 22–23 (quoting ECF No. 2-3 at 2).)  The ALU's ability to use social media and

email is irrelevant, because neither email nor social media is appropriate under the LMRDA as a means of notifying union members of the upcoming election.  *See* 29 U.S.C. § 481(e).

Equally irrelevant is the plaintiffs' statement — made more than a year ago in an effort to get the defendants to agree to hold a leadership election — that the union "manages its own roster."  (ECF No. 3-2 at 2.)  According to Claudia Ashterman, the ALU "recording secretary," "[a]t the time of the election at JFK 8 in March of 2022," the NLRB required Amazon to provide the union with a list of the "names, phone numbers, email addresses and other identifying information for all workers on the JFK8 payroll at that time."  (ECF No. 72-1 ¶¶ 3–4.) Ashterman explains that "many people have been terminated over the past two years and others have been hired," so "[t]hat [2022] list is [] out of date" and therefore inappropriate to use as a mailing list to provide notice of the upcoming election.  (*Id.* ¶ 6.)  She attempts to update the list by "collect[ing] membership cards from people who [] come to Union events, meetings, or [who] ask to become active in the union," but this too is insufficient because, in her estimation, her updated list "represent[s] only about 40% of the current workforce."  (*Id.* ¶¶ 9–19.)  Nor can the ALU use a list of dues-paying members in order to create the necessary mailing list of all potential union members; as Ashterman explains, "[b]ecause the ALU leaders stated they would not seek to collect dues from the workers until after a collective bargaining agreement was ratified, the dues paid to the union are from a very small group who voluntarily pay them."  (*Id.* ¶ 7.)[5]

Moreover, there are no "feasible alternative[s]" for the parties to obtain the mailing list so that the leadership election can take place consistent with the Consent Order and the LMRDA. *Teamsters*, 948 F.2d at 104.  As previously discussed, because the parties have resolved this

---

[5] As discussed above, the ALU represents all hourly full-time and part-time employees at JFK8.

dispute and entered a Consent Order, ordinary discovery measures like the plaintiffs' Rule 45 subpoena are not appropriate, and therefore not "feasible."[6]

Amazon argues that the NLRB might determine that Amazon waived its challenge to the ALU's certification if it complies with a court order to provide the mailing list. This is unpersuasive. As Amazon has repeatedly informed the Court, it has "scrupulously avoided any suggestion that it has recognized the ALU" (ECF No. 64; ECF No. 65; ECF No. 71-10 at 9, 18) — including by declining to provide a mailing list voluntarily, opposing the plaintiffs' motion for an AWA order, moving to quash the plaintiff's subpoena, and moving for a protective order.

Amazon argues that it has not found any legal authority "*precluding* the NLRB from finding that Amazon [would waive] its objections to the ALU's election results by providing the information at issue." (ECF No. 71-10 at 18–20 (emphasis added).) But this turns the analysis on its head. Amazon has not cited any authority — and the Court is aware of none — suggesting that compliance with an AWA order constitutes waiver. The cases on which Amazon relies are easily distinguishable, as they all involve employers who waived their challenges to certifications by voluntarily recognizing and bargaining with unions. *See, e.g.*, *Pro. Transportation, Inc. & Int'l Bhd. of Teamsters Loc. 512*, 362 NLRB 534, 535 (2015) (holding that the employer waived challenge to union's certification when it held several bargaining sessions with union after certification); *King Radio Corp. v. N.L.R.B.*, 398 F.2d 14, 20 (10th Cir. 1968); *Coffman v. Queen of Valley Med. Ctr.*, 895 F.3d 717 (9th Cir. 2018); *Peabody Coal Co. v. N.L.R.B.*, 725 F.2d 357, 365 (6th Cir. 1984). And the Second Circuit has suggested that some

---

[6] Nor are the post-judgment discovery provisions of Rule 69 applicable, which allow for "discovery from any person" in "aid of judgment or execution" by "the judgment creditor or a successor in interest." As an initial matter, judgment has not yet been entered in this case. Moreover, post-judgment discovery must be "calculated to assist in collecting on a judgment" and "relate to the existence or transfer of a judgment debtor's assets." *Allstate Ins. Co. v. Mirvis*, No. 08-CV-4405, 2017 WL 384318, at *1 (E.D.N.Y. Jan. 25, 2017).

minimal contact with a union may not waive certification, explaining that an employer could have avoided unfair labor practices liability if it had "notif[ied] and consult[ed] with the Union as to the course to be followed" with respect to a salary review, even though the employer "was challenging the [union's] certification." *Cath. Med. Ctr. of Brooklyn & Queens, Inc. v. N.L.R.B.*, 589 F.2d 1166, 1174–75 (2d Cir. 1978), *modified sub nom. Cath. Med. Ctr. v. NLRB*, No. 4135, 1979 WL 4850 (2d Cir. Jan. 9, 1979).[7]

Adopting Amazon's waiver argument — that an employer could waive its right to contest certification by complying with a court order — would lead to absurd results. Under that logic, courts would not be able to issue orders necessary to implement consent orders merely because the employer has appealed certification. That would be untenable. The record is clear that Amazon has not waived its certification challenge. It is not providing the mailing list voluntarily; it is being compelled to do so by a court order, to which it objects vigorously. Moreover, the Court is ordering Amazon to produce the list to the neutral monitor, which avoids any contact with the union.

Accordingly, the Court finds that in order to "effectuate and prevent the frustration of" the upcoming union election, as laid out in the "previously issued" Consent Order, Amazon must provide the neutral monitor in this action the names and addresses of all hourly full-time and regular part-time fulfillment center associates employed at JFK8 on or before May 12, 2024. *See New York Tel. Co.*, 434 U.S. at 172. This mailing list is "necessary" for implementation of the Consent Order and is the only means for the parties to obtain the information. *See Teamsters*,

---

[7] Amazon also cites cases in which discovery implicated a party's Fifth Amendment privilege against self-incrimination, but those cases are very different. (*See* ECF No. 71-10 at 19–20 (collecting cases).) An employer's certification challenge to a labor union is not comparable to the constitutional rights at issue in the cases on which Amazon relies.

948 F.2d at 103.  Amazon must produce this list to the neutral monitor by 5:00 p.m. ET on May 13, 2024, to ensure timely implementation of the Consent Order.[8]

## CONCLUSION

For these reasons, (1) Amazon's motion to quash the subpoena is granted, (2) Amazon's motion for a protective order is denied, and (3) the plaintiffs' motion for an AWA order is granted.  Amazon is directed to provide the neutral monitor in this action with the names and addresses of all hourly full-time and regular part-time fulfillment center associates employed at JFK8 on or before May 12, 2024.  Amazon must produce this list to the neutral monitor by 5:00 p.m. ET on May 13, 2024.


**SO ORDERED.**

s/Ann M. Donnelly

_____

ANN M. DONNELLY
United States District Judge


Dated: Brooklyn, New York
       May 9, 2024

---

[8] The Court denies Amazon's request to certify this Order for immediate interlocutory appeal.  (ECF No. 71-10 at 8.)  "[O]nly 'exceptional circumstances [] justify a departure from the basic policy of postponing appellate review until after the entry of a final judgment," and Amazon has not made such a showing.  *In re Flor*, 79 F.3d 281, 284 (2d Cir. 1996) (cleaned up).  Granting Amazon's request to certify this Order for immediate interlocutory appeal would merely delay implementation of the time-sensitive Consent Order entered in this case.