

HUNTON ANDREWS KURTH LLP
200 PARK AVENUE
NEW YORK, NY 10166-0005

TEL   212 • 309 • 1000
FAX   212 • 309 • 1100

PATRICK L. ROBSON
DIRECT DIAL: 212 • 309 • 1157
EMAIL: probson@HuntonAK.com

FILE NO: 056186.0000010

May 12, 2024

**Via ECF**

The Honorable Ann M. Donnelly
United States District Court
225 Cadman Plaza East
Brooklyn, New York 11201

Re:   *Sylla, et al. v. Amazon Labor Union et al.*, Civil Case No. 23-05261 (AMD) (TAM)

Your Honor:

We represent non-party Amazon.com Services LLC ("Amazon") in this matter. Pursuant to Local Civil Rule 6.3, I write on behalf of Amazon to request that the Court reconsider that portion of its May 9, 2024 Memorandum Decision and Order ("Order," ECF 75) granting Plaintiffs' motion for an All Writs Order. The Order is predicated on clear error, and will cause manifest injustice to thousands of employees whose privacy rights under N.Y. Labor Law § 203-d and NLRA Section 7 rights will be violated by the Order's forced disclosure of their personal identifying information without their consent. Should the Court decline to reconsider the substance of the Order, Amazon requests that the Court reconsider its denial of certification of the Order, to permit immediate interlocutory appeal as quickly as possible to protect the rights of these employees from this disclosure.

In the alternative, should the Court deny both of the foregoing requests for reconsideration, without waiving any of its positions, Amazon respectfully requests that the Court modify its Order to minimize infringement on the employees' rights to the greatest extent possible, including without limitation by requiring strict confidentiality restrictions on the neutral monitor's use of the information disclosed.

1. **The Court should grant reconsideration and deny the AWA motion because neither the Consent Order nor the LMRDA require mailing of a notice of election to employees of Amazon who are not "members in good standing" of the ALU.**

"A motion for reconsideration is properly granted where there is a showing of "a need to correct a clear error or prevent manifest injustice." *Am. Transit Ins. Co. v. Bilyk*, 514 F. Supp. 3d 463, 470 (E.D.N.Y. 2021) (granting motion for reconsideration). "The decision to grant or

**HUNTON**
ANDREWS KURTH

The Honorable Anne Donnelly
May 12, 2024
Page 2

deny a motion for reconsideration is within the sound discretion of the district court." *United States v. U.S. Currency in sum of Ninety Seven Thousand Two Hundred Fifty-Three Dollars*, No. 95-CV-3982 JG, 1999 WL 84122, at *2 (E.D.N.Y. Feb. 11, 1999).

In granting Plaintiffs' All Writs Act motion, the Court held that to "effectuate and prevent the frustration of" the election anticipated under the Consent Order (ECF 46), "Amazon must provide the neutral monitor in this action the names and addresses of all hourly full-time and regular part-time fulfillment center associates employed at JFK8 on or before May 12, 2024." (Order at 14.) While the Court claimed to rely on the LMRDA to conclude that the information requested was necessary for the contemplated election (Order at 10 (citing 29 U.S.C. § 481(e))), it clearly erred because the Order requires Amazon to produce the names and addresses of "*potential* union members," *see* Order at 11 (emphasis added). Such a directive is inconsistent with the express operative provisions of the LMRDA, which speak only of ***actual*** "members in good standing."

Section 481(e) of the LMRDA, cited by the Court, provides that "every ***member in good standing*** . . . shall have the right to vote" for union officer candidates. 29 U.S.C. § 481(e) (emphasis added). "Member in good standing" is defined as "any person who has fulfilled the requirements for membership in [a labor organization]." 29 U.S.C. §402(o). In other words, to become a "member" of a labor organization under the LMRDA, an individual must do something more than work in a job classification covered by a collective bargaining unit. The person must "fulfill" the organization's "requirements" for membership. Put simply, "potential" union members are not "members in good standing" within the meaning of Section 402 of the LMRDA.

The ALU's recent election communications to employees, distributed just this weekend, underscore this by noting that in order to join the Union, a prospective member must "sign[] a membership card." *See* ALU Elections Nominations Meeting flier, Ex. A. Thus, mere employment at JFK8 in a bargaining unit position does ***not*** entitle an individual to vote in the officer elections contemplated in the Consent Order. At the very least, signing an ALU membership card does. This is consistent with the sworn declaration of ALU Recording Secretary Claudia Ashterman submitted by Plaintiffs with their Memorandum in Opposition to Amazon's Motion to Quash. (ECF 72-1, at ¶¶ 9-10) ("I have collected membership cards from people who have come to Union events, meetings or ask to become active in the union," and "I enter these names into the Union's database to try to update our list of members")). Accordingly, it is not necessary for Amazon to provide anything insofar as ***the ALU already knows who its actual members are because they have signed membership cards***.

Consequently, ordering Amazon to turn over a roster of the entire JFK8 workforce, which likely includes thousands of employees that have not signed ALU membership cards and

HUNTON
ANDREWS KURTH

The Honorable Anne Donnelly
May 12, 2024
Page 3

therefore are not eligible to vote in the officer elections, is not "necessary or appropriate," as required for an All Writs Act order. *United States v. New York Tel. Co.*, 434 U.S. 159, 175, 98 S. Ct. 364, 374, 54 L. Ed. 2d 376 (1977); *Langton v. Town of Chester Libr. Bd.*, No. 14-CV-9474 (NSR), 2022 WL 2609005, at *3 (S.D.N.Y. July 8, 2022) (writ issued to nonparty is "necessary or appropriate" only if it is "'necessary' or 'essential to the fulfillment of the purpose'" for which a previous order has been issued). To the extent the Consent Order suggests that individuals other than those who are "members in good standing" of the ALU – i.e., those who have "fulfilled the requirements for membership" in the ALU, by signing membership cards at the very least—are eligible to vote, the Consent Order violates the LMRDA. "Potential" union members are not "members in good standing" within the meaning of Section 402 of the LMRDA. The parties are attempting to collapse those concepts into a unified term of their own making so that they can invite and/or involve thousands of non-members in their officer elections. This is inappropriate under the LMRDA and the Court should reconsider its ruling with this distinction in mind.[1]

Additionally, in the absence of a legal basis for disclosure, the Order violates the state, federal and constitutional rights of thousands of Amazon employees at JFK8. N.Y. Labor Law § 203-d prohibits an employer from "[c]ommunicat[ing] an employee's personal identifying information to the general public," including their names and home addresses. Moreover, by determining thousands of employees to be "members in good standing" of the ALU, despite that they may have chosen not to join or support the union – or may actively oppose it – the Order also violates the Section 7 rights of these employees under the NLRA, 29 U.S.C. §157, and their freedom of association guaranteed by the First Amendment to the Constitution. *See, e.g., Radio Officers v. NLRB*, 347 U.S. 17, 40 (1954)("The policy of the Act is to insulate employees' jobs from their organizational rights"); *see also Roberts v. United States Jaycees*, 468 U. S. 609, 623 (1984) ("Freedom of association . . . plainly presupposes a freedom not to associate").  These infringements on the rights of Amazon employees should not be taken lightly, and require reconsideration and reversal of the Order.

2. **In the event that the Court declines to reconsider and reverse on the merits, it should reconsider and certify the Order for immediate interlocutory appeal to allow for the protection of the employees' rights.**

The Court should also reconsider its denial of Amazon's request that the Order be certified for interlocutory appeal. (Order at 14 n.7.) That denial was based on the Court's

---

[1] It is beyond dispute that the ALU does not consider every "potential" union member to be an actual union member. In its own sworn filings with the U.S. Department of Labor on March 30, 2024 (after the referendum vote called pursuant to the Consent Order), the ALU reported it had **zero** individuals who meet its requirements for membership.  *See* ALU LM-2 Report, Ex. B, at p. 2.

**HUNTON**
**ANDREWS KURTH**

The Honorable Anne Donnelly
May 12, 2024
Page 4

determination that an All Writs Act order was necessary and so no delay could be justified. As explained above, however, that determination rested on the Court's error regarding the necessity for the information contemplated under the Consent Order. Moreover, there is no time sensitivity to this issue that outweighs the value of seeking to protect the rights of thousands of uninvolved employees by the expeditious appeal of the Order to the Second Circuit. Any time constraints required by the Consent Order's requirement that an election be held by the "end of July 2024" have been arbitrarily set by the parties in settlement of their internal union litigation – to which neither Amazon nor the thousands of employees impacted by the Order are parties. Finally, even assuming the parties' arbitrary commitment to a union leadership election by the end of July 2024 should have any impact on the rights of thousands of non-union-members, there remain two and a half months within which to request an expedited appeal intended to protect these employees' rights. Without waiving any legal positions, Amazon requests that the Court certify the Order and enter a stay for a reasonable period of time, no less than fourteen (14) days, to permit for filing of an expedited interlocutory appeal.

> 3. **In the alternative, should the Court decline to reconsider its decisions per the above, it should modify the Order to limit the universe of employees whose rights will be infringed upon, and require specific actions to mitigate the same.**

Even if the Court declines to reconsider its Order altogether or to certify its Order for interlocutory appeal, it should at a minimum revise its order to minimize the infringement upon the rights of Amazon's JFK8 employees.

> > a. **The Order must be modified because it currently requires production of information with no reasonable or rational temporal boundaries.**

The Order requires Amazon to provide the neutral monitor with information on "all hourly full-time and regular part-time fulfillment center associates employed at JFK8 ***on or before May 12, 2024***." (Order at 14) (emphasis added)). Taken literally, that directive could be read to include every employee who has ever been employed at JFK8 since the facility opened in 2018. While Amazon reserves its position that neither the Consent Order nor the LMRDA requires mailing of an ALU election notice to *any* Amazon employee who has not chosen to become a member of the ALU, there can be no reasonable argument that it is "necessary or appropriate" to facilitate mailing to non-current employees, thousands of whom left employment before the ALU even existed. At a minimum, the Order should be modified to



The Honorable Anne Donnelly
May 12, 2024
Page 5

specify that it excludes production of information about associates not employed as of the present date.[2]

      **b. The Order must be modified to ensure confidentiality of any production of information required, and to limit its exposure and use to the neutral monitor alone.**

Without waiving its legal objections, Amazon further asks the Court to modify the Order to protect the rights and privacy interests of its employees, including without limitation under N.Y. Lab. Law § 203-d, by:

(a) prohibiting the neutral monitor from disclosing or sharing any employee information, including names and addresses, provided by Amazon with any third party, including Plaintiffs and Defendants;

(b) ordering the neutral monitor to return to Amazon, or certify to the Court that he has destroyed, any employee information provided by Amazon immediately upon the conclusion of the officer elections called for in the Consent Order, without having shared it with any third party, including Plaintiffs and Defendants;

(c) prohibiting the parties from requesting disclosure by the neutral monitor of any employee information produced pursuant to the Order; and

(d) ordering that if the parties come into possession of any employee information produced pursuant to the Order, whether by inadvertent disclosure or otherwise, they are immediately to destroy any and all copies in their possession and simultaneously to notify the Court of the same.

      **c. The Order must be modified to afford Amazon opportunity to inform employees whose information it is being ordered to disclose.**

---

[2] With respect to former employees who are contesting their terminations, the Court should not require Amazon to make highly subjective judgments about non-employees who are "actively contesting their termination," as requested by the parties. It is unclear what this means, and could be subject to after-the-fact claims of noncompliance by the parties. Moreover, this is information that the parties are obviously more likely to have than Amazon. If the Court does require Amazon to provide names of any former employee, without waiving any legal objections, Amazon respectfully asks that the Court define this with greater clarity than the Consent Order does.



The Honorable Anne Donnelly
May 12, 2024
Page 6

      Without waiving its legal objections, Amazon further asks the Court to modify the Order not to require production of any names and addresses of employees for a reasonable period, no less than ten (10) days, to afford Amazon time to notify employees that their names and mailing addresses are being disclosed to a third party pursuant to the Order.

                                                  Respectfully submitted,

                                                  Patrick L. Robson

cc:      All counsel ECF