UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
DR. BRIMA SYLLA, et al,

                        Plaintiffs,

              -against-

AMAZON LABOR UNION, and CHRIS SMALLS,
as President of the Amazon Labor Union,

                        Defendants.
------------------------------------------------------------------ X

Civil Case No. 23-5261

**DECLARATION OF ARTHUR SCHWARTZ**

ARTHUR SCHWARTZ declares as follows under the penalties of perjury.

1. I have been the attorney for the Plaintiffs in this matter from the outset of this case. I submit this Declaration in support of Plaintiffs' Motion for An Award of Attorney's Fees.

2. **Plaintiffs were successful litigants.** This lawsuit was brought for the purpose of causing an election to be held in the Amazon Labor Union (ALU). The ALU had been formed in 2021, and we alleged, was supposed to have an election three months after the NLRB certified its status as the union at Amazon's JFK8 warehouse in Staten Island. The Plaintiffs alleged that defendant Smalls had unilaterally changed the ALU Constitution and postponed the election indefinitely. When efforts to mediate fell through, this lawsuit followed. Plaintiffs were wholly successful. After some pretty hardnosed litigation, which included allegations which the Defendants wanted sealed, the parties entered into a Consent Order which first put the question of whether to have an election to the members, and then, when they voted "yes," set out a process which led to a fair election where 5000 members were given the opportunity to vote. As part of this litigation we also brought a successful All Writs Act motion which required Amazon to turn over its employee mailing list, so they could participate in the election, In addition, that election resulted in an election of a Constitution Committee, which is now authorized to revise the ALU Constitution and resolve the disputes about how the union will be governed in the future.

3. **Plaintiffs' success benefitted the entire membership of the ALU.** There is nothing more fundamental to union democracy than an election. Having an election of officers, and of a committee authorized to write a democratic Constitution, benefited every single member of the ALU, save the small group who were running the union by fiat up until the day of the election. And, to the extent that the Second Amended Complaint made allegations of financial misfeasance, nothing in the settlement agreement precluded the new leadership from pursuing those misdeeds.

4. **Time for which fees are sought.**

a) Attached as Exhibit A is a recitation of the work for which we seek an award of fees. The total number of hours is 196.65. These time entries are taken from the time which I kept contemporaneously with the work.           .

b) In constructing this list of work performed, I intentionally left out.

   i) Most email correspondence, and telephone calls, which would have added a considerable number of additional hours to the application; though these emails were part of the litigation, and were useful in the development of facts and legal approach to the case;

   ii) All time spent litigating matters which were decided by the Neutral Monitor, (including qualifications for office, the form of the ballot, the dates of voting, and the manner of voting) and work I did which furthered the election process, such as preparing notices to the members, preparing the ballot, assisting in running the nominations meeting, negotiating on behalf of the union with vendors, attending the February balloting in the Amazon facility parking lot to make sure it was not interrupted by Amazon security, etc. The work I did during that period, though, in my view, moved the process forward to a successful conclusion, could be viewed as work I did for the candidates that the Plaintiffs were supporting in the election. Therefore, I did not include this work in my fee application.

c) I have included the work I did on the initial Motion for A Preliminary Injunction, as well as the restated Motion for a Preliminary Injunction. I did not include the court appearance on the Temporary Restraining Order motion on July 13, 2023, or our preparation for that hearing. Plaintiffs lost because the Court did not see any need for immediate relief. I did include the rest of our initial work on the Complaint and the Preliminary Injunction Motion, which was built on in the Restated Motion, brought defendant ALU and Defendant Smalls to the bargaining table, and facilitated the Consent Order, which set out a process which led to the election which Plaintiffs sought from the outset. We moved from the first reaction being a Rule 11 Motion, to a Consent Decree allowing the members to vote about whether to have an election, and, when they did that, a process which led to an election.

5. The Hourly Rate Sought, and the Justification.

a) We seek fees at a rate of $675 per hour. The last fee which was awarded to me was $600/hr. in the litigation titled *Lawton v. Success Academy*, 2021 WL 911981 (E.D.N.Y. 2021), and 2021 WL 139437 (E.D.N.Y. 2021) (Report of Magistrate Gold) affirmed by U.S. District Judge Frederic Bloch, for work done largely in the 2015-2019 period, on a lawsuit brought on behalf of school children under Section 504 of the Rehabilitation Act. It was only one of a handful of cases I had ever litigated under Section 504. Judge Bloch, nevertheless, awarded me a $600 per hour fee.

b) Magistrate Gold found in *Lawton* that I was a "highly regarded civil rights litigator with over forty years of experience" who has "reached a verdict in more than twenty jury trials, has argued over fifty cases in the appellate courts, and has handled hundreds of arbitrations." He understated my credentials, which are particularly strong in union democracy cases, which I discuss below. And when this lawsuit was filed, I was in my 45th year as a litigator.

c) I am a 1978 graduate of Hofstra Law School and was admitted to practice in 1978. As Magistrate Gold stated, I have a lifelong experience as a civil rights lawyer. My practice has had a major focus on labor union and employment litigation, representing unions, employees, and union members, I have extensive experience in litigating Constitutional Law and have a significant experience litigating Union Democracy cases, perhaps as much, or more, than any lawyer in this field anywhere in the United States. My practice has involved litigation in almost every US Court of Appeals. See, e.g., *Cotter v. Owens*, 753 F.2d 226 (2d Cir. 1985); *Schermehorn v. Hall*, 91 F.3d 316 (2d Cir. 1996); *London v Polishook*, 189 F.3d 196 (2d Cir. 1999); *Becker v Industrial Union of Marine and Sipbuilding Workers*, 900 F.2d 761 (9th Cir. 1992); *New Directions v. Seda*, 867 F.Supp. 242 (S.D.N.Y. 1994); *Guzman v. Local 32BJ*, 72 F.3d 260 (2d Cir. 1995); *Craig v. Boudrot*, 40 F.Supp.2d 494 (S.D.N.Y. 1999); and *Pruter v. Local 210*, 858 F.3d 753 (2d Cir. 2017). I have been election counsel to Local 100, Transport Workers Union since 2001, and have been retained by many other unions to guide their elections; recently I aided the Election Committee in the 2020 election of the Correction Officers Benevolent Association, a very complex election conducted during the height of the COVID Pandemic, among 20,000 Correction Officers in NYC. I am presently Counsel to the Election Committee of Local 1199, SEIU, the hospital workers union, which has 400,000 members. Given that union democracy work is my area of greatest expertise and the relatively rapid resolution of this extremely contentious case (which included the successful All-Writs Act Motion addressed to Amazon, LLC), I submit that an hourly rate of $675 is more than justified,

6. In considering the hourly rate, the Court should consider that there are few attorneys who have the experience that I do in bringing a case like this to a successful and rapid conclusion.

7. A $675 per hour fee applied to 196.65 hours of work, results in a fee request of $132,738.75.

8. We seek only $500 in expense reimbursement, to wit, the filing fees.

9. Based on the above, and the law, we seek an award of $132,738.75 in attorneys' fees and $500 in expenses.

10. Amazon Labor Union, during the litigation, affiliated with the International Brotherhood of Teamsters, and changed its name to ALU-IBT Local 1. We request that any fee award entered by the Court made payable by ALU-IBT Local 1.

Dated: New York, New York
March 22, 2025

/s/ *Arthur Schwartz*
Arthur Schwartz