UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------ X
DR. BRIMA SYLLA, et al,

                                                    Civil Case No. 23-5261

                            Plaintiffs,

              -against-

AMAZON LABOR UNION, and CHRIS SMALLS,
as President of the Amazon Labor Union,

                            Defendants.
------------------------------------------------------------------ X


**PLAINTIFFS' MEMORANDUM OF LAW
IN SUPPORT OF APPLICATION
FOR ATTORNEYS FEES**


**INTRODUCTION**

This Memorandum of Law is submitted in support of the Plaintiffs' Motion for

Attorney's Fees, payable by Defendant Amazon Labor Union, now known as ALU-IBT Local 1.

The facts relevant to this application, as well as the fee request calculations (time expended and

hourly rate) are discussed in the Declaration of Arthur Z. Schwartz, submitted herewith. This

Memorandum addresses the legal basis for the application.

**ARGUMENT**

**POINT I**

**PLAINTIFFS ARE ENTITLED TO
AN AWARD OF ATTORNEYS' FEES**

This lawsuit was brought for the purpose of causing an election to be held in the

Amazon Labor Union (ALU). The ALU had been formed in 2021, and we alleged, was supposed

to have an election three months after the NLRB certified its status as the union at Amazon's

JFK8 warehouse in Staten Island. The Plaintiffs alleged that defendant Smalls had unilaterally

changed the ALU Constitution and postponed the election indefinitely. When efforts to mediate

fell through, this lawsuit followed. Plaintiffs were wholly successful. After some pretty

hardnosed litigation, which included allegations which the Defendants wanted sealed, the parties

entered into a Consent Order which first put the question of whether to have an election to the

members, and then, when they voted "yes," set out a process which led to a fair election where

5000 members were given the opportunity to vote. As part of this litigation we also brought a

successful All Writs Act motion which required Amazon to turn over its employee mailing list,

so they could participate in the election, In addition, that election resulted in an election of a

Constitution Committee, which is now authorized to revise the ALU Constitution and resolve the

disputes about how the union will be governed in the future.

Plaintiffs' success benefitted the entire membership of the ALU. There is nothing more

fundamental to union democracy than an election. Having an election of officers, and of a

committee authorized to write a democratic Constitution, benefited every single member of the

ALU, save the small group who were running the union by fiat up until the day of the election.

And, to the extent that the Second Amended Complaint made allegations of financial

misfeasance, nothing in the settlement agreement precluded the new leadership from pursuing

those misdeeds.

At common law there is a general principle that a trust estate must bear the expenses of

its administration, even if that administration results from the efforts of non-trustees. In _Trustees_

_of the Internal Improvement Fund v. Greenough_, 105 U.S. 527 (1881), the Supreme Court held:

> "It is also established by sufficient authority, that where one of many
> parties having a common interest in a trust fund, at its own expense
> takes proper proceedings to save it from destruction and to restore it
> to the purposes of the trust, he is entitled to reimbursement, either
> out of the fund itself, or by proportional contribution from those who
> accept the benefit of his efforts."

Id. at 532-533.

The Plaintiffs took an action to save ALU from the undemocratic control of an unelected

President who sought to continue his dominance over this union for an indefinite period of time,

and helped bring about a process where the members decided how to move forward, where there

was a Neutral put in charge of resolving disputes, where the members, for the first time got to nominate candidates for office, where there was a free and open opportunity to campaign, and where 5000 members received ballots giving them a voice in deciding who was going to lead union, three years after it was created. Plaintiffs are, under _Greenough_, entitled to reimbursement from the union having done so.

In a more recent line of cases the U.S. Supreme Court again visited a similar attorney's fee issue, in an even broader context. In _Mills v. Electric Auto-Lite Company_, 396 U.S. 375 (1970), the Supreme Court required a corporation to pay attorneys' fees in a derivative suit despite the lack of statutory authorization "on the theory that the corporation which has received the benefit of the attorney's services should pay the reasonable value thereof." Id. at 390, citing _Sonolowe v. Delendo Corp.,_ 136 F.2d 231, 241 (2d Cir. 1943). It described "a primary judge-created exception" where a plaintiff has successfully maintained a suit, usually on behalf of a class, which benefits a group of others in the same manner as himself. _Mills_, supra, at 392. The court found that such a "substantial benefit" could occur "regardless of whether the benefit was pecuniary in nature. Id. at 395.

In _Hall v. Cole_, 412 U.S. 1, 93 S.Ct. 1943 (1973), a union democracy case directly on point, a union was required to pay attorney's fees in a case brought pursuant to the Labor Management Reporting and Disclosure Act. The Labor Management Reporting and Disclosure Act ("LMRDA"), 29 U.S.C. § 401 _et seq.,_ does not provide for awards of attorney's fees for a prevailing party. However, in _Hall_ the Supreme Court noted that:

> Although the traditional American rule ordinarily disfavors the allowance of attorneys' fees in the absence of statutory or contractual authorization, federal courts, in the exercise of their equitable powers, may award attorneys' fees when the interests of justice so require.... [F]ederal courts do not hesitate to exercise this inherent equitable power whenever "overriding considerations indicate the need for such a recovery."… (footnotes and citations omitted). One situation in which attorneys fees may be awarded to a successful party is where the plaintiff's successful litigation confers "a substantial benefit on the members of an ascertainable class, and

> where the court's jurisdiction over the subject matter of the suit makes possible an award that will operate to spread the costs proportionately among them." ... "Fee-shifting" is justified in these cases ... because "[t]o allow the others to obtain full benefit from the plaintiff's efforts without contributing equally to the litigation expenses would be to enrich the others unjustly at the plaintiff's expense."

*Id.* at 5 (citations omitted).

The Court reasoned that:

> "reimbursement of respondent's attorneys' fees out of the union treasury simply shifts the costs of litigation to the class that has benefitted from them and that would have had to pay them had it brought the suit.

Id. at 8. See also, *Amalgamated Clothing and Textile Workers v. Wal-Mart Stores*, 54 F.3d 69

(2d Cir. 1995); *Volkman v. United Transportation Union*, 770 F.Supp. 1455, 1476 (D. Kansas

1991) (citing numerous cases).

Applying these principles to the context of the LMRDA, the Supreme Court held that:

> [T]here can be no doubt that, by vindicating his own right of free speech guaranteed by § 101(a)(2) of Title I of the LMRDA, respondent necessarily rendered a substantial service to his union as an institution and to all of its members. When a union member is disciplined for the exercise of any of the rights protected by Title I, the rights of all members of the union are threatened. And, by vindicating his own right, the successful litigant dispels the "chill" cast upon the rights of others. Indeed, to the extent that such lawsuits contribute to the preservation of union democracy, they frequently prove beneficial "not only in the immediate impact of the results achieved but in their implications for the future conduct of the union's affairs." ... We must therefore conclude that an award of counsel fees to a successful plaintiff in an action under § 102 of the LMRDA falls squarely within the traditional equitable power of federal courts to award such fees whenever "overriding considerations indicate the need for such a recovery."

*Id.* at 8–9 (citations omitted).

The Second Circuit has recognized the propriety of attorneys' fees awards to successful

Title I LMRDA plaintiffs. *E.g., Rodonich v. Senyshyn,* 52 F.3d 28, 31–32 (2d Cir.1995); *Cruz v.*

*Local Union No. 3 of the Int'l Bhd. of Elec. Workers,* 34 F.3d 1148, 1159 (2d

Cir.1994); *Donovan v. CSEA Local Union 1000, American Federation of State, County and*

*Municipal Employees,* 784 F.2d 98, 102 (2d Cir.1986); *Rosario v. Amalgamated Ladies'*

*Garment Cutters' Union,* 749 F.2d 1000 (2d Cir.1984).

The determination of whether an LMRDA plaintiff deserves an award of attorneys' fees is

a factual question that lies within the discretion of the district court. *Rodonich,* 52 F.3d at

33 (citing *Rosario,* 749 F.2d at 1004). In determining whether an award is merited, a trial court

should "appraise the need for and potential benefits derived from the attorney's services, based

on the judge's personal observation of counsel's performance and [her] intimate familiarity with

the case." *Id.* (quoting *Rosario,* 749 F.2d at 1004). In addition, the Court of Appeals has

interpreted *Hall* as requiring "only that (1) there be benefits in common arising from the

plaintiff's lawsuit, and (2) that those benefits be substantial enough to warrant a fee award. This

does not mean that each member of the union must receive precisely the same benefits as the

plaintiff. Substantiality, in our view, is a proxy for rough proportionality. In virtually any lawsuit

under section 102 [of the LMRDA] the plaintiff will receive a greater benefit than other

members. *Id.* at 35.

Here, there should be no doubt that Plaintiffs' counsel's work rendered a common benefit

to all ALU members.

## POINT II

## THE FEES SOUGHT ARE REASONABLE

In determining the amount of reasonable attorneys' fees, a District Court "must calculate

a 'lodestar' figure based upon 'the hours reasonably spent by counsel ... multiplied by the

reasonable hourly rate.' "  *Cruz v. Local Union No. 3 of Intern. Broth. of Elec. Workers,*

*34 F.3d 1148* at 1159(2nd Cir 1994) (quoting *F.H. Krear & Co. v. Nineteen Named Trustees,* 810

F.2d 1250, 1263 (2d Cir.1987); *Ross v. A.H. Robins Co., Inc.,* 700 F.Supp. 682, 685–86

(S.D.N.Y.1988) (citing, *inter alia, Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983)). Such figure

"should be 'in line with those [rates] prevailing in the community for similar services of lawyers of reasonably comparable skill, experience, and reputation." *Cruz,* 34 F.3d at1159 (quoting *Blum v. Stenson,* 465 U.S. 886, 896 n. 11 (1984)); *Ross,* 700 F.Supp. at 685–86. Generally, the "prevailing community" is the district in which the court sits. *Cruz,* 34 F.3d at 1159. The Court of Appeals has also looked favorably upon the twelve-factor test used in the Fifth Circuit for evaluating fee applications. The factors include:

      a) time and labor required; novelty and difficulty of the questions;

      b) the skill requisite to perform the legal service properly;

      c) preclusion of other employment of the attorney in taking the case; customary fee;

      d) whether the fee is fixed or contingent;

      e) time limitations imposed by the client or the circumstances;

      f) the amount involved and the results obtained;

      g) experience, reputation, and ability of the attorneys; the undesirability of the case;

and

      h) awards in similar cases. *Id.* at 1160 (citing *Johnson v. Georgia Highway Express, Inc.,* 488 F.2d 714 (5th Cir.1974)). *See also United States Football League v. National Football League,* 887 F.2d 408, 415 (2d Cir.1989), *cert. denied,* 493 U.S. 1071 (1990).

Here Plaintiffs' counsel relies in part on a 2021 fee award in $600/hr. in the litigation titled *Lawton v. Success Academy*, 2021 WL 911981 (E.D.N.Y. 2021), and 2021 WL 139437 (E.D.N.Y. 2021) (Report of Magistrate Gold) affirmed by U.S. District Judge Frederic Bloch, for work done largely in the 2015-2019 period, on a lawsuit brought on behalf of school children under Section 504 of the Rehabilitation Act. It was only one of the handful cases counsel had ever litigated under Section 504. Judge Bloch, nevertheless, awarded him a $600 per hour fee.

Magistrate Gold found in *Lawton* that Plaintiffs' counsel was a "highly regarded civil rights litigator with over forty years of experience" who has "reached a verdict in more than

twenty jury trials, has argued over fifty cases in the appellate courts, and has handled hundreds of arbitrations." He understated Mr. Schwartz' credentials, which are particularly strong in union democracy cases, which I discuss below. And when this lawsuit was filed, Plaintiffs' counsel was in his 45th year as a litigator.

Plaintiffs 'counsel is a 1978 graduate of Hofstra Law School and was admitted to practice in 1978. As Magistrate Gold stated, he has a long experience as a civil rights lawyer. His practice has had a major focus on labor union and employment litigation, representing unions, employees, and union members, He has extensive experience in litigating Constitutional Law and has even greater experience litigating Union Democracy cases, perhaps as much, or more, than any lawyer in this field anywhere in the United States. His practice has involved litigation in almost every US Court of Appeals.   See, e.g., *Cotter v. Owens*, 753 F.2d 226 (2d Cir. 1985); *Schermehorn v. Hall*, 91 F.3d 316 (2d Cir. 1996); *London v Polishook*, 189 F.3d 196 (2d Cir. 1999); *Becker v Industrial Union of Marine and Sipbuilding Workers*, 900 F.2d 761 (9th Cir. 1992); *New Directions v. Seda*, 867 F.Supp. 242 (S.D.N.Y. 1994); *Guzman v. Local 32BJ*, 72 F.3d 260 (2d Cir. 1995); *Craig v. Boudrot*, 40 F.Supp.2d 494 (S.D.N.Y. 1999); and *Pruter v. Local 210*, 858 F.3d 753 (2d Cir. 2017).

In addition Plaintiffs' Counsel has been election counsel to Local 100, Transport Workers Union since 2001, and has been retained by many other unions to guide their elections; recently I aided the Election Committee in the 2020 election of the Correction Officers Benevolent Association, a very complex election conducted during the height of the COVID Pandemic, among 20,000 Correction Officers in NYC. He is presently Counsel to the Election Committee of Local 1199, SEIU, the hospital workers union, which has 400,000 members.

Given that union democracy work is his area of greatest expertise, and the relatively rapid resolution of this extremely contentious case (which included the successful All-Writs Act

Motion addressed to Amazon, LLC), Plaintiffs submit that an hourly rate of $675 is more than justified.

The number of hours for which fees are sought were drawn from contemporaneous records. Counsel made a point of not including time spent of most phone calls and emails, did not include time spent on an early TRO application, and did not include many hours of work done after the Consent Order was entered, even though much of that work furthered the process, benefitting all candidates and the membership. He declines to do so since during that period he was focused on representing a group of candidates. The post-Consent Order time does include work on the All-Writs Act application, and by an effort by counsel for the ALU to have the Court vacate the Consent Order.

A $675 per hour fee applied to 196.65 hours of work, results in a fee request of $132,738.75. Plaintiffs submit that such an award, plus the $500 initial filing fee , is a reasonable fee award.

## CONCLUSION

For the above-stated reasons, attorney's fees should be granted in favor of Plaintiffs and against ALU-IBT Local 1 in the sum of $132,738.75.


Dated: New York, New York
        March 22, 2025


                                        ADVOCATES FOR JUSTICE,
                                        CHARTERED ATTORNEYS
                                        Attorneys for Plaintiffs

                                        By: /s/ *Arthur Z. Schwartz*
                                            Arthur Z. Schwartz
                                            225 Broadway, Suite 1902
                                            New York, New York 10007
                                            (212) 285-1400
                                            aschwartz@afjlaw.com