UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x
DR. BRIMA SYLLA et, al.

                Plaintiffs,

No.: 23-CV-05261(AMD)

-against

AMAZON LABOR UNION  et. al.

                Defendants.
------------------------------------------------------------------------x

**DEFENDANTS' OPPOSITION TO THE SUPPLEMENT TO THE APPLICATION OF ATTORNEY ARTHUR SCHWARTZ FOR ATTORNEY'S FEES**

Defendants ALU and its successor ALU IBT Local 1, and former president Christian Smalls provide this opposition to Mr. Schwartz's application for attorneys fees. There are many arguments supporting Defendants' opposition to an award of fees, which are supported by several declarations.

Defendants however first take issue with the Court's order which appears to be assume that Mr. Schwartz has established a right to such fees and the only question is how many hours should he be compensated for and at what rate. The Court also asked for Mr. Schwartz's basis for claiming the ALU-IBT Local 1 is responsible for the fees he has requested. The Court also asked to respond to whether an evidentiary hearing should be held on these questions.

By these orders, Defendants are concerned that the Court overlooked or disregarded the Defendants opposition to Mr. Schwartz's fee petition in which it was shown that Mr. Schwartz was not a prevailing or successful party in the litigation. (D.E. 95). This Court seems to have given credence to Mr. Schwartz's argument that he does not have to show his actions in bringing this litigation proved any violations of Plaintiff's rights, in order for him to claim fees on a

1

common benefit theory. Defendants show that this premise is wrong and requests the Court address it before considering the issues that the Court directed Mr. Schwartz to supplement in his prior petition.

> I. **Mr. Schwartz and Plaintiffs were Not Successful Plaintiffs in their Complaint**

In Defendants' initial opposition, (D.E. 95). Defendants referred the Court to cases which showed that entitlement to fees may only arise where the Plaintiff has prevailed in the litigation. Defendants incorporate those arguments by reference herein.

> A. **All of the Cases On Common Benefit to Support Fees are Based on A Finding of A Violation of Union Members' Rights or Acts which Prevented A Violation of Union Members' Essential Rights and a Finding Of An Actual Benefit.**

Mr. Schwartz's argument for being a successful litigant in this case rests solely on his say-so. He claims basically: "I sued to get an election, the settlement called for an election so therefore I am successful, and entitled to fees because an election is a common benefit to the Union."

There is no support for that position.

For example in *Kirk v. Loc. 469 United Ass'n of Journeymen*, 2023 U.S. Dist. LEXIS 241331, *4 the court refused to award fees in a case where, like here, the "Plaintiffs did nothing more than proclaim that they had achieved a common benefit". The Plaintiffs claimed their litigation resulted in the defendant announcing a retreat from a position regarding an interpretation of a union by law which did not allow members to copy documents. The Court agreed with Defendants that the defendant was under no obligation to announce his [*5] interpretation of the Bylaw, or that he had done so in a contrary manner before this case. The Court found no substantial benefit to the union because Plaintiffs were allowed to get copies of

2

documents under the LMRDA, not the Bylaw. The Court stated the "common benefit" could be maintained: (1) if the litigation conferred a substantial benefit on the members of an ascertainable class, and (2) if the court's jurisdiction over the subject matter makes possible an award that will operate to spread the costs proportionately among the class.

Here the litigation did not confer a substantial benefit on the members of an ascertainable class. There was no finding that the Defendants engaged in any wrong-doing. There was no obligation under the LMRDA for the Union to hold an election two years after the founding of the union. The case was brought in part to give Mr. Schwartz a chance to become general counsel of the union which had taken on Amazon and won an election. (See Declaration of Willie Burden paragraph 8).

In *Farkas v. Soft Drink & Brewery Workers Local 812,* 91 Civ. 7636 (LLS), 1996 U.S. Dist. LEXIS 14893 (S.D.N.Y. Oct. 7, 1996), the Court made rulings which clarified the rights of all Local 812 members to receive accurate and adequate information about proposed collective bargaining agreements, to be notified of balloting if they are not working but still eligible to vote, and to be given enough time before balloting that they can talk to other members and organize support or opposition to the proposal. Until this case, no court in the Second Circuit had articulated contours of section 101(a)(1)'s right to a fair vote in the contract ratification context.

The Court determined that all members of Local 812 who do not work at Coca-Cola may benefit from the clarification of the law in that regard. The Court thus found the information about the collective bargaining agreement was not in keeping with the LMRDA in order to determine that Plaintiff had been successful and that the Court's rulings conferred a common benefit on all.

Here, again the litigation in this case did not result in the Court ruling in a way which protected workers rights. Defendants agreed to the election not because of the litigation but their recognition that regardless of their desires to have a collective bargaining agreement in place before an election, the LMRDA requires local union elections every three years and the regulation regarding timing of an election in nascent unions also has a three year provision.(See Mirer Declaration paragraph 39). Indeed, Plaintiffs sued to have an election after two years in existence. They did not win that.The request for equitable relief was denied. An election was held after three years, not due to the litigation.

Mr. Schwartz has claimed that the rules regarding prevailing plaintiffs in 42 USC 1988 cases involving civil rights cases do not apply in the LMRDA context. However in *Rosario v. Amalgamated Ladies Garment Cutters' Union*, 749 F.2d 1000 (2d Cir. 1984), the Second Circuit held that "the standards for the determination of attorney's fees in litigation under Title I of the Act [LMRDA] are those which the Supreme Court enunciated for determining fees under 42 U.S.C. § 1988. Specifically, the Second Circuit adopted the criteria set forth in *Hensley v. Eckerhart*, 461 U.S. 424, 76 L. Ed. 2d 40, 103 S. Ct. 1933 (1983) for review of fee application under the Act. Among the *Hensley* factors determining whether an applicant receives fees is whether the applicant has prevailed: "Where the plaintiff has failed to prevail on a claim that is distinct in all respects from all other claims, the hours spent on his unsuccessful claim should be excluded in determining the amount of the fee." *Hensley*, 461 U.S. at 440.

*Rosario* was a case in which a jury found the union had violated the members rights in the discipline process. On appeal some of the findings were reversed. In *Rosario*, the Second Circuit considered whether a reversal on appeal of one of the several components of a damages award in an action brought under Title I of the Act required the denial of fees spent in litigation

4

of that particular claim. The court upheld the award of fees for the claim that had been reversed on the grounds that the litigation of that claim "had the potential effect of deterring the union from denying members their due process procedural rights guaranteed by § 101 of the [Act] and of encouraging the union members to enforce those rights under § 102 [of the Act]."

In *Rosario,* it is clear that there were violations of the LMRDA and a benefit conferred on the members due to the belief that the litigation would act as deterrence to future violations of union member rights guaranteed by the LMRDA.

Again, there were no violations of the Plaintiffs rights found in this case.

Mr. Schwartz cites to *Donovan v. CSEA Local Union 1000*, 784 F.2d 98 (2d Cir. 1986), as an example of an attorney getting fees for representing an intervenor in a challenge by the Secretary of Labor to an internal union election under Title IV of the LMRDA. What he does not state is that the Secretary of Labor's case was successful in the Court finding a violation of the LMRDA. Thus, in the *Donovan* case there were violations of the law regarding the election found and a determination that the intervenor's participation helped secure the findings of violations conferring a benefit on the union. An intervenor was awarded fees under the "common benefit" exception to the American Rule in awarding fees, to compensate a successful plaintiff where his efforts have resulted in a substantial benefit to the members of an identifiable class of defendant beneficiaries.

If the Secretary of Labor had not proven a violation of Title IV, the intervenor would not have been entitled to fees as the case would have been unsuccessful.

In *New Leadership Comm. v. Davidson, 23 F. Supp. 2d 301, 311* (1997) the Plaintiffs members of the Flushing New York Local of the American Postal Workers Union ("Local"), moved for a preliminary injunction against certain Local officers and appointed members of the

election committee of the Local, alleging nine separate causes of action based on violations of the Labor Management Reporting and Disclosure [*306] Act ("LMRDA"), 29 U.S.C. §§ 411(a)(1), (2),(5), and 431(c) and the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185, in connection with an alleged scheme by defendants to suppress dissent within the Local.

The case was referred to a Magistrate Judge who held hearings over several days. During the course of the hearing the parties agreed to settle some of their claims. On May 19, 1997, following the issuance by this Court of a report and recommendation addressing the fourth and fifth causes of action, the parties entered into a stipulation resolving the remaining six causes of action, with both parties reserving their rights to seek attorneys' fees. In this case there were findings of potential violations that led to the entering into the stipulation.

In this case there were no findings that Defendants engaged in any violations of any laws and a clear statement by Defendants that they considered Plaintiffs case to be without merit. At the end of the settlement conference Mr. Schwartz did not reserve the right to seek fees. Had he done so, Defendants would have strenuously objected. Unlike this case, when the settlement was reached the Consent Order merely set out the agreements of the parties to hold an election and the circumstances under which it would happen. There were no findings of any violation in this case, indeed the wording of the Consent Order was without regard to the legal merits of the claims.

In *Mango v. Communications Workers of America, Local 1105, 765 F. Supp. 152* (1991) the Court stated with regard to *Hall v. Cole*, 412 U.S. 1, 36 L. Ed. 2d 702, 93 S. Ct. 1943 (1973), "the Supreme Court held that union members who succeed in vindicating rights guaranteed them by § 101 of LMRDA through an action under § 102 may recover attorney's fees when the effect

of the attorney's services has been to benefit the union and all of its members. The Court held that the ". . . The most critical factor is the degree of success obtained.

Defendants are aware that to confer a common benefit, the benefit does not have to be given to all union members. It can be a benefit derived from one person vindicating his rights which confers a benefit indirectly to the whole due to the deterrent effect. But in all cases which Defendants have read there is no case where fees are awarded in the absence of a finding that the litigation proved a violation of law or prevented a potential violation of law. While some cases awarded fees based on a "catalyst" theory, the Supreme Court struck down that catalyst theory in *Buckhannon Board & Care Home, Inc. v. West Virginia Department of Health and Human Resources*, 600, 121 S. Ct. 1835, 149 L. Ed. 2d 855.

In light of the foregoing and the arguments in Defendants' first memo in opposition to Mr. Schwartz's fee request, Defendants request the court reconsider the implication of its order which seems to presume that Plaintiffs were successful litigants who conferred some type of common benefit, when they were not.

**II. Mr. Schwartz's "retainer" card fails to meet the requirements of N.Y. Comp. Codes R. & Regs. Tit. 22 § 1215.1 and he fails to meet his burden showing that the "retainer" cards are fair, fully understood, and agreed to by the Plaintiffs in this case.**

Mr. Schwartz has conceded he does not have formal retainer agreements with the over 80 plaintiffs in this case. (Court Order dated 10/21/25). Instead, he provided the Court with blank Interest Forms as what he calls "retainer" cards, and an excel spreadsheet with a list of names. In Mr. Schwartz's supplemental declaration, he claims that Mr. Connor Spence "gathered plaintiffs by circulating a "retainer card" a sample of which is annexed as Exhibit A. He then entered those individuals on an Excel spreadsheet, which was transmitted to me. See Exhibit B. He then sent me the retainer cards (which I presently cannot locate.) The card did not include any discussion

7

of fees." Mr. Schwartz fails to meet his burden in showing that the "retainer cards" are fair, fully understood, and agreed to by the Plaintiffs for the following two reasons 1) the retainer card does not meet requirements under N.Y. Comp. Codes R. & Regs. Tit. 22 § 1215.1(c) and 2) the language of the retainer card itself is misleading and such that Plaintiffs could not fully understand what they were signing.

Turning to the first point, Mr. Schwartz's "retainer card" fails to meet the requirements of N.Y. Comp. Codes R. & Regs. Tit. 22 § 1215.1(c) which requires a signed written retainer agreement with the client, before or within a reasonable time after commencing the representation, provided that the agreement addresses (1) explanation of the scope of the legal services to be provided; (2) explanation of attorney's fees to be charged, expenses and billing practices; and (3) where applicable, shall provide that the client may have a right to arbitrate fee disputes under Part 137 of this Title. The language of the "retainer card" is not even titled "retainer" or "letter of engagement. It simply states "Plaintiff Interest Form" and reads as follows:

> "I would like to be named as a plaintiff in the legal complaint against the current leadership of the Amazon Labor Union for their refusal to hold scheduled elections for office positions."

The remainder of the card has a section for name, phone, email, building, job title, and Amazon tenure. Mr. Schwartz's "retainer cards" do not include any of the three requirements of N.Y. Comp. Codes R. & Regs. Tit. 22 § 1215.1(c) and therefore should be ruled as invalid.

The language on Mr. Schwartz's "retainer card" is also misleading for a number of reasons. The first reason is that it simply is called a "Plaintiff Interest Form". An "interest form"

8

is vague and does not affirm that an agreement to be Mr. Schwartz's representation is being agreed to by the person signing the card. It further misstates a critical fact to wit: "the current leadership of the Amazon Labor Union [has] refus[ed] to hold scheduled elections for officer positions. See Palmer Declaration, paragraph 40.

Furthermore, Mr. Schwartz is unable to locate the over 80 "retainer cards" and the Court has no mechanism of verifying the names listed on the spreadsheet signed the "retainer cards" were fully aware and understood the scope of Mr. Schwartz's representation. On May 11, 2024, Ms. Lilian Lopez, one of the listed Plaintiffs in this case approached Derrick Palmer at the nominations meeting and told him that "she never signed anything or agreed to be a Plaintiff and was upset her name was included in the Court papers." See Palmer Declaration, paragraphs 27-30. Mr. Palmer also stated his skepticism about others on the list. Palmer Declaration 39, 41.

Based on the failure of Mr. Schwartz to locate these cards and Mr. Palmer's declaration regarding Ms. Lopez etc. there is a question whether all the people listed as plaintiffs in this case actually agreed to be Plaintiffs against the Union. That is, there is a real question of whether they are real "plaintiffs" or "ghost plaintiffs". Were they recruited simply to give the Court the impression that there were many people who really wanted an election? If so, this position is undercut by the small number of persons who actually voted in the July election. See Palmer Declaration, paragraph 44.

### III. Mr. Schwartz Undertook Representation of the Plaintiffs In the Hope of Becoming General Counsel

Mr. Schwartz is currently seeking legal fees while never confirming with Plaintiffs such an arrangement and never listing such any explanation of attorney's fees to be charged, expenses and billing practices on the retainer card. On the contrary, one of the lead plaintiffs, Connor

Spence confirmed that he never signed an agreement with Mr. Schwartz or promised him any compensation for his work on the case. Furthermore, Mr. Spence stated that while Mr. Schwartz never explicitly told them he was doing the work pro bono, it was their understanding that he was doing the work with the hope that he would be the General Counsel of the union once the election was over if Mr. Spence's slate won." See Burden Declaration, paragraphs 6-8.

**IV. Mr. Schwartz Agreed to Not Seek Fees from the IBT. Further Pursuant to the Affiliation Agreement the IBT is not Responsible for ALU Debts.**

The General Counsel of the International Brotherhood of Teamsters David Suetholz has provided a Declaration in which he states that he spoke with Mr. Schwartz regarding his legal fees in this case. In December 2024, Mr. Suetholz spoke with Mr. Schwartz and told him that "neither the IBT nor the ALU-IBT Local 1 was responsible for any fee petition in the action before this Court but, the International was willing to pay his fees in an action against the New York City police for interference with the workers rights during the December 2024 strike. The IBT paid for the legal services of Mr. Schwartz to represent ALU-IBT Local 1 in this lawsuit to compensate him for his effort on behalf of the ALU-IBT Local 1 officers including Connor Spence and Brima Sylla. [Suetholz] asked [Schwartz] not to continue seeking the fees from IBT or ALU-IBT Local 1 as [Suetholz] did not believe [Schwartz's] actions in the case were successful. See Suetholz Declaration, paragraph 27.

It was then Mr. Suetholz entered an understanding with Mr. Schwartz that "in return for the IBT hiring him to do the case regarding police interference, [Schwartz] stated to [Suetholz] that he was *not* going to pursue fees in this matter." *IBID*. He has violated his word on this.

Finally, Mr. Schwartz is seeking attorney's fees from ALU, an entity that no longer exists. Both Mr. Derrick Palmer, Former Vice President of the ALU and Mr. Willie Burden Jr, attorney

for the IBT, have affirmatively stated that the ALU no longer exists. See Palmer Declaration, paragraph 46; and Burden Declaration, paragraph 9.

Even if Mr. Schwartz was to be awarded attorney's fees, he would not be able to collect attorney's fees from IBT due to the signed affiliation agreement between IBT and the former ALU. The affiliation between IBT and the ALU is clear that IBT has no liability for ALU debts incurred prior to the affiliation. In Article VIII.1 of the affiliation agreement regarding Assets and Liabilities we agreed that the "ALU and IBT are responsible for their respective debts, liabilities, and all other obligations, and neither ALU nor IBT shall be responsible for the debts, liabilities, or obligations of the other. See Suetholz Declaration, paragraph 21, and Exhibit I the attached Affiliation agreement.

## **Conclusion**

For the foregoing reasons, Defendants request this Court to deny Mr. Schwartz's application for attorneys fees in this case.

Respectfully submitted,

*Jeanne Mirer*
Jeanne Mirer
Ria Julien
Heather L. Ramirez
Julien Mirer & Associates, PLLC
300 Cadman Plaza West, 12th Floor
Brooklyn, New York 11201
*Attorneys for Defendants*